**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, | § | |
| *Plaintiff,* | § | Civil Action No. SA-14-CV-0099-XR |
| v. | § | |
| THE NICK VERTUCCI COMPANIES, INC., and NICK VERTUCCI, | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Defendants' motion to dismiss. Doc. No. 5. After careful consideration, Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and their Rule 12(b)(4) motion to dismiss for insufficient process are DENIED. Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim is DENIED AS MOOT.

The motions to dismiss under Rule 12(b)(3) (improper venue) and Rule 12(b)(5)(insufficient service of process) are HELD IN ABEYANCE pending a hearing on this case. The hearing will be held on **Monday, April 7, 2014 at 1:30 P.M**. The hearing will take place at the John H. Wood Jr. United States Courthouse, Courtroom 3, located at 655 East Cesar E. Chavez Boulevard, San Antonio, Texas, 78206.

**BACKGROUND**

This lawsuit arises out of the dissolution of a business relationship between the parties. Plaintiff Real Estate Training LLC provides educational programming and seminars on real

estate financing techniques. Its principal place of business is San Antonio, Texas, and also does business under the name Armando Montelongo Seminars ("AMS"). Defendant Nick Vertucci is a California resident and a businessman with expertise in cash flow issues in the real estate market. Defendant Nick Vertucci Companies Inc. is his business.

Sometime in 2010, Defendants entered into a "working association" with Plaintiff. As part of this arrangement, Vertucci spoke at Plaintiff's seminars around the country. The parties agree that several of these occurred in Texas. In addition, Vertucci was entitled to operate a booth at Plaintiff's seminars, and was exposed to Plaintiff's confidential business information and client lists. At some point during this relationship, the parties allegedly entered into a "Vendor Agreement" that is largely the subject of this lawsuit. This contract contained various provisions prohibiting Vertucci from using Plaintiff's confidential information, soliciting its staff or clients, or using its branding in the future. Doc. No. 5, Ex. A.

In September of 2013, the parties terminated their relationship. Plaintiff alleges that Vertucci breached the Vendor Agreement by soliciting its clients and employees, and by using its proprietary information. On January 16, 2014, Plaintiff filed this lawsuit in the 438th Judicial District of Bexar County, Texas. The original state court petition alleged causes of action for: (1) breach of contract, (2) business disparagement, (3) breach of fiduciary duty, (4) common law fraud, (5) conversion, (6) tortious interference with business relations; and (7) tortious interference with prospective relations. On January 29, 2014, Defendants removed the case to this Court on the basis of diversity jurisdiction. Doc. No. 1. Thereafter, the Court ordered the removing Defendants to show cause that the parties were completely diverse and

that therefore subject matter jurisdiction existed. Doc. No. 4. On February 21, 2014, Defendants filed this motion to dismiss. Doc. No. 5. On March 7, 2014, Plaintiff filed an Amended Complaint and a response to the motion to dismiss. Docs. Nos. 9 & 10. On March 18, 2014, Defendants filed a reply. Doc. No. 12.

**DISCUSSION**

**1. Subject Matter Jurisdiction**

As a preliminary matter, the Court addresses its subject matter jurisdiction over the case. Here, the only asserted basis for subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332. For diversity jurisdiction to exist, there must be complete diversity of citizenship among the parties. *Stiftung v. Plains Mktg.*, L.P., 603 F. 3d 295, 297 (5th Cir. 2010). Defendants are citizens of California and Nevada. Plaintiff is a Delaware LLC whose principal place of business is San Antonio, Texas. The citizenship of an LLC is determined by the citizenship of each of its members. *Alsobrook v. GMAC Mortgage, LLC*, 2013 WL 3929935 (5th Cir. July 31, 2013). The initial notice of removal did not adequately establish that Plaintiff's members did not include citizens of either Nevada or California. As a result, the Court ordered Defendants, as the removing party, to show cause that complete diversity of the parties existed. Doc. No. 4. On March 3, 2014, Defendants responded with evidence tending to show that none of Plaintiff's members are either citizens of California or Nevada. As a result, the Court finds that subject matter jurisdiction exists under 28 U.S.C. § 1332.

**2. Defendants' Motion to Dismiss**

Defendant has filed numerous alternative motions to dismiss for: (1) lack of personal jurisdiction, (2) improper venue, (3) insufficient process and service of process; and (4) failure to state a claim. Doc. No. 5.

*A. Motion to Dismiss for Lack of Personal Jurisdiction*

Personal jurisdiction over Defendants exists if: (1) the Texas long-arm statute confers such jurisdiction; and (2) the exercise of that jurisdiction comports with the Due Process Clause. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)). The Texas long-arm statute authorizes courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2008). Texas courts have interpreted this provision broadly to permit jurisdiction over nonresidents as far as the U.S. Constitution permits. *See Blair Communications, Inc. v. SES Survey Equip. Services, Inc.*, 80 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2002, no pet.). As a result, the only inquiry is whether jurisdiction over the nonresident Defendants would violate the U.S. Constitution. *Religious Tech. Center v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) ("Because the Texas Long Arm Statute is coextensive with the confines of Due Process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process.").

Well established Supreme Court jurisprudence dictates personal jurisdiction over a nonresident defendant is constitutional when: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945). There are sufficient minimum contacts when the nonresident defendant purposefully avails him or herself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Id.*

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). The nonresident's purposeful and deliberate activities in the forum must be such that he could reasonably anticipate being haled into court in that state. *Id.* at 474. Specific jurisdiction also requires a sufficient nexus between the nonresident's contacts with the forum and the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In contrast, general jurisdiction exists when the defendant's contacts with the forum state are "continuous and systematic." *Id.*

Although not entirely clear, Plaintiff appears to assert that the Court possesses both general and specific personal jurisdiction over Defendants in this case. Doc. No. 1, Ex. 2 at ¶ 6. As a preliminary matter, the Court agrees with Defendants that it does not have general jurisdiction over them. Defendants are citizens of California and Nevada. They have neither offices in Texas, nor an agent for service of process here. Doc. No. 5. Furthermore, Defendants do not regularly transact business in this state, except for that related to the business relationship with plaintiff that is the subject of this case. *Id.* As a result, Defendants lack the *continuous* ties to Texas necessary for a court of this state to exercise general

jurisdiction over them. *See Helicopteros*, 466 U.S. at 418. Thus, the Court turns to specific jurisdiction.

The relationship between the nonresident Defendants and the forum centers on an ongoing business arrangement between the parties. This relationship, embodied by the Vendor Agreement, constitutes sufficient minimum contact between the nonresidents and Texas to render personal jurisdiction constitutionally permissible. Defendants correctly contend that the mere existence of a contract with a Texas resident is alone insufficient to establish personal jurisdiction. *Burger King*, 471 U.S. at 478–79; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Blair Communications*, 80 S.W.3d at 727.[1] However, the contract merely memorialized an ongoing business relationship between Defendants and a Texas resident.

Defendants next suggest that this Court cannot exercise jurisdiction over them where no breach of contract occurred in Texas. Doc. No. 5 at 8. In support, Defendants cite to a Texas appellate court decision that found it relevant, although not dispositive, that the nonresident defendant did not breach the contract in Texas. *See Info. Services Group, Inc. v. Rawlinson*, 302 S.W.3d 392, 400 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). In *Rawlinson*, the Texas 14th Court of Appeals held that a U.K. resident and former employee of

[1] Defendants also suggest that Vertucci is an independent contractor and not an employee of the Texas business. Doc. No. 5. From there, they cite case law indicating that merely being employed by a Texas company is insufficient minimum contacts. Doc. No. 12 at 5 (citing numerous Texas cases for the proposition that an employment relationship with a Texas firm is, alone, insufficient minimum contact). Defendants appear to be arguing that, if being an employee of a Texas company is not sufficient minimum contact, then surely being an independent contractor cannot be sufficient. This formalistic argument misses the essential nature of the inquiry. When assessing the relationship between the parties, the inquiry is focused on whether it is of such a nature that it would be foreseeable to Defendants that, if something went wrong, the other party might hale it into court in its home state.

a Texas business was not subject to personal jurisdiction in this state.[2] *Id.* Unlike Vertucci, the nonresident in *Rawlinson* never traveled to Texas as part of his relationship with the Texas company. *Rawlinson*, 302 S.W.3d 392 at 402. Several of the contracts in issue in *Rawlinson* had forum selection clauses and choice of law provisions selecting the U.K. The *Rawlinson* court considered this strong evidence that the nonresident did not expect to be brought to court in Texas. *Id.* In contrast, the contract at issue in this case contains a Texas choice of law provision. Personal jurisdiction is a fact specific inquiry and Defendants' reliance on *Rawlinson* is misplaced given the key factual distinctions between that case and the scenario presented by this case.

Defendants' argument that they possess insufficient contact with Texas to make jurisdiction constitutionally permissible is belied by the Supreme Court's decision in *Burger King.* In that case, the Supreme Court held that a nonresident could be subject to a state's long-arm statute when he breached a franchise agreement out-of-state. 471 U.S. at 478. In addition, the factual similarities between *Burger King* and this case support this Court's assertion of personal jurisdiction over Defendants.

In *Burger King*, Defendant John Rudzewicz, a Michigan resident, applied for a Burger King franchise agreement at the company's Michigan district office. *Id.* at 466. The application was forwarded to Burger King's corporate headquarters in Florida. Thereafter, Rudzewicz and his business partner negotiated the contract with both the Michigan field office and the Florida headquarters. Finally, the parties entered into a 20-year franchise agreement.

---

[2] As an initial matter, Defendants overlook the fact that the nonresident Defendant in *Rawlinson* was a foreigner. The Supreme Court's personal jurisdiction jurisprudence is generally sensitive to the heightened burden placed on a foreign defendants haled into an American courts. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 111, (1987); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011). As a result, the fact that the nonresident in *Rawlinson* was not a U.S. citizen immediately makes that case distinguishable.

When the relationship between the parties unraveled, Burger King sued in the U.S. District Court for the Southern District of Florida. Rudzewicz argued that, because no breach had occurred in Florida, courts of that state could not exercise personal jurisdiction over him. *Id.* at 468-469. The district court rejected this argument, but on appeal the Eleventh Circuit found in favor of Rudzewicz because he was not on "reasonable notice" that he would have to litigate in Florida. *Id.* at 470.

The Supreme Court reversed, holding that Rudzewicz had sufficient contacts with Florida to make application of that state's long-arm statute constitutionally permissible. The Court found that, although Rudzewicz had never travelled to Florida as part of the contract, he had deliberately targeted a Florida company for an ongoing business relationship. *Id.* at 479-480. Although the breach of contract had not occurred in Florida, the Court held that Rudzewicz's "continued use of Burger King's trademarks and confidential business information… caused foreseeable injuries… in Florida." *Id.* at 480. Finally, the Court found it relevant that the franchise agreement was to be governed by Florida law because "it reinforced [Defendant's] affiliation with the forum state." *Id.* at 481.

This case is factually similar to *Burger King*. Vertucci knowingly entered into a contract with a Texas-based company.[3] Doc. No. 5, Ex. A. This contract included a Texas choice of law provision. Finally, Defendants alleged conduct has caused foreseeable harm in this state. Assuming, for the sake of argument, that Plaintiff's allegations are true, then Defendants' conduct is causing a Texas business to lose customers and have its reputation

[3] Defendants argue that they entered into the business relationship with a Texas company expecting the arrangement to be centered outside of Texas. Doc. No. 12 at 5-6. However, when Rudzewicz entered into his franchise agreement with Burger King, he also expected all of it to be performed outside of Florida. The relevant point is that both the Defendants in this case and Rudzewicz availed themselves of a forum resident for an ongoing relationship.

damaged. Defendants' alleged breach is also causing a Texas business to lose out on the value of its confidential and proprietary information. All of this alleged harm should have been foreseeable to Defendants if they acted in the manner alleged in the Complaint.

Moreover, the contract in this case contains a choice of law provision selecting Texas law to govern any dispute. Although not dispositive of the jurisdictional question, this is another factor that weighs in favor of this Court's jurisdiction. *Burger King*, 471 U.S. at 481. Not only does the presence of a Texas choice of law "reinforce" the nonresidents' ties to this state, it demonstrates how Defendants purposefully availed themselves of the protection of Texas laws. *Id.* Under the choice of law provision in the Vendor Agreement, had the Defendants found themselves asserting a breach of contract claim under this contract, they would be seeking the protection of Texas laws.

Finally, it is noteworthy that there are actually greater contacts between the nonresident and the forum in this case than in *Burger King*. Vertucci, unlike Rudzewicz, actually travelled to the forum as part of the business relationship with the Plaintiff. *See Burger King*, 471 U.S. at 476 ("territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there."). Against this factual and legal backdrop, Defendants' assertion that Texas is "unrelated" or "incidental" to this litigation is baseless and the Court finds that there are sufficient minimum contacts between the nonresident and the forum.[4]

Although not raised by Defendants in their motion, specific jurisdiction is claim specific and therefore the Court must ensure that Defendants have sufficient minimum

[4] Defendants take a piecemeal approach to the analysis. They argue that each example of their contact with the forum is individually insufficient to establish jurisdiction. This style of argument overlooks the true nature of the inquiry which is focused on the overall relationship between the nonresident and the forum with respect to the asserted claims.

contacts with the forum with respect to each of Plaintiff's asserted causes of action. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). Therefore, just because there are minimum contacts with respect to the breach of contract claim does not necessarily mean that there are sufficient minimum contacts for Plaintiff's tort and fiduciary duty claims. In this case, however, Plaintiff's ongoing business relationship with Defendants is itself sufficient minimum contact with respect to all of Plaintiff's asserted claims. In *Seiferth*, the Fifth Circuit held that "[a] plaintiff bringing multiple claims that arise out of *different* forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.* (emphasis added). Here, all of the claims arise out of the same forum contact – the ongoing business relationship between the parties. Thus, there are sufficient minimum contacts with respect to Plaintiff's tort and fiduciary duty causes of action to make jurisdiction constitutionally permissible.

This does not end the inquiry because the exercise of jurisdiction cannot offend "traditional notions of fair play and substantial justice." *Intl. Shoe Co.*, 326 U.S. at 320. In conducting this analysis, courts consider: (1) the burden on defendant, (2) Texas's interest in this dispute, (3) plaintiff's interest in obtaining effective relief, (3) the judicial system's interest in efficiency; and (5) the shared interest of the states in furthering social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Whereas the overall burden to establish jurisdiction is on the plaintiff, when a defendant with minimum contacts to a forum state seeks to avoid that state's jurisdiction "*he* must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 417 U.S. at 447 (emphasis added).

On this point, Defendants reiterate their argument that, if any breach occurred, it occurred outside of Texas. Doc. No. 5 at 9. It is not entirely clear how this point is relevant to this part of the analysis and Defendants generally do not explain why litigating in this forum would be unreasonable to the extent that it would amount to a Due Process Clause violation. Instead, they assert that, as nonresidents, they will be burdened by litigation in Texas. As noted in *Burger King*, the existence of a venue transfer statute makes the burden on a nonresident defendant less of a factor in the jurisdictional analysis. *Burger King*, 417 U.S. at 484. Furthermore, Vertucci travelled to Texas several times to participate in Plaintiff's seminars. Against that backdrop, claims that he is unreasonably burdened by the potential of traveling to Texas for litigation are less persuasive.

Inasmuch as the Texas long-arm statute authorizes this Court to exercise personal jurisdiction to bounds set by the U.S. Constitution, the Court finds that it has specific personal jurisdiction over Defendants in this case with respect to all of Plaintiff's claims.

*B. Defendants' Motion to Dismiss for Improper Venue / Motion to Transfer*

Defendants also "move to transfer this action… pursuant to [Rule] 12(b)(3)." Doc. No. 5 at 9. Procedurally, a Rule 12(b)(3) motion is the proper vehicle for a party to seek dismissal of a claim for improper venue based upon the federal venue statute. *See* 28 U.S.C. § 1391. If venue is improper under § 1391, a court may exercise its direction to dismiss or transfer the case. 28 U.S.C. § 1406; *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 2013 WL 5962387 (W.D. Tex. Nov. 6, 2013).[5] In addition, if venue is proper in the district where the

[5] Defendants appear to assert that *Tejas Concrete* is no longer good law following the Supreme Court's decision in *Atlantic Marine Construction Co., Inc., v. U.S. Dist. Ct. for W.D. Tex.*, 134 S.Ct. 568 (2013). *See* Doc. No. 12 at n.6. As Defendants themselves note, *Atlantic Marine* dealt with the interaction of a forum selection clause and the various venue-related statutes. As *Tejas Concrete* did not pertain to a forum selection clause, but instead a

action is commenced, a party many nonetheless move to transfer a case under 28 USC § 1404. Defendants do not clarify whether they seek dismissal or transfer, but they do assert that venue in this district is improper. Doc. No. 12.

The Court declines to rule on either a Rule 12(b)(3) motion to dismiss or a motion to transfer under § 1404 at this time until several additional issues are clarified by the parties at the hearing. In a diversity action, venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper. *See Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D.Tex. 2011) (citations omitted). Here, Plaintiff asserts in a conclusory fashion that venue is proper under 28 U.S.C. § 1391(b)(2). Doc. No. 10. However, the Amended Complaint lacks factual support indicating that a "substantial part of the events or omissions giving rise to the claim" occurred within this district. Thus, Plaintiff has not yet established that venue here is appropriate.

At the same time, however, the record does not indicate whether there is another judicial district where venue would be more appropriate. Defendants assert that "California is

---

garden-variety Rule 12(b)(3) motion to dismiss, it was not overturned by *Atlantic Marine* and is entirely appropriate persuasive authority in this case.

the proper venue." Doc. No. 12 at 8. There are four federal judicial districts within the state of California. It is unclear in which of these districts venue would be appropriate.[6] This raises two practical problems. First, should the Court wish to exercise its discretion to transfer the case under § 1406, it would not know where to do so. Second, absent indication that there is another judicial district where venue is proper, the possibility remains that venue exists here under § 1391(b)(3).

At the hearing, Plaintiff will be given the opportunity to carry its burden of establishing that venue in this district is appropriate. Both parties should be prepared to discuss which, if any, other judicial districts would be an appropriate destination for this case should venue be improper here and the Court wishes to transfer the case. Finally, if Defendants seek to transfer the case under § 1404, they should be prepared to show that good cause exists to transfer after balancing the relevant public and private interest factors. *See In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).

**C. Defendants' Motion to Dismiss for Insufficient Process and/or Insufficient Service of Process**

Defendants have filed motions to dismiss under Rule 12(b)(4) (insufficient process) and/or Rule 12(b)(5) (insufficient service of process). Defendants do not indicate that there was anything incorrect with the *form* of the process, and instead only assert that service has not been properly executed. Doc. No. 5 at 10. Thus, it is unclear why Defendants are bringing at Rule 12(b)(4) motion, which, as they note in their motion, "concerns the form of the process

[6] Defendant Vertucci appears to reside in Orange County which is in the Central District of California. Since the corporate Defendant is a Nevada citizen, venue is not proper in the Central District of California by virtue of Vertucci's residence there under §1391(b)(1). Currently, there is an insufficient factual record showing which, if any, California district is where a substantial part of the events giving rise to this claim occurred such that venue would be proper there under §1391(b)(2).

rather than manner or method of its service.'" *Id.* (quoting *Gartin v. Par Pharm. Co., Inc.*, 289 F. App'x 688, 692 n.3 (5th Cir. 2008); *see also House v. S.P. Richards Corp.*, 2014 WL 427897 (S.D. Tex. Feb. 4, 2014) (describing distinction between Rule 12(b)(4) and Rule 12(b)(5) motions to dismiss).[7] As a result, the Rule 12(b)(4) motion is DENIED.

With respect to Defendants Rule 12(b)(5) motion, Plaintiff has filed return of service documents indicating that both Defendants were served on January 27, 2014. Doc. No. 7. Despite these documents, Defendants contend that service was not properly executed in compliance with the Texas Rules because service was left at Vertucci's home "when he was not there to accept service." Doc. No. 12.[8] Contrary to Plaintiff's assertion, the Texas Rules do not identically mirror the Federal Rules with respect to the requirements for proper service. Under the Texas Rules of Civil Procedure, service is accomplished by providing a copy of the citation and petition to the individual either by personal delivery or certified mail. TEX. R. CIV. P. 106 (a). In addition, a party must, by motion and affidavit, obtain court approval before leaving the service at an individual's residence (or with someone other than the party to be served). TEX. R. CIV. P. 106(b). Although Defendants' argument here is called into question by the return of service documents, when a 12(b)(5) motion is filed the burden shifts to the serving party to demonstrate that service was proper. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Inasmuch as there is a fact issue as to whether service was properly delivered, the Court will hear the parties' arguments on this issue at the April 7, 2014, hearing.

---

[7] In addition, to obtain dismissal under Rule 12(b)(4), the moving party must make some showing of prejudice. *See Albo v. Suzuki Motor Corp.*, 2008 WL 2783505 (W.D. Tex. July 2, 2008). Defendants have failed to make such a showing.

[8] Notably, Vertucci's sworn affidavit does not include any allegation that he did not properly receive service.

However, the parties are reminded that Plaintiff has 120-days from the time this suit was filed in state court to effectuate proper service under the now-applicable federal rules. *See* FED. R. CIV. P. 4(m); *see also*, FED. R. CIV. P. 81(c) (making federal rules applicable post-removal).

**D. Defendants' Motion to Dismiss for Failure to State a Claim**

On March 7, 2014, Plaintiff's filed an amended complaint, thereby mooting this motion to dismiss. Defendants have stated their intention to file a renewed motion to dismiss with respect to the Amended Complaint. Doc. No. 12. As a result, this motion is DENIED AS MOOT.

**CONCLUSION**

Defendants' motions to dismiss for lack of personal jurisdiction and insufficient process are DENIED. Defendants' motion to dismiss for failure to state a claim is DENIED AS MOOT, but may be re-filed pursuant to the federal rules. The motions to dismiss for improper venue and insufficient service of process are set for a hearing on April 7, 2014.

SIGNED this 21st day of March, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE