**AKERMAN LLP**
KAREN PALLADINO CICCONE (CA SBN 143432)
Email: karen.ciccone@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**AKERMAN LLP**
CLINT CORRIE (TX SBN 04840300)
*Admitted Pro Hac Vice*
Email: clint.corrie@akerman.com
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

**SPACH, CAPALDI & WAGGAMAN, LLP**
MADISON S. SPACH, JR., SBN 94405
(Email: madison.spach@gmail.com)
ANDREW D. TSU, SBN 246265
(Email: andrewtsu@gmail.com)
4675 MacArthur Court, Suite 550
Newport Beach, California 92660
Telephone: (949) 852-0710 / Fax: (949) 852-0714

*Attorneys for Defendants The Nick Vertucci
Companies, Inc. and Nick Vertucci*

*(Additional Counsel and Parties Listed on Following Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, <br><br> *Defendants.* | Case No. SACV14-00546 AG (DFMx) <br><br> Assigned to Hon. Andrew J. Guilford <br> Courtroom 10D <br><br> **JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED MOTIONS TO QUASH AND FOR PROTECTIVE ORDER** <br><br> Hearing Date: <br> Date: TBD <br> Time: 10:00 a.m. <br> Crtrm.: 10D |

{34060414;1}

CASE NO. 8-14-cv-0056-AG-DFMx
JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED
MOTIONS TO QUASH AND FOR PROTECTIVE ORDER

| | |
|---|---|
| 1 | THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, |
| 2 | Counterclaimants |
| 3 | v. |
| 4 | REAL ESTATE TRAINING |
| 5 | INTERNATIONAL, LLC; ARMANDO MONTELONGO |
| 6 | Counterdefendant/Crossdefendant. |

| | |
|---|---|
| SAC Filed: | June 17, 2014 |
| FAC Filed: | March 7, 2014 |
| Complaint Filed: | January 16, 2014 |
| Discovery Cutoff: | June 29, 2015 |
| Pretrial Conference: | Sept. 14, 2015 |
| Trial: | Sept. 29, 2015 |

JEFFREY D. CAWDREY (SBN: 120488)
KIMBERLY D. HOWATT (SBN: 196921)
BRITTANY L. McCARTHY (SBN: 285947)
**GORDON & REES LLP**
633 W. Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470
jcawdrey@gordonrees.com
khowatt@gordonrees.com

ANDREW J. MOON (*Pro Hac Vice*)
**EDUCATION MANAGEMENT SERVICES, LLC**
2935 Thousand Oaks Drive, Suite 6-285
San Antonio, TX 78247
Telephone: (210) 501-0077
Facsimile: (210) 568-4493
andym@teamarmando.com

Attorneys for Plaintiff and Counterdefendant REAL ESTATE TRAINING
INTERNATIONAL, LLC and Crossdefendant ARMANDO MONTELONGO

**AKERMAN LLP**
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## DEFENDANTS' TABLE OF CONTENTS

PAGE(S)

I.   DEFENDANTS' INTRODUCTORY STATEMENT ..........................................1

II.   RETI'S INTRODUCTORY STATEMENT ......**Error! Bookmark not defined.**

III.   DEFENDANTS' STATEMENT REGARDING NECESSITY OF EMERGENCY RELIEF .......................................................................8

IV.   DEFENDANTS' STATEMENT OF THE CASE ALLEGATIONS.................10

V.   STATEMENT OF FACTS SHOWING PLAINTIFFS' INTENT TO LITIGATE IN THE GUTTER.........................................................................12

VI.   STANDARD FOR DETERMINATION .................................................19

VII.   GOOD CAUSE EXISTS TO ENTER A PROTECTIVE ORDER PREVENTING RETI AND MONTELONGO FROM SEEKING DISCOVERY INTO MR. VERTUCCI'S PERSONAL LIFE. .........................................20

    A.   RETI's Claims Have No Relation To Mr. Vertucci's Personal Life. ......21

    B.   Mr. Vertucci's Personal Life Has No Relevance To Mr. Vertucci and NV Companies' Counterclaims. .....................................................22

    C.   Because The Claims And Defenses At Issue In This Matter Have No Relation To Mr. Vertucci's Personal Life, Discovery Should Not Inquire Into His Personal Life.................................................25

VIII.   GOOD CAUSE EXISTS TO ISSUE A PROTECTIVE ORDER PREVENTING RETI AND MONTELONGO FROM DEPOSING GINA VERTUCCI. .............................................................................................25

    A.   Motion to Quash Deposition of Mrs. Vertucci. .................................25

    B.   Protective Order Prohibiting and Protecting Defendants and Case Witnesses from Responding to Written Discovery and Deposition Questions Regarding Alleged Personal Matters. .................................27

    C.   Prohibit Any Contact with Any Witness by Any Party or Party Agent Other Than Counsel. .............................................................28

IX.   DEFENDANTS' CONCLUSION..............................................................28

    A.   Response to Request for "Emergency Relief" .........................................30

    B.   Response to "Statement of the Case Allegations" ...................................31

    C.   Response to "Statement of Facts []" ........................................................32

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# PLAINTIFFS' TABLE OF CONTENTS

**PAGE(S)**

II.    RETI'S INTRODUCTORY STATEMENT .........................................4

I.    RETI'S RESPONSE TO DEFENDANTS' ADDITIONAL INTRODUCTORY
SECTIONS ...........................................................................................30

    A.    Response to Request for "Emergency Relief" ........................30

    B.    Response to "Statement of the Case Allegations" .................31

    C.    Response to "Statement of Facts []" ....................................32

II.    APPLICABLE LEGAL AUTHORITY AND STANDARDS..........................36

III.    THE DEPOSITION OF GINA VERTUCCI IS HIGHLY RELEVANT TO
RETI'S CASE-IN-CHIEF AND DEFENSE AGAINST THE
COUNTERCLAIMS .................................................................................40

IV.    VERTUCCI HAS PUT HIS PERSONAL AFFAIRS SQAURELY AT ISSUE
BY HIS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE AGAINST
WHICH RETI IS ENTITLED TO DEFEND ...................................................45

V.    DUE PROCESS AND ESSENTIAL FAIRNESS PROHIBIT DEFENDANTS'
REQUESTED PROTECTIVE ORDER AGAINST RETI'S CONTACT WITH
ANY POTENTIAL WITNESSES ...............................................................47

VI.    RETI'S CONCLUSION.........................................................................49

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL: (213) 688-9500 – FAX: (213) 627-6342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## JOINT STIPULATION RE: DEFENDANTS'

## MOTIONS TO QUASH AND FOR PROTECTIVE ORDER

**PLEASE TAKE NOTICE** that pursuant to Local Rules 37-1 *et seq.*, Defendants/Counter-Claimants The Nick Vertucci Companies, Inc. ("NVC"), Nick Vertucci ("Vertucci") (each a "Defendant" and together, the "Defendants") and Plaintiff/Counter-Defendant Real Estate Training International, LLC ("Plaintiff") and Counter-Defendant Armando Montelongo ("Montelongo") (collectively referred to as "RETI"), together, the "Parties," hereby submit their joint stipulation with respect to Defendants' Motions to Quash and For Protective Order as set forth below.

## INTRODUCTORY STATEMENTS

### I.   DEFENDANTS' INTRODUCTORY STATEMENT

Defendants move the Court for an Emergency Order (1) quashing the deposition of Gina Vertucci currently scheduled for June 16, 2015, and prohibiting RETI from serving further notices of deposition to Gina Vertucci; (2) excluding discovery into Mr. Vertucci's personal life and protecting Defendant and witnesses from having to answer such questions; and (3) prohibiting any contact between Plaintiffs, their agents, and any other witness or party represented by counsel, and, thus, limiting communications regarding the case to communications between the parties' counsel.

Emergency relief or expedited relief[1] is needed in this case because Plaintiffs have signaled their intent to conduct discovery from and about Defendant Vertucci, and other witnesses, through document requests and depositions regarding allegations of affairs and sexual liaisons. The Defendants contend that such salacious, personal, and private matters have no relevancy to the issues of this business dispute, given that

---

[1] Or a shorter period than provided for by Local Rules re: motions.

the primary claims involve breach of contact and interference with business relationship.

The first such deposition was noticed for June 16, 2015. The parties agree that the discovery deadline in this case will need to be extended however the parties are not in agreement as to the length of the extension needed and the scope of discovery, including the relevance and/or scope of Ms. Vertucci's deposition. [2] This motion will have an impact on the scope and course of discovery. The allegations of alleged misconduct are manifested by:

- "Settlement offers" made with accompanying threats to go public with allegations of affairs and sexual misconduct if settlement is not accepted;

- RETI's/Montelongo's response to interrogatories demonstrating they intend to assert sexual allegations and sexual harassment as a defense to tortious interference claims;

- Service by hand delivery on May 29 of requests for admissions, the first four of which demand an admission as to whether Defendant had an extra-marital affair with a specific employee of Plaintiff RETI (followed by an exchange in which Plaintiff's counsel attempted to justify the relevance of such discovery) Defendant denies any relevance to such discovery;

- **The noticing of the deposition of Nick Vertucci's wife, Gina Vertucci,** who has no knowledge of relevant facts or involvement in Defendant's business, **noticed for June 16** (which Plaintiff's principal and a party counter-Defendant told another witness, as described below, would be "embarrassing");

- Postings on social media websites by people believed to be affiliated with Plaintiff alleging Vertucci's involvement in highly inflammatory personal conduct allegations;

---

[2] The parties will be submitting separate Motions to extend discovery deadlines and/or trial date.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

- A statement of Plaintiff's General Counsel, to the police in Garden Grove, California that Vertucci faces a suit involving highly inflammatory personal conduct allegations, notwithstanding the fact that such a suit does not exist; and

- Plaintiff's principal, and party litigant Armando Montelongo, has engaged in what appears to be intimidation of a witness by communicating directly with a witness and a party-defendant Keith Yackey, who is represented by counsel in a separate suit by Plaintiff and threatening him with "embarrassing depositions *of Gina Vertucci* and Jesse Marquez [Mr. Yackey's girlfriend]" if the case goes forward.   Yackey is a current contractor with Defendant Nick Vertucci companies and is also separately being sued by Montelongo's company, *Education Management Services, LLC v. Keith Yackey,* Cause No. 2014-CI-15278, In the 285th Judicial District Court of Bexar County, Texas.

By means of this motion, Defendants/Counter-Claimants seek:

- An order to quash the deposition of Mrs. Vertucci, and any future notice to her as Mrs. Vertucci has no knowledge of any relevant information pertaining to this business dispute and, her deposition is being sought by RETI for the improper purpose of embarrassing, harassing, and intimidating Mrs. Vertucci;

- A protective order applicable case-wide to all witnesses prohibiting questions or requiring answers to any written discovery or depositions regarding personal, sexual, relationships, alleged affairs, etc.; and

- An order prohibiting Plaintiff and any of its agents from directly or indirectly contacting any party or potential witnesses, particularly any witness represented by counsel in this case with any communication about the case.

Defendants have engaged in a good faith attempt to meet and confer to avoid this motion, by email and telephonic discussions, but Plaintiffs refuse to desist in pursuing the discovery described below.   The certificate of compliance with the requirement to meet and confer in good faith is set forth in the Declaration of Clint A.

Corrie ("Corrie Declaration"), a true and correct copy is attached hereto as **Exhibit 20**. (*See* Exhibit "20" at paragraphs 4, 5, 7 and 8.)  In addition, the parties conducted a lenghty telephonic conference as mandated by Local Rule 37-1 on June 17, 2015. Counter-Defendants' counsel agreed to stipulate that parties' attorneys should not be directly contacting any party or witness represented by counsel, noting that this was also barred by appropriate legal ethics/rules, however Counter-Defendants' counsel would not stipulate to barring represented parties from contacting each other directly (*See* Exhibit "20" at paragraph 10.)  Given the incidents detailed below, Defendants submit that communications by the parties' principals' have been, or may readily be, understood to be intimidation and harassment; accordingly, Defendants request an order applicable to the parties that direct contact between their principals or employees and any witness represented by counsel should be barred, the purpose of this relief being that all communications relating to this matter by or between represented parties and witnesses should be restricted to the respective attorneys of record.

Defendants, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 26(c), respectfully move the Court to issue a protective order in this case as set forth below.

## II.   RETI'S INTRODUCTORY STATEMENT

Defendants' requests to, a) quash the deposition subpoena for Gina Vertucci, and b) enter a protective order that would both preclude a grossly overbroad category of relevant discovery and prevent RETI's counsel from preparing its case *and* defense, conflict with the Fed. R. Civ. P. and Ninth Circuit precedent, and are properly denied.

First, Defendants' request to quash the deposition of third party witness Gina Vertucci is properly denied because the testimony of Ms. Vertucci is well within the scope of Fed. R. Ci. P. 26(b), for several reasons, including:

- Ms. Vertucci is a significant part of Vertucci and NVC's business –

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   including as an active participant in NVC events, infomercials, and advertising – and

2   thus reasonably and logically has knowledge of Vertucci and NVC's use of Plaintiff's

3   confidential information in such business, which is the crux of Plaintiff's First Claim

4   for Relief for Breach of Contract and Fifth Claim for Relief for Conversion;

5         •      Ms. Vertucci is the author of emails to the employees/contractors of

6   Plaintiff who are specifically alleged to have been the target of improper solicitations

7   by NVC, including Keith Yackey and/or Gillian Birnie, as are specifically identified

8   in Plaintiff's Sixth Claim for Relief for Tortious Interference with Business Relations;

9         •      Ms. Vertucci appears to have been involved in NVC's improper

10  solicitation of Plaintiff's employees/contractors, including Keith Yackey;

11        •      Ms. Vertucci admits to holding an ownership interest in Innovative

12  Holdings Group, LLC, which is an affiliate of NVC and one that is intrinsically

13  involved in NVC's provision of real estate services during the relevant timeframe

14  (2012 and 2013), which services are at issue in the Counterclaims;

15        •      Ms. Vertucci reasonably and logically has knowledge regarding whether

16  or not Vertucci was involved in the joint venture that Defendants allege as a primary

17  basis of their Counterclaims (and which RETI disputes);

18        •      Ms. Vertucci reasonably and logically has knowledge regarding the other

19  allegations asserted in the Counterclaims, which knowledge Plaintiff expects will

20  reveal many of the allegations to be untrue; and,

21        •      Ms. Vertucci has now introduced a declaration in this case regarding her

22  level of ownership and knowledge regarding Defendants' business, which is

23  contradicted by the evidence, and on which Plaintiff is entitled to cross-examine her.

24        Second, Defendants' request to limit the scope of discovery in the entire case to

25  exclude *all* discovery as to *all* witnesses regarding any "personal, sexual, relationships,

26  alleged affairs, etc.," as stated above, is properly denied both due to its gross

27  overbreadth (if not its unintelligibility) and because Defendants, *themselves*, have put

28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

these matters – as to Vertucci, in particular – squarely at issue in this case.  They have done so by insisting in their Counterclaims *and* responses to written discovery requests, that the reason for the Plaintiff's purportedly wrongful termination of the relationship with Defendants was Montelongo's alleged financial incentive to take over Defendants' business and usurp the profits for himself.  Such is **untrue**: RETI severed the relationship with Defendants because Vertucci, in his former role as a RETI speaker and representative, affirmatively misrepresented himself – as a part of his RETI presentation and directed to RETI clients – as a person whose business, livelihood, and success depended upon his 20-year marriage and that he was an honest and trustworthy person with whom RETI clients should invest their cash.  In actuality, as soon as he stepped off the RETI stage and into the audience, Vertucci became an unabashed philanderer, without any level of discretion in the presence of RETI clients, employees, and contractors.

As Defendants, themselves, have stated, a reputation in RETI and Defendants' industry is critical (Doc. 107, 5:23-27), and Defendants' fraudulent representations to RETI's clients risked RETI's reputation.  It is for *this* reason – not the manufactured fiscal motive alleged in the Counterclaims – that RETI severed its relationship with Vertucci and NVC.  The evidence on this point, thus, is critical to RETI's defense.

It is also relevant to Plaintiff's case-in-chief.  Not only did Vertucci put the RETI name(s) at risk by his conduct at RETI events, but also, he used such extramarital relationships in an effort to interfere with Plaintiff's business relations.  In particular, Vertucci carried on an affair with an RETI officer, and when his relationship with RETI terminated, he tried to get convince her to leave Plaintiff's employment, as well (who indeed ultimately *left*).  This is patently relevant to Plaintiff's Sixth Claim for Relief for Tortious Interference with Business Relations.

Vertucci may characterize these issues as being in the "gutter," and RETI agrees – he acted despicably.  But it is Vertucci's own conduct that has created these

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

facts and his own Counterclaims that have made them relevant. Just because Vertucci has embarrassed himself and TNVC (and likely other witnesses) by his philandering behavior, does not mean that the evidence that is relevant to RETI's defense is "embarrassing" for the purposes of Rule 26(c).

Third, Defendants' suggestion that RETI be precluded from directly contacting "any party or potential witnesses" is a blatant violation of RETI's rights under the Federal Rules of Civil Procedure and its due process rights in general. Defendants are not entitled to limit RETI's ability to investigate, prepare, and develop their case and defenses in this litigation by communication with non-party witnesses, particularly as to party-to-party communications or as to communications with non-party "potential" witnesses. Certainly parties have the right to contact each other – particularly as to settlement discussions, which is precisely what Defendants call into question. Moreover, the Parties' counsel have the right to contact parties that are not represented in this case. The suggestion that RETI should be effectively cut off from doing so, or forced to communicate through opposing counsel, is preposterous.

Like many cases in which wrongful termination is asserted, the asserting party faces the possibility that it was his own behavior that led to the termination, and that such behavior will be relevant to the defense. One – like Vertucci – must weigh his claim for money against this risk; his decision to proceed with the money claim, however, cannot impinge upon RETI's due process rights to vigorously defend against it.[3]

---

[3] RETI objects to Defendants' Introductory Statement as exceeding the length permitted by L.R. 37-2.1.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### III.   DEFENDANTS' STATEMENT REGARDING NECESSITY OF EMERGENCY RELIEF

This is a business case.  It is focused on allegations between two companies and their principals dealing with the enforceability of, and alleged violations of, a restrictive covenant agreement signed by Defendants and involving counterclaims by Defendants/Counter-Plaintiffs alleging, *inter alia,* tortious interference with joint venture agreements and breaches of contractual agreements.  Despite the paucity of Plaintiff's document production to date, a series of depositions had been noticed by both parties to proceed in the final three weeks of June. [4]  The parties will need Court relief and extensions of the discovery deadlines to complete discovery.  **This motion and any relief ordered has a significant impact on the scope of discovery.  The Defendant seeks an expedited hearing and/or ruling on the matter once submitted.  Plaintiff has stated they are not opposed.**

Unfortunately, RETI and Montelongo have signaled their intent to try to turn this business case into a Jerry Springer/Maury Povich-type in-the-gutter circus – in the language of Rule 26(c)(1), by pursuing specific discovery for purposes of "annoyance, embarrassment, oppression, or undue burden or expense." Plaintiffs have made their intentions clear by means of its express statements (described below) about the inquiries they intend to pursue, in the first instance by service of a notice of deposition of Defendant Nick Vertucci's wife.  She is not involved in either his prior or current business and has no relevant information on the issues of the case.  Apparently, Plaintiff intends to confront her with salacious allegations about alleged extramarital affairs and other conduct with which Plaintiff claims Vertucci to have been involved.

---

[4]  The parties have agreed for the need of extensions to the discovery deadline to take any depositions not otherwise objected to but have also agreed to re-schedule such depositions once the document production is complete.  The Parties believe that the document production should be substantially completed by June 26, 2015.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

In short, Plaintiffs have now staked out a position that a centerpiece of its defense of the Defendants' counterclaim for tortious interference is to try and embarrass Vertucci and Vertucci's wife and make the case about the alleged romantic and sex life of the Defendant, which has nothing to do with the businesses or business issues involved in the case. Ironically, by several accounts, the corporate culture of Plaintiff was that of an out-of-control fraternity party. However, were this information to be deemed relevant for discovery, which Defendants contend it is not, Defendants could pursue comparable discovery, facts, allegations, rumors, and *innuendo* about Counter-Defendant and Plaintiff's employees and contractors, to show that others involved (including Counter-Defendant, Plaintiff's former COO and HR director) who engaged in the same type of alleged conduct or worse, were not disciplined by Plaintiff. But such personal matters are a side-show and have nothing to do with any of the legal issues relevant to this dispute. Developing those type of facts and allegations, by either party, are a waste of legal and judicial resources, and a waste of, and insult to, California jurors' time and jury service. This side -show only serves to further purposes of harassment and annoyance.

Unfortunately, Plaintiffs have recently, both through social media and private communications, threatened to raise, and are now threatening to raise with Mr. Vertucci's wife, with key fact witnesses, and with their friends, allegations of sexual liaisons and affairs to go "nuclear" if Defendant continues to pursue its Counterclaims against Plaintiff and Montelongo. Defendants seek this relief to preclude unnecessary discovery into such matters, thereby preventing Plaintiffs from playing this prurient card.

First, due to her lack of knowledge of <u>any</u> facts relevant to the claims and defenses before the Court, and due to the fact that her deposition can only be sought to annoy or harass, Plaintiff's effort to take Mrs. Vertucci's deposition in the first place, should not be permitted. Second, RETI and Montelongo should not be permitted to

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

bring up or pursue any subjects concerning Mr. Vertucci's personal life in an effort to harass or embarrass Mrs. Vertucci or to cause harm to their relationship. Indeed, Plaintiff's attempt to depose Mrs. Vertucci and otherwise engage in discovery with any other witnesses focused on Mr. Vertucci's personal life is yet another example of RETI's efforts to avoid discussing the legal merits and intimidate and harass Defendants into submission based on non- case specific issues. Defendants submit this entire area of inquiry should be ruled off-limits since it has no relevance to any legal issues in this action. Finally, Defendants request an order prohibiting *any* contact with *any* party or potential witness, particularly those represented by counsel, and that all case communications be conducted between the parties respective counsel, to prevent improper attempts to influence witnesses. The evidence supporting this effort is undeniable and the intended course of inquiry, the witness intimidation, and threats should be excluded.

Because Federal Rule of Civil Procedure 26(c) requires all discovery to be *relevant to a claim or defense at issue*, RETI's efforts to cover personal topics well outside the realm of relevance to the claims and defenses at issue should not be countenanced. Thus, as set forth below, good cause exists to warrant the issuance of the protective order sought by Mr. Vertucci and NV Companies. As noted above, Defendants have attempted in good faith to resolve this dispute and obtain the commitment of Plaintiff's counsel to avoid these topics, all to no avail.

## IV.   DEFENDANTS' STATEMENT OF THE CASE ALLEGATIONS

In the Second Amended Complaint ("SAC"), Plaintiff, Real Estate Training, International, LLC ("RETI") set forth seven causes of action against NV Companies and Mr. Vertucci, with the following claims still remaining: Breach of Contract (Claim 1); Business Disparagement (Claim 2); Fraud (Claim 4); Conversion (Claim 5); Tortious Interference with Business Relations (Claim 6); and Tortious Interference with Prospective Business Relations (Count 7). [D.E. 49]. RETI's

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

remaining claims against Mr. Vertucci and NV Companies focus around RETI's allegations that Mr. Vertucci and/or NV Companies are allegedly using RETI's confidential or proprietary materials, have solicited RETI's customers, employees, contractors, and vendors, and have claimed an affiliation with RETI and Mr. Montelongo that does not exist.

On November 14, 2014, Mr. Vertucci and NV Companies filed their Second Amended Answer, Counterclaims ("SACC"). [D.E. 75]. In the SACC, Defendants/Counter-Plaintiffs alleged eight counterclaims, the majority of which remain after Counter-Defendants' Motion to Dismiss and/or Strike Second Amended Counterclaims was granted in part and denied in part. [D.E. 94] The remaining counterclaims set forth in the SACC are: Tortious Interference with Contract (Counterclaim 1); Breach of Contract (Counterclaim 3); Fraudulent Inducement (Counterclaim 4); Quantum Meruit (Counterclaim 5); Theft of Services (Counterclaim 7); and Declaratory Judgment (Counterclaim 8). These remaining counterclaims focus on Mr. Montelongo's alleged tortious interference with the joint venture[5] for the marketing and sale of real estate between NV Companies and Mr. Vertucci on the one hand and Giovanni Fernandez ("Mr. Fernandez") on the other hand, RETI's failure to pay Mr. Vertucci for the speaking services he provided, and a determination that the Agreement is invalid and unenforceable.

In addition, the Counterclaims allege that Mr. Vertucci provided speaking services to RETI seminars and bus tours, in exchange for compensation based on the number of customers who signed up for further training with RETI and he would make up the lost income through joint venture sales. [D.E. 75, Pg. 20] In reliance on this agreement, Mr. Vertucci chose to forgo other income opportunities and focus on

---

[5] The main purpose of the joint venture was to market properties owned by one of Mr. Vertucci's companies, NV Properties, to purchasers interested in owning a rental property ("Cash-Flow Properties").

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

the joint venture and RETI seminars. *Id.*  In mid-2012, RETI, through Montelongo, demanded that Mr. Vertucci continue providing speaking services for RETI without pay, but promised that if he did so, RETI and Montelongo would not interfere with his joint venture with Mr. Fernandez and the joint venture's marketing and selling of real estate at RETI-seminars. [D.E. 75, Pg. 25]  In July 2013, RETI required Mr. Vertucci to sign the Vendor Agreement ("Agreement"), which was backdated to January 2010, and purported to govern Mr. Vertucci and NV Companies provision of services to RETI from that date on. [D.E. 75, Pg. 26-27] In getting Mr. Vertucci to sign the Agreement, RETI threatened Mr. Vertucci with immediate termination from his business relationship with RETI and prohibition from marketing his properties on RETI bus tours if he did not sign the backdated agreement.  Less than a month after he signed the Agreement RETI terminated him. *Id.*

At or around the time that RETI pressured and threatened Mr. Vertucci into executing the Agreement, Montelongo also threatened Mr. Fernandez, noting that if he did not sever his joint venture relationship with Mr. Vertucci and withhold profits made during the business relationship from Mr. Vertucci and NV Companies, Montelongo would terminate the relationship between RETI and Mr. Fernandez. [D.E. 75, Pg. 28]  As a result, Mr. Fernandez was wrongfully forced to sever his joint venture relationship with Mr. Vertucci and NV Companies and instructed to simultaneously withhold sums properly owed to Mr. Vertucci and NV Companies.

## V.    STATEMENT OF FACTS SHOWING PLAINTIFFS' INTENT TO LITIGATE IN THE GUTTER

While there is undoubtedly bad blood between the individual litigants, due to a past business and friendship relationship,[6] and current competitor relationship, since

---

[6] In Plaintiff's now dismissed breach of fiduciary claim Plaintiff alleges "Defendants had a fiduciary relationship with Plaintiff that was developed as a result of trust and confidence that that was cultivated between Plaintiff and Vertucci's [sic] personal friendship…" SAC, Claim 3 [D.E. 49].

the filing of this suit, Plaintiffs' and Counter-Defendant's counsel and Montelongo have engaged in a pattern of intimidation, with threats to Defendant to publicize allegations about his personal life if he does not "walk away." Among the verbal threats and attempts at slander are the following:

1.      Shortly after the Defendants were sued by Plaintiff, Plaintiff and its affiliated companies, Educational Management Seminars, Inc., ("EMS"), part of Armando Montelongo Seminars ("AMS") began a series of suits against former contractors who left Plaintiff's company or affiliates, or were fired by Plaintiff or their affiliates, and who eventually went to work for the Defendant company. The suits are listed below.[7] Several of the individual defendants whose depositions have also been noticed as witnesses in this case worked other places after they left RETI/EMS and AMS and before they went to work for Defendant.

2.      To pursue these suits, Plaintiff and its affiliates pursued a pattern of filing *ex parte* applications for temporary restraining orders ("TROs") (See note 5 *infra*) and trying to serve Defendants' employees and contractors on stage, at live seminar events, in order to interrupt the events and embarrass these individuals and Defendants. At one such seminar event in June 2014, after Defendant Vertucci had an exchange with an overly belligerent process server who attempted to enter a live event without proper identification, the process server made threats to Defendant and his family. Accordingly, Vertucci made a complaint to the Garden Grove, California police. **(Ex. 1, Filed under seal.)**

---

[7]These lawsuits include: (1) *Education Management Services, LLC v. Ahrens, et al.*, Case No. 5:14-cv-00116-OLG, In the U.S. District Court for the Western District of Texas (currently in arbitration); (2) *Education Management Services, LLC v. Slaikeu, et al.*, Case No. 5:14-cv-00135-OLG, In the U.S. District Court for the Western District of Texas (currently in arbitration); (3) *Education Management Services, LLC v. Simpson*, Case No. 5:14-cv-00586-FB, In the U.S. District Court for the Western District of Texas; (4) *Education Management Services, LLC v. Yackey*, Case No. 5:14-cv-00656-HLH, In the U.S. District Court for the Western District of Texas; (5) *Education Management Services, LLC v. Tracey*, Case No. 5:15-cv-00075-DAE, In the U.S. District Court for the Western District of Texas; (6) *Education Management Services, LLC v. Yackey*, Cause No. 2014-CI-15278, In the 285th District Court of Bexar County, Texas; (7) *Education Management Services, LLC v. Moreno*, Cause No. 2014-CI-04088, In the 37th Judicial District Court of Bexar County, Texas; and (8) *Education Management Services, LLC v. Cadero*, Cause No. 2014-CI-09849, In the 73rd District Court of Bexar County, Texas.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

3.     When the police contacted the Plaintiff's General Counsel and Plaintiff's co-counsel here, Andy Moon ('Moon"), about Defendant's concerns about the belligerent process server at issue, Moon denied any connection between the process server and the Plaintiff's affiliates, but then made a statement to the police about an alleged existing lawsuit against Defendant making outrageous allegations of personal conduct against the Defendant. **(Ex. 1, Filed under seal.)** No such suit existed or was filed.

4.     In February 2014, several hit-and-run fake Facebook accounts were created – using fictitious names and posted graphic allegations about Defendant and a former Montelongo employee. **(Exs. 2, 3, 4, Filed under seal.)** Vertucci contacted Facebook and the accounts were taken down, but not before the Facebook account creators attempted to link and distribute the postings to Vertucci's Facebook "friends" and family list.[8]

5.     In this case, Gina Vertucci's deposition been asked for informally, and she has been identified as a potential witness by the Plaintiff and Plaintiff's counsel in this and other cases. **(Exs. 5, 6, 7).**

6.     Each time the Gina Vertucci deposition has been requested, Defendant has challenged and questioned the relevance of the deposition. **(Ex. 8, 9).**

7.     The Plaintiff attempted to justify the request for Mrs. Vertucci's deposition in an email exchange between counsel on May 25, 2015, in which Ms. Howatt of Gordon & Rees, LLP on the basis of "her (i) knowledge, as employee

---

[8] Defendant filed an Application for Temporary Restraining Order ("TRO") in San Antonio, Texas, to try to prevent Plaintiff and their agents from posting any further derogatory and personal remarks about Defendant. The state court judge in San Antonio did not enter  the TRO restraining in advance of any such publication on the basis of prior restraint of free speech.  While Plaintiff here (defendant in that case) denied a connection to the postings, curiously, however, the social media attacks on Mr. Vertucci ceased after suit was filed and notice was given requesting the Facebook account IDs. With no relief provided on the TRO, Defendant  non-suited the case.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL: (213) 688-9500 – FAX: (213) 627-6342

and/or agent of TNVC ("The Nick Vertucci Companies") of TNVC's materials ("Confidential Information") taken from RETI and its affiliates; (ii) her effort, on behalf of the Defendants, to interfere with business relations between RETI and its agents; and (iii) a variety of messages to at least an RETI agent from her email address of gster.22@gmail.com." **(Ex. 10)**

8.   Despite being told several times that Mrs. Vertucci has no relevant knowledge, the Plaintiff persisted and formally noticed her deposition for June 16, 2016. **(Ex. 11).**

9.   Mrs. Vertucci's affidavit demonstrates that none of these bases have any factual support.  As the attached declaration shows, **(Ex. 12),** she is the wife of the owner of the company.  She is not an owner of the Defendant company.  She is not involved in The Nick Vertucci Companies and she is not an owner, employee, agent, officer or director of the Defendant company.

   a)   <u>No Knowledge of Any Confidential Information.</u>

Mrs. Vertucci has no knowledge of any alleged confidential information of the Plaintiff.   She has not spoken to and has no knowledge of what information the Plaintiff considers to be "Confidential" and has not been involved in any of The Nick Vertucci Companies' materials or information.  **(Ex. 12, ¶ 7, 8, 9).**

   b)   <u>She Has Not Solicited Any Employee or Contractor of Plaintiff as an Agent as Defendant.</u>

She is a wife and mother.  **(Ex. 12, ¶ 2).** While she knew, through the many years her husband has been in the real estate training seminar business, some wives and girlfriends of some of the people who work for her husband's company **(Ex. 12, ¶ 10),** she never recruited, solicited or asked anyone to quit working for the Plaintiff or their affiliates and has no knowledge about any agreements any of the former employees or contractors of Plaintiff, who now work with Defendant, had with Plaintiff. **(Ex. 12, ¶ 9).**

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

c)   <u>She Never Sent the Emails Alleged to Anyone at RETI.</u>

Plaintiffs have produced two documents in their initial production to date, which purport to be from an email address called "gster.22@gmail.com" which they link to Mrs. Vertucci to a "gillianb@teamarmando.com."  Mrs. Vertucci affirms she does not know and did not send any emails to this person's email address and has no knowledge about these emails. **(Ex. 12, ¶ 11).**  Based on the suspicious nature of these emails themselves,[9] if the Court rules they are at all relevant, prior to the deposition, Defendant will seek the production of the emails in native format and will seek a forensic computer analyst to investigate and evaluate potential fabrication of the emails.

The topic of the email attempts to portray a romantic message to a former employee of Plaintiff. It is clear Plaintiff's intent is to confront Mrs. Vertucci with this email, *and perhaps others they are withholding from production or the element of surprise*, to inform her and/or imply an alleged personal relationship between her husband and a former RETI employee.  The answers to those type questions are irrelevant – their intent to do damage by exerting improper settlement pressure on the Defendants is accomplished merely by asking Vertucci's wife potentially embarrassing questions and making allegations and *innuendo* unrelated to the merits of the litigation.

10.   Despite questions by Defendants' counsel several times, Plaintiffs' intent to use this information to leverage a settlement is unmistakable.  On May 27, 2015, following a conversation between counsel about the deposition of Armando

---

[9]   The "To" line of the email contains the email address of "(gillianb@teamarmando.com" but with the name "Keith Yackey" associated with it. The name associated with a particular email address, however, can easily be changed. The actual email address, however, shows the email account to which the email was actually sent.  Defendants believe the email to be fabricated, but regardless, it is irrelevant.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Montelongo and a combined 30(b)(6) deposition, which Plaintiffs tried to force before Plaintiffs produced one single document to Defendant,[10] the same verbal threats to use and explore personal information was made.  Plaintiffs' counsel then followed up that call with a "confidential" settlement offer to Defendants' counsel accompanied by a threat if the offer was not accepted. The content of the offer itself is redacted to maintain its confidentiality.  The threat is not redacted, but is submitted under seal given the graphic nature of the threat and the parties involved.  **(Ex. 13, Filed under seal.)**

11.   Plaintiff attempts to justify their scorched earth prurient path on the basis that it is relevant to "<u>many</u> issues in the lawsuit, including the Counterclaims when Mr. Vertucci put into issue the reasons for the severance of his relationship with Montelongo." **(Ex. 13, Filed under seal.)** They allege that Vertucci "loans of money from students," and other allegations of a very personal and private nature, which Defendant denies. While the loans from students may be a fair topic for questioning, it is not alleged that Ms. Vertucci has any knowledge of these allegations . Accordingly, the personal relationship and alleged sexual affairs should be off limits.

12.   In their supplemental amended interrogatory responses served May 25, 2015, Interrogatory No. 25 Plaintiffs have indicated their intent to drag Mr. Vertucci's personal life into the case as part of their "defense" to his allegation of tortious interference with his business relationship on the sale of real estate properties with Gio Fernandez. **(Ex. 14, Filed under seal.)**

13.   Despite the request by Defendants' counsel for documents showing any contemporaneous evidence that Mr. Vertucci was warned or disciplined by RETI's

---

[10] As of Friday June 26, 2015, nearly four months after Defendants served written requests for production of documents on the Plaintiff and Montelongo, they provided a total production of 543 pages. Defendants anticipate the need to file a motion to compel on the numerous unproduced documents.

Human Resources or Legal Department to show any legitimate connection between the termination of his business relationship and the alleged personal conduct of the Defendants, no information has been offered by Plaintiffs. **(Ex. 15.)**[11]

14.     When Defendants declined to respond favorably to Plaintiff's terms of settlement and the threat, Plaintiff promptly served Defendants with request for admissions, the first 3 of which require him to respond to allegations involving non relevant personal conduct. **(Ex. 16, Filed under seal.)**

15.     Finally, Plaintiff's own documents demonstrate that the alleged personal reasons for the termination of Vertucci's relationship with the Montelongo's companies are not relevant or material to the claims at issue. This is not a wrongful employment termination case or discrimination case. Vertucci was neither an employee nor contractor with Plaintiff. The stated relevance of this information is as a defense to the tortious interference allegation by Counter-Plaintiff. This is a tortious interference with business and contractual relationships case. Defendant concedes that if the Plaintiff wanted to terminate its relationship with a vendor, it was free to do so, but in doing so, it could not wrongfully interfere with Defendants' business relationship with a joint venture partner with whom Defendants had an independent and ongoing business relationship. The Defendants' Vendor Agreement at issue contains no morals clause or other cause for termination.

16.     RETI has produced a letter it sent to Mr. Vertucci after terminating its relationship with him dated September 11, 2013 ("Termination Letter"). Notably, the Termination Letter does not address anything other than business arrangements. **(Ex. 17)**. In the Termination Letter, RETI does not allege anything related to personal improprieties of Defendant as a basis for termination of the Agreement. The personal

---

[11] While the entire topic of personal relationships of the defendants or any other person should be off limits, if RETI and Montelongo has any information, they should be required to produce it <u>immediately</u> instead of trying to ambush witnesses with the information in depositions. Alternatively, Plaintiff will seek an order from the court in their motion to compel striking the use of any unproduced evidence.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   reasons and the evidence regarding why they are being pursued by Plaintiff are neither
2   relevant nor material to any issue to be decided in the case.   They are merely a
3   premise and pretext for litigation gamesmanship.

### Attempt at Witness Intimidation

5   17.   Keith Yackey ("Yackey") is a former contractor with Plaintiff, who
6   resigned in October 2013, engaged in real-estate property flipping on his own for
7   several months, and began working for Defendant when Defendants started their
8   company.   Yackey is not only a key fact witness in this case, but he is also a party
9   Defendant to two lawsuits filed against him by Plaintiff's affiliate in Texas.   *See*
10   Footnote 3, *infra.*).

11   18.   On June 2, 2015 following a deposition of Yackey in Las Vegas, Nevada,
12   by their Texas counsel handling the Texas cases, Mr. Montelongo sent the following
13   text message to Yackey.   **(Ex. 18).**   Yackey is represented in that case by the
14   undersigned counsel.   In addition to with him improperly attempting to interfere with
15   the attorney-client relationship, Montelongo, a party-defendant in this case, by
16   alleging that his counsel is not communicating with him, Montelongo is
17   communicating directly with a key witness, a current contractor with Defendant the
18   NV Companies and threatening him with all the *"ugliness that's about to happen*
19   *before it does...You have bigger concerns right now and so does Gina, Jessie or*
20   *anyone else."*   "Gina" is Mr. Vertucci's wife.   "Jessie" refers to Jessie Marquez, Keith
21   Yackey's girlfriend.   The Plaintiff's Texas counsel noticed Ms. Marquez's deposition
22   with a 31-item document request in the case against Yackey for June 12, 2015, in Las
23   Vegas, Nevada.   **(Ex. 19).**

## VI.   STANDARD FOR DETERMINATION

25   This Court "may, for good cause, issue an order to protect a party or person
26   from annoyance, embarrassment, oppression or undue burden or expense." *See* Fed. R.
27   Civ. P. 26(c)(1)(A), (B); *Stern v. Does*, 978 F. Supp. 2d 1031, 1051 (C.D. Cal., 2011).

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Indeed, this Court can issue an order forbidding discovery completely or specify the terms of discovery, including the time and place in which the discovery will be conducted. Fed. R. Civ. P. 26(c)(1)(A), (B), (D). Generally, when deciding whether to grant a protective order, courts balance the potential hardship to the individuals subject to the subpoena against the need, and relevance of, the information to be sought. *See Holguin v. County of Los Angeles*, 2011 WL 7128640 *2 (C.D. Cal. 2011). Thus, through this balancing, courts must determine whether "good cause" exists in order to issue a protective order. Fed. R. Civ. P. 26(c); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 426 (C.D. Cal. 2011).

## VII.  GOOD CAUSE EXISTS TO ENTER A PROTECTIVE ORDER PREVENTING RETI AND MONTELONGO FROM SEEKING DISCOVERY INTO MR. VERTUCCI'S PERSONAL LIFE.

This suit is a business dispute that focuses on the business dealings of RETI, Mr. Montelongo, Mr. Vertucci, and NV Companies.  RETI's claims for relief are premised on allegations that Mr. Vertucci and NV Companies have used RETI's confidential and proprietary materials, have solicited RETI's customers, contractors, employees, and vendors, and have claimed an affiliation with RETI and Montelongo that does not exist.  Mr. Vertucci and NV Companies claims against RETI and Montelongo focus on Mr. Montelongo's tortious interference with the joint venture[12] with Mr. Fernandez, RETI's failure to pay Mr. Vertucci for the speaking services he provided, and a determination that the Agreement is invalid and unenforceable.  Clearly, salacious claims concerning Mr. Vertucci's personal life, regardless of whether true, false, exaggerated or inaccurate, have nothing to do with the causes of action that are before the Court.

---

[12] The main purpose of the joint venture was to market properties owned by one of Mr. Vertucci's companies, NV Properties, to purchasers interested in owning a rental property ("Cash-Flow Properties").

### A.    *RETI's Claims Have No Relation To Mr. Vertucci's Personal Life.*

In order to prove its claim for breach of contract (Claim 1), RETI must show that RETI on the one hand and Mr. Vertucci and NV Companies on the other hand entered into a valid contract, Mr. Vertucci and NV Companies breached that contract by either soliciting RETI's employees, contractors, vendors, and customers or by using RETI's confidential material and trade secrets, and RETI was damaged by that breach.[13] Similarly, in its claims for tortious interference with business relations, whether real or prospective (Claims 6 and 7), RETI must show that Mr. Vertucci and NV Companies improperly interfered with RETI's protectable business relationships with its employees, contractors, vendors, and customers.[14]

RETI's claim for business disparagement (Claim 2) requires proof that Mr. Vertucci and NV Companies improperly claimed a relationship or affiliation with RETI and Montelongo that did not exist, and RETI was harmed as a result of that claimed affiliation.[15]   To prove RETI's claim for conversion (Claim 5) RETI must

---

[13] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014)

In Texas, "[t]he elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach."

[14] *Impala African Safaris, LLC v. Dallas Safari Club, Inc.*, 2014 WL 4555659 * 7 (N.D. Tex. 2014); *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77-78 (Tex. 2000)

As the Fifth Circuit noted, the Texas Supreme Court has not yet clearly established the elements of tortious interference with prospective contractual relations. *See Nano–Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008). Texas appellate courts, however, have generally found that the claim requires four elements: "(1) a reasonable probability that the parties would have entered into a business relationship; (2) an independently tortious or unlawful act performed by the defendant that prevented the relationship from occurring, (3) the defendant's conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference."

The elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Also, as an affirmative defense, a defendant may negate liability on the ground that its conduct was privileged or justified. *See id.* at 431.

[15] *Frindar Megasoft Intern., Inc. v. Telcordia Technologies, Inc.*, 2006 WL 3063434 *6 (W.D. Tex. 2006). Under Texas law, the elements of business disparagement are: (1) publication of disparaging words by the defendant, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Forbes v. Granada Biosciences Inc.*, 124 S.W.3d 167, 171 (Tex. 2003)

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED
MOTIONS TO QUASH AND FOR PROTECTIVE ORDER**

prove that Mr. Vertucci and NV Companies have taken RETI's property, they are using it to RETI's exclusion, RETI has asked for its return, and it has not been returned.[16] Finally, RETI's claim for fraud (Claim 4) requires RETI to show that Mr. Vertucci and NV Companies executed the Agreement with the intention of breaching it thereafter.[17]

None of these elements require inquiry into Mr. Vertucci's personal life, his RETI personnel file, if one exists, - RETI refers to him as a Vendor- or other harassing topics into which RETI and Montelongo have threatened to inquire.  Rather, it is clear that these topics are of interest to RETI and Montelongo not because of their relation to RETI's claims, but because of the perceived pressure RETI and Montelongo could place on Mr. Vertucci through inquiry into these irrelevant topics.

**B.     *Mr. Vertucci's Personal Life Has No Relevance To Mr. Vertucci and NV Companies' Counterclaims.*[18]**

Just as with the affirmative claims raised by RETI, the counterclaims raised by Mr. Vertucci and NV Companies have no relation to Mr. Vertucci's personal life. Rather, the claims raised by NV Companies and Mr. Vertucci focus on their prior contractual relationship with Montelongo and RETI, RETI and Montelongo's breach

---

[16] *City Bank v. Compass Bank*, 717 F.Supp.2d 599, 611 (W.D. Tex. 2010)

The elements of conversion under Texas law are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property.

[17] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)

The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

[18] Notably, NV Companies and Mr. Vertucci have raised no claim for wrongful termination in the SACC, and, in fact, were not employees of RETI who would have such a claim available to them.  This is because "California law does not afford an independent contractor a right to relief for wrongful termination." *Hennighan v. Insphere Ins. Solutions*, 38 F. Supp. 3d 1083, 1108 (C.D. Cal. 2014) (interpreting California state law).  Therefore, there can be no basis to inquire into Mr. Vertucci's personal life and/or personnel file to support his "termination."

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED
MOTIONS TO QUASH AND FOR PROTECTIVE ORDER**

of that contract, and Mr. Vertucci and NV Companies' joint venture with Mr. Fernandez and Montelongo's tortious interference with that relationship.

To prove his claim for breach of contract (Counterclaim 3), Mr. Vertucci need only show that he had a valid contract with RETI related to his payment for provision of speaking services, RETI breached that agreement, and Mr. Vertucci was harmed as a result.[19] To prove their claim against RETI for *quantum meruit* (Counterclaim 5) and for theft of services (Counterclaim 7), Mr. Vertucci and NV Companies must show that they provided valuable services to RETI, that RETI accepted those services with knowledge that Mr. Vertucci and NV Companies expected to be compensated for those services, and they were not so compensated.[20] [21]

To prove his counterclaim for fraudulent inducement (Counterclaim 4), Mr. Vertucci needs to show that Montelongo and RETI promised to not interfere with the joint venture with Mr. Fernandez, if Mr. Vertucci provided speaking services to RETI without compensation, that Mr. Vertucci provided those services and RETI and

---

[19] This claim is dictated by Texas law. *See* Order Granting in Part and Denying in Part Motion to Dismiss [D.E. 94]. *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (1st Tex. App. 1995)

   The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.

[20] This claim is also dictated by Texas law. *See* Order Granting in Part and Denying in Part Motion to Dismiss [D.E. 94]. *Southwestern Bell Telephone Co. v. Fitch*, 643 F.Supp.2d 902, 910 (S.D. Tex. 2009)

   To recover under *quantum meruit* in Texas, [the plaintiff] must prove that: (1) valuable services were rendered or materials furnished; (2) for the defendant; (3) which services and materials were accepted, used and enjoyed by the defendant; (4) under such circumstances as reasonably notified the defendant that the plaintiff was expected to be paid.

[21] *See* Tex. Civ. Prac. & Rem Code § 134.001 *et seq.*, Tex. Penal Code §31.04(a) (1); *Weiner v. Tex. Health Choice*, 2002 WL 441428 *5 (N.D. Tex. 2002)

   "Theft" is defined as "unlawfully obtaining services as described by Section ... 31.04 [of the Texas] Penal Code." *Id.* § 134.002(2). Section 31.04 of the Penal Code in turn provides:

      (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:

         (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token...

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Montelongo did, indeed, interfere with the joint venture with Mr. Fernandez, which they intended to do when they promised Mr. Vertucci they would not.[22] To prove their claim for tortious interference (Counterclaim 1), Mr. Vertucci and NV Companies need to prove that they had a valid joint venture with Mr. Fernandez, that Montelongo improperly interfered with that joint venture, and Mr. Vertucci and NV Companies were damaged as a result.[23]  Finally, Mr. Vertucci and NV Companies need to show that the Agreement is unenforceable as drafted, which is a largely legal determination, on their declaratory judgment claim.[24]

Just as with the claims raised by RETI, the counterclaims raised by Mr. Vertucci and NV Companies do not implicate Mr. Vertucci's personal life or the reasons for RETI's termination of Mr. Vertucci. And they would not serve as a basis for tortiously interfering with a joint venture agreement and ongoing business relationship. Rather, they focus on the business dealings between the parties and certain non-parties, which should be the focus of discovery related to the counterclaims.

---

[22] This claim is also dictated by Texas law. *See* Order Granting in Part and Denying in Part Motion to Dismiss [D.E. 94]. *Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp.*, 646 F.3d 321, 325 (5th Cir. 2011)

To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud: (1) a material misrepresentation; (2) that is false; (3) when the defendant made the representation, the defendant knew it was false or made the statement without any knowledge of its truth; (4) the defendant intended the plaintiff to rely on the representation, and the plaintiff actually relied on the representation; and (5) the defendant's actions caused an injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Fraudulent inducement also requires proof of an underlying contract which was induced. *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001).

[23] *Pacific Gas & Electric Co. v. Bear Stearns*, 50 Cal.3d 1118, 1126 (Cal. 1990)

The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

[24] Tex. Bus. & Com. Code § 15.51.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**C.    Because The Claims And Defenses At Issue In This Matter Have No Relation To Mr. Vertucci's Personal Life, Discovery Should Not Inquire Into His Personal Life.**

As is clear from the elements of the causes of action at issue, Mr. Vertucci's personal life, *regardless of whether true, false, inaccurate, incomplete, exaggerated or rumored,* has no tendency to make a fact of consequence or material to this action more or less probable.  Mr. Vertucci's personal life is without relevance to the claims and defenses at issue.  *See* Rule 401, Federal Rules of Evidence.  Because there is no relevance or materiality to an inquiry into Mr. Vertucci's personal life in this matter, and such an inquiry has the potential to prove particularly harassing and harmful to not only Mrs. Vertucci, but also to Mr. Vertucci, it is appropriate to enter a protective order to forbid inquiry into Mr. Vertucci's personal life in discovery.  *See* Fed. R. Civ. P. 26(c)(1)(A), (B), (D).  And these allegations affect and implicate other third parties' privacy as well.  In fact, Mr. Vertucci's personal life is so far from relevant to the claims and defenses before the Court, it is readily apparent that the sole value of an inquiry into his personal life is to cause embarrassment and apply pressure for case resolution reasons to Mr. Vertucci.  Such an attempt to gain an improper advantage in litigation should not be countenanced.

## VIII. GOOD CAUSE EXISTS TO ISSUE A PROTECTIVE ORDER PREVENTING RETI AND MONTELONGO FROM DEPOSING GINA VERTUCCI.

**A.    Motion to Quash Deposition of Mrs. Vertucci.**

As established in her declaration, Mrs. Vertucci has no knowledge of the operations of NV Companies and is not involved in its day-to-day operations.  (**Ex. 12 ¶ 7**).  Mrs. Vertucci has no knowledge of the materials that are used by NV Companies at real-estate investment seminars, she is not aware of NV Companies or Mr. Vertucci training and marketing techniques, and is not aware of any materials or training that Mr. Vertucci or any other former employee or contractor may or may not have received from RETI and/or Montelongo.  (*Id.* **¶ 9**).  Furthermore, Mrs. Vertucci has no

unique knowledge concerning Mr. Vertucci and NV Companies' joint venture with Mr. Fernandez or Montelongo and RETI's tortious interference therewith.  (*Id.* ¶ **7**). In short, Mrs. Vertucci lacks relevant knowledge of any of the claims and defenses at issue in this suit.  At best, she knows socially some of the litigants and their wives who have been sued by Plaintiff.  (*Id.* ¶ **10**).

Nevertheless, RETI and Montelongo are seeking to depose Mrs. Vertucci so that they can ask her irrelevant questions about claims and defenses involved in the lawsuit to which she has already attested she does not know, but also to ask her offensive and embarrassing questions concerning her husband, Mr. Vertucci.  When discovery is being undertaken for the sole purpose of annoyance and embarrassment, it is well within a court's discretion to issue a protective order to stop such discovery from going forward.  *See* Fed. R. Civ. P. 26(c)(1)(A), (B), (D). Furthermore, Federal Courts have granted protective orders against parties who seek to depose employees with little or no knowledge of the facts of the case. *See Apple Inc. v. Samsung Electronics Co. Ltd.*, 282 F.R.D. 259, 266 (N.D. Cal. 2012) (granting a protective order because the party compelling discovery did "not demonstrate a personal role or strategic…decision that [the third-party to be deposed] orchestrated or even approved.").

In light of Mrs. Vertucci's lack of useful knowledge pertaining to the claims and defenses in this suit, and the fact that she is not an employee of NV Companies or any other related entity, RETI and Montelongo have no need to depose her to obtain relevant information; they merely want to depose her to embarrass and harass Mr. Vertucci; the fact that her picture is on her husband's company website is not tantamount to her being "intimately involved" in the business issues being litigated. With no relevant information to be obtained from Mrs. Vertucci's deposition, and the severe risk of harm, harassment, and embarrassment to Mr. Vertucci if the deposition is permitted to go forward, the scale clearly tilts towards protecting Mrs. Vertucci

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

from being deposed by RETI and Montelongo in this action.  Mrs. Vertucci should not be used as a pawn in RETI's dispute with her husband.

### B.  Protective Order Prohibiting and Protecting Defendants and Case Witnesses from Responding to Written Discovery and Deposition Questions Regarding Alleged Personal Matters.

For the same reasons that Gina Vertucci's deposition should be quashed, the Court should exercise its discretion and grant a protective order to prevent the case from deteriorating and being litigated in the proverbial gutter.  There is no <u>legitimate</u> basis for pursuing these matters in this case.  If this area of inquiry is allowed, then it would be fair game, to demonstrate these areas of inquiry are a pretext, for Vertucci to conduct discovery about every other employee and contractor of Plaintiff for whom there was suspicion, innuendo, or rumor that <u>they</u> were engaged in affairs, sexual liaisons, or sexual harassment claims, allegations of drug use or other such conduct, to determine whether any of <u>those</u> Plaintiff's employees and contractors were disciplined for the same type of alleged conduct, or whether the Plaintiff merely maintained or facilitated a corporate culture that encouraged such behavior and/or looked the other way when such issues arose.

The time spent and the money spent to pursue and/or defend against salacious details of personal conduct is a waste of precious judicial time, money, and resources. Most, if not all, of any information developed in this regard, would ultimately be inadmissible under various Federal Rules of Evidence, including Rules 403, 801, and 802.  The  suggestion that this testimony is needed to cross-examine Mr. Vertucci's credibility is an admission of trying to impeach a  witness on a collateral issue. Even if remotely relevant, this "evidence" would not be probative of any material issue in the case, while simultaneously being highly prejudicial and if allowed, would require Vertucci to develop the same type of information about others in Plaintiff's company to show this reason was a pretext for the Plaintiff's tortious interference.  If discovery is allowed on these issues, these issues will take up further Court time in motions in

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

limine and motions to strike and will delay completion of discovery further.  Plaintiff should be prohibited, and Vertucci and any former employee or contractor of Montelongo who may be deposed, should be protected, from inquiries into such topics and from having to respond to such inquiries, which are not relevant, nor reasonably calculated to lead to the discovery of any inadmissible evidence, either in written discovery or in deposition.

This would include written discovery directed to the Defendants and questions to any witness intended to elicit information about affairs, sex details, etc.

### C.   Prohibit Any Contact with Any Witness by Any Party or Party Agent Other Than Counsel.

Finally, so that this case can be conducted on the facts and the merits versus through witness intimidation, tampering, and personal conduct threats, the Court should issue an order prohibiting <u>any</u> contact with any witness or potential witness by any party or employee of any party. Any case communications directed to a witness who is represented by counsel, should be solely through outside lead counsel.  Many of the likely witnesses in this matter been sued by Plaintiff and their affiliate companies in separate actions but these witnesses are represented by counsel for Defendants and or they have separate counsel. As such, just as there should be no direct contact between counsel and opposing parties in this action, it is appropriate for that prohibition on communication to extend to any non-party witnesses who are represented by counsel.  *Cf.* Cal. R. Prof'l Conduct 2-100 (prohibiting communication between counsel and a represented opposing party).

## IX.   DEFENDANTS' CONCLUSION

For the reasons stated herein, Defendants/Counter-Plaintiffs respectfully request the Court to issue a protective order (1) quashing the deposition and prohibiting further notices of deposition to Gina Vertucci; (2) excluding discovery into Mr. Vertucci's personal life and protecting Defendant and any witnesses from having

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    to answer such questions; and (3) prohibiting any  contact of Plaintiff, their agents or

2    attorneys or anyone represented by counsel and limiting communications regarding

3    the case to communications between the parties' counsel.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# RETI'S CONTENTIONS AND POINTS AND AUTHORITIES

## I.    RETI'S RESPONSE TO DEFENDANTS' ADDITIONAL INTRODUCTORY SECTIONS

### A.    *Response to Request for "Emergency Relief"*

From a procedural standpoint, Defendants' request for "emergency relief" is unsupported by any identified federal, local, or chamber rule.  *Contra*, L.R. 37-3. From a substantive standpoint, RETI adamantly disputes that "emergency relief" is needed on the grounds that the discovery requested is being sought to for the purposes of "annoyance, embarrassment, oppression, or undue burden or expense" – as discussed below, the evidence and allegations show that the witnesses and facts sought are relevant and important to RETI's defense *and* its case-in-chief.  That Defendants' perceive their own client's behavior as giving rise to "a Jerry Springer/Maury Povich-type in-the-gutter circus" is no fault of RETI's; and, his decision to conduct himself in such a manner does not serve to bar RETI's rights to discovery on the issues Vertucci has placed at issue.

Notably, Defendants have known, since at least June 2014, that RETI's position was that Vertucci's "inappropriate relationships with various clients of Plaintiff" led to the termination of their business relationship, as this was among Plaintiff's Complaint allegations.[25]  (Pl. Ex. A [Second Amended Complaint ("Complaint") (Doc. 49)], ¶ 2.[26])  Also, Defendants have been aware since July 2014 that Plaintiff intended to call Gina Vertucci, in particular, as a witness in this case, given that she was identified in RETI's Rule 26(a) disclosures.  (Pl. Ex. B [Rule 26(a) Disclosures].)

---

[25]  This same allegation appeared in the First Amended Complaint in this case, filed on March 7, 2014.  (*See*, Doc. 9, p. 5, ¶ 14.)

[26]  The Complaint, and the Counterclaims, *infra*, are being presented as exhibits in accord with L.R. 37-2.1.

Defendants did not, however, bring this motion[27] until the evening before the deposition of Gina Vertucci was scheduled, and had been scheduled for the preceding two weeks.[28]

That said, because Defendants' last-minute assertion of these motions significantly impedes RETI's ability to conduct full and complete discovery, RETI is agreeable to having this matter heard on shortened time, on the condition that its rights under L.R. 37-2.3 are preserved and separately scheduled by this Court, as needed.[29]

**B.    Response to "Statement of the Case Allegations"**

The claims for relief in Plaintiff's Complaint follow three general theories of malfeasance by Defendants, i.e., that:  1) Defendants wrongfully and under false pretenses took and used Plaintiff's confidential proprietary information in their own competitive business (First Claim for Relief for Breach of Contract, Fourth Claim for Relief for Fraud, and Fifth Claim for Relief for Conversion); 2) Defendants repeatedly disparaged Plaintiff and its business operations, on one hand by making false statements about Plaintiff, and on the other by claiming to maintain a business

---

[27]   Defendants originally filed a 25-page "emergency/expedited" motion on the same issues raised herein on the evening of June 15, 2015; Ms. Vertucci's deposition was scheduled for 10:00 a.m. on June 16, 2015.  (Doc. 109.)  Due to the motion's multiple violations of the Local Rules, the motion was denied, and Defendants were directed to follow the joint stipulation procedure in L.R. 37-2.  (Doc. 110.)

[28]   Defendants inaccurately state that the Parties agreed to take this deposition off calendar; that is _untrue_.  RETI did not so agree, and in fact recorded the non-appearance for use in motion to compel and/or contempt proceedings.  Other depositions, besides that of Ms. Vertucci, have gone off calendar due to Defendants' counsel's representations that the initially scheduled deponents were unavailable and with Defendants' counsel's representations that the witnesses would be made available at a more convenient date.  (Declaration of Jeffrey D. Cawdrey ("Cawdrey Decl."), ¶ 2.)

[29]   Defendants have not represented RETI's position entirely accurately in their section.  RETI's position is as stated in this Section.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

relationship with Plaintiff so as to have some visage of credibility (Second Claim for Relief for Business Disparagement); and 3) Defendants tortuously interfered with Plaintiff's existing and prospective economic relationships (Sixth Claim for Relief for Tortious Interference with Business Relations and Seventh Claim for Relief for Tortious Interference with Prospective Business Relations).  (*See*, Pl. Ex. A.)

In retaliation, Defendants asserted a mish-mash of Counterclaims, generally asserting three theories, i.e., that:  1) Defendants maintained a cash-flow property business that was presented at RETI seminars and became the subject of a joint venture (referred to as "NV Properties") with which RETI allegedly interfered out of fiscal motives (Doc. 75, ¶¶ 22-25, 36, 38-39, 56 [First Claim for Relief]); 2) RETI breached and wrongfully terminated a contract under which Defendants were former speakers at RETI events, also for fiscal motives (Id. at ¶¶ 70, 71 [Third, Fourth, Fifth, and Sixth Claims for Relief]); and, 3) the Vendor Agreement that Vertucci admits he signed is somehow legally unenforceable (Id. at ¶¶ 38, 100-101 [Eighth Claim for Relief]).[30]  (Pl Ex. C [Second Amended Counterclaims ("Counterclaims") (Doc. 75)].)

Another procedural fact that is relevant to this discovery dispute is that the parties jointly moved for, and the court issued, a comprehensive protective order that allows parties to designate documents, discovery, and evidence as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only," depending on the level of protection warranted.  (Doc. 96.)

## C.   Response to "Statement of Facts []"

This case, does, indeed involve, in essence, a "business divorce."  RETI is a provider of real estate investment education seminars and products, headed by celebrity house flipper, real estate guru, and master mentor Armando Montelongo, who is known for his role on the reality TV show "Flip This House."  In 2009,

---

[30]  Defendants' Second and Sixth Counts in their Counterclaims were dismissed upon RETI's Rule 12(b)(6) motion.  (Doc. 94.)

Vertucci/NVC used his relationship with Montelongo to become a part of RETI's seminar programs; by 2013, that relationship had turned quite sour.

The reasons for the souring were not the impetus for Plaintiff's lawsuit – the Complaint is based upon Vertucci's and NVC's post-relationship use of RETI's proprietary information, their interference with RETI's business relationships, and Vertucci's revealed fraudulent intent in courting RETI in the first instance. It is this use of proprietary information and improper business solicitations of which Gina Vertucci – an integral part of the Vertucci/NVC business(es) – has knowledge, and why she is an important witness to Plaintiff's case in chief.

In contrast, the reason for the "business divorce" has been placed front and center in Defendants' Counterclaims. The lynchpin of Defendants' affirmative theories of relief is the allegation that RETI's termination of its relationship with Vertucci and NVC was without cause, beyond Montelongo's own financial motives, and therefore wrongful, rising to the level of both tortious interference and a false promise of the Parties' continued relationship. Defendants also cite this theory as basis for their affirmative defenses to Plaintiff's Complaint. Otherwise stated, Vertucci has specifically put that cause of the divorce at issue. As a result, the true cause of the business separation – including Vertucci's infidelities – are directly relevant and critical to RETI's defense.

Specifically, Defendants allege in the Counterclaims that:

• "Vertucci had [a] valuable asset Montelongo was interested in – Vertucci owned or controlled a number of cash-flowing properties" (Pl. Ex. C [Counterclaims] at ¶ 22);

• "Montelongo was looking for ways to raise or maintain revenues" (Id. at ¶ 36);

• "[T]his was the beginning of Montelongo's strategy to terminate him and grab the NV Properties' business for himself" (Id. at ¶ 38);

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

- "Montelongo started … courting Fernandez on the idea of going behind Vertucci's back to effectively cut Vertucci out of the Vertuucci-Fernandez NV Properties real estate property sales joint venture agreement" (Id. at ¶ 39);

- Montelongo told Defendants' alleged partner(s) that, "Montelongo would bring the NV Properties in-house and do it himself, … while keeping all the profits from the properties' sales himself …" (Id.);

- Montelongo interfered with Defendants' joint venture contract "so he could receive greater profits from the NV Properties' portfolio sales than he was receiving, instead of Vertucci" (Id. at ¶ 56);

- "Montelongo [wrongfully interfered] so he could receive more money from the property sales of the NV Properties' portfolio that [sic] he was receiving at the expense of Vertucci" (Id. at ¶ 64);

- "Montelongo falsely promised Vertucci that Vertucci could continue profiting from the sale of the Vertucci-Fernandez NV Properties by having access to the students at the RETI Seminars" (Id. at ¶ 75);

- "Montelongo and RETI combined with Fernandez for an unlawful purpose, i.e., to ruin Vertucci's cash-flow property business and to enrich Montelongo, at the expense of Vertucci" (Id. at ¶ 88); and,

- As damages, Defendants claim to be entitled to monies resulting from RETI's termination of the business relationship with Vertucci/NVC (Id. at ¶¶ 107-109).

Defendants *repeat* the theme of these allegations – that RETI wrongfully terminated its business relationship with Vertucci out of financial motivations – in their <u>responses to RETI's written discovery requests</u>; for example:

- In response to the question asking Vertucci to identify the facts relating to his Count I for 'Tortious Interference with Contract," he responds that "Montelongo … terminated RETIU's relationship with NVC and Vertucci for personal financial reasons …" (Pl. Ex. D, p. 3, lns. 23-26 [Response to Interrogatory No. 1]);

- In response to the question asking Vertucci to identify the facts relating to his Count IV for "Fraudulent Inducement to Agree to Forbearance/Contract," Vertucci referred back to his answer to Interrogatory No. 1, immediately above (Id. at p. 5, lns. 7 [Response to Interrogatory No. 3]);

- In response to the question asking NVC to identify the facts relating to its Counterclaim allegation that "Montelongo falsely promised Vertucci that Vertucci could continue profiting from the sale of the Vertucci-Fernandez NV Properties by having access to the students at the RETI seminars," it likewise points to Montelongo's "interference" and RETI's wrongful "termination." (Pl. Ex. E, p. 4, lns. 10-12 [Response to Interrogatory No. 1]).

Importantly, Defendants have *also* raised this theory as <u>basis for their affirmative defenses</u> to Plaintiff's Complaint.  For example, Defendants contend that their Fifth Affirmative Defense for "unclean hands" is based on the allegation that "Montelongo tortuously interfer[ed] with Vertucci and NVC's joint venture with Fernandez, terminating RERTI's relationship with NVC and Vertucci for personal financial reasons …"  (Id. at p. 8, lns. 7-9 [Response to Interrogatory No. 9]).

These are the matters that are relevant in *this* case, before *this* Court, involving *these* parties – RETI and Defendants.  In their Section entitled "Statement of Facts Showing Plaintiffs' [*sic*] Intent to Litigate in the Gutter," Defendants attempt to obfuscate this point by raising a variety of unrelated, irrelevant, and unsupported assertions that, altogether, have no place in this Joint Stipulation.  In this regard, Defendants refer to, 1) Texas-based litigation between *non-party* Educational Management Services, LLC.[31] ("EMS"), on one hand, and various other individuals

---

[31]   EMS is <u>not</u> represented by Gordon & Rees, LLP in the Texas cases cited.  Instead, EMS is represented by its own counsel, Henry Gonzalez of Gonzalez, Chiscano, Angulo & Kasson, PC in San Antonio, Texas.  Nor is Mr. Gonzalez or his firm counsel of record in this case.  Conversely, Defendants' counsel (Akerman, LLP) is

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

who are also *non-parties* to this case, on the other; 2) TRO applications/pleadings filed and served by EMS as plaintiff therein – *not* RETI – in the Texas proceedings (Def. Ex. 7); 3) alleged (albeit mis-recorded) statements made by RETI's in-house counsel in a police investigation involving Vertucci/NVC that is wholly unrelated to either RETI or this lawsuit; 4) "fake" Facebook accounts that have no evidenced relationship to RETI[32]; and 5) communications with *separate* counsel for EMS – not counsel of record for *RETI* – regarding the cases in Texas, and *not* the present matter (Def. Exs. 5, 8).[33]

While RETI perceives these assertions as wholly unrelated to this Joint Stipulation – or even this case – Defendants' identification of them only highlights that it is Defendants, themselves, who are placing these types of matters at issue. RETI *must* be entitled to fairly respond, and conduct the discovery necessary to do so.

## II.   APPLICABLE LEGAL AUTHORITY AND STANDARDS

A protective order of the nature and scope that is sought by Defendants is not supported by either the Federal Rules of Civil Procedure or authority within the Ninth Circuit. While Rule 26(c) generally allows for the potential issuance of a protective order, it requires a showing of good cause. As detailed above and below, Defendants have not made such a showing, and their arguments with regard to embarrassment are both unconvincing and unsupported.

---

counsel for the Defendants in all of the Texas cases, in addition to the case pending before this Court.

[32]   In fact, Defendants *admit* that they brought their own TRO relative to these alleged "fake" posts, and that the Texas court denied it, without any finding that they were related to EMS, or – more importantly in this case – *to RETI*.

[33]   Oddly, Defendants also characterize RETI's request for Ms. Vertucci's deposition – and their 3-point outline of her relevance (Def. Ex. 10) – as evidence of an intent to "litigate in the gutter." This theory is wholly unsupported by the facts or by reason.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    Notably, Defendants offer no legal authority *at all* to serve as grounds to "quash"

2    the deposition subpoena to Gina Vertucci, nor could they; the deposition was properly

3    served and accepted by Vertucci's counsel, and is not in any way defective or

4    objectionable.  (*See*, Def. Exs. 9, 11.)

5    Under Rule 26(c), a trial court may grant a protective order when "justice

6    requires to protect a party or person from annoyance, embarrassment, oppression,

7    undue burden or expense."  FRCP Rule 26(c); *Dawe v. Corr. USA*, 2008 U.S. Dist.

8    LEXIS 51122, *48-50 (E.D. Cal. Apr. 23, 2008).  The relevant standard under Rule

9    26(c) is whether "good cause" exists.  *Id.* at 49.  Good cause is determined by

10   balancing the needs of discovery against the need for confidentiality.  *Id.*

11   The potential for embarrassment alone does not constitute good cause.  *Id.* "As

12   one circuit court has noted, 'because release of information not intended by the

13   [speaker] to be for public consumption will almost always have some tendency to

14   embarrass, an applicant for a protective order whose chief concern is embarrassment

15   must demonstrate that the embarrassment will be particularly serious.'"  *Renteria v.*

16   *Collectcorp*, 2005 U.S. Dist. LEXIS 41769, *6 (N.D. Cal. Oct. 26, 2005) (quoting

17   *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).  Broad

18   allegations of harm, unsubstantiated by specific examples or articulated reasoning, do

19   not satisfy the Rule 26(c) test. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121

20   (3d Cir. 1986)

21   Particularly where the issues that may give rise to embarrassment have been put

22   at issue by the party seeking the protective order – here, Vertucci/NVC – and are

23   already part of the public record, the argument that good cause exists is exceptionally

24   weak.  *See*, *Dawe v. Corr. USA*, 2008 U.S. Dist. LEXIS 51122, *50 (E.D. Cal. Apr. 23,

25   2008) ("Many of the allegations contained in the [] deposition have already been

26   rehashed (by both sides) in the public papers filed in connection with the pending

27   motions.  In light of this, much of the "private" information has already become

28

"public.")  In *Dawe v. Corr. USA*, the defendants sought a protective order regarding the discovery of certain documents and to seal the deposition transcript of a non-party witness that contained embarrassing information.  *Id.* at *10-11.  There, the court held that the documents were discoverable to the plaintiff, not only because the defendants put the matter at issue, but also because the matters were relevant to proving the truth or falsity of the claims and defenses of both parties.  *Id.* at *15-17. ("Indeed, [defendant] is advised that, based on a reading of its complaint, it has placed in issue its financial records … [plaintiff] is entitled to access those records in order to defend against the many claims asserted against him").  Accordingly, the court ordered production of documents; it did so, notably within the confines of the stipulated protective order that governed in the case.  *Id.* at *18.

Similarly, with regard to deposition testimony, the court found that although the deposition transcript contained some potentially embarrassing information, the information was properly discoverable due to the theories of the case at put at issue and the broad scope of the discovery allowed per the Federal Rules of Civil Procedure.  *Id.* at *49 ("Much of the information, though likely inadmissible and of dubious relevance to this case, relates, if at all, to [Plaintiff's] theory [of the case].  As discussed above, the court has determined that a broad range of information supporting that theory is discoverable, including some of the [deposition] testimony.  … The need of discovery as to some of the testimony outweighs the need for confidentiality" [emphasis added].)  Accordingly, the *Dawe* court denied the motion to seal the transcript, but allowed a protective order to limit the dissemination to the confines of the case (similar the potential use of the Protective Order here, as further discussed below).

Here, as in *Dawe,* the issues that are the subject of the discovery sought by Plaintiff are the result of what has been put at issue by the Defendants in their Counterclaims, discovery responses, and affirmative defense to the Complaint, as is

AKERMAN LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

detailed below.  And, as in *Dawes*, Defendant has failed to articulate good cause, or that any embarrassment would be "particularly serious" within the meaning of Rule 26(c), particularly when weighed against the right of RETI to conduct discovery to support and defend the claims at issue.  Finally, as in *Dawes*, there is a stipulated protective order governing in this case, which provides a <u>less restrictive means</u> for the protection of any sensitive discoverable information than the complete preclusion of discovery, as Defendants request.

     In addition, the broad rules supporting the right of a party to discovery of any non-privileged matter that is relevant to a claim or defense, regardless of admissibility, Fed. R. Civ. P. 26(b)(1), trumps Defendants' unspecific[34] claims regarding embarrassment, particularly because they are implicated by Defendants' own pleadings, against which RETI has the right to defend.  *See, Dawe v. Corr. USA*, 2008 U.S. Dist. LEXIS 51122, *15-17, 49-50 (E.D. Cal. Apr. 23, 2008).

     No authority cited by Defendants conflicts with the authority RETI presents.  In fact, in *Holguin v. County of Los Angeles*, 2011 WL 7128640, *5, the court noted that "it is not up to defendants to decide what plaintiff needs to pursue this action."  Moreover, *Holguin* dealt with the depositions of public officials and addressed undue burden analysis, not embarrassment.  Similarly, in *In re Roman Catholic Archbishop of Portland in Oregon* 661 F.3d 417, 426 (C.D. Cal. 2011) the Ninth Circuit pointed out that all material produced in pretrial discovery is "presumptively public," and found that despite the priests' showing of potential particularized harm — which Defendants have not done in the instant case— the public interest outweighed private interest, and the Ninth Circuit allowed the disclosure of the documents in question.

     Under these standards, and as discussed below in conjunction with the pleadings and evidence of record, Defendants' request(s) must be denied.

---

[34]  Notably, Defendants never claim Vertucci's "alleged affair" to be true or untrue, nor do they offer any further detail to show the potential for "embarrassment."

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## III. THE DEPOSITION OF GINA VERTUCCI IS HIGHLY RELEVANT TO RETI'S CASE-IN-CHIEF AND DEFENSE AGAINST THE COUNTERCLAIMS

The testimony of third party witness Gina Vertucci is highly relevant to Plaintiff's case-in-chief and necessary to prepare RETI's defense against the Counterclaims.  Ms. Vertucci is not just the wife of Vertucci; she is a highly-visible and integral part of Vertucci/NVC's business, marketing, promotions, and seminar presentations.  This is evident from the facts that:

1)  Ms. Vertucci – standing side-by-side with Vertucci – is a presenter on the promotional video for the NVC website (Pl Ex. F [Screenshot]; Pl. Ex. Z [Promo Video]; Cawdrey Decl., ¶ 27 [Transcription of Promo]);

2)  Ms. Vertucci is a presenter in an infomercial for NVC (Pl. Ex. F (Under "Share":  "it's a screenshot from an infomercial"); Pl. Ex. G [Pic w/ Cameras]);

3)  Ms. Vertucci is prominently featured on the direct-mail advertisements for NVC (Pl. Ex. H [2014 Mailer]; Pl. Ex. I [2015 Mailer]);

4)  Ms. Vertucci participates in and appears on stage at NVC seminars (Pl. Ex. J [NVC Seminar Photo]);

5)  Ms. Vertucci participates in and appears at NVC bus tours (Pl. Ex. K [Bus Tour Photo]);

6)  Ms. Vertucci is featured in NVC's webinar promotions (Pl. Ex. L [Webinar Slides]; Cawdrey Decl., ¶ 14 [Transcription of Webinar]);

7)  Ms. Vertucci actively promotes NVC and Vertucci on her Twitter and Facebook accounts (Pl. Ex. M [GV Twitter]; Pl. Ex. N [GV Facebook]); and,

8)  There is some question as to whether Ms. Vertucci, herself, holds a license with the California Bureau of Real Estate, suggesting an even greater role in the Verutcci/NVC business (Pl. Ex. O [BRE Record]).

///

Accordingly, there is solid evidentiary basis to conclude that Ms. Vertucci has knowledge of the NVC business, and can speak to questions regarding NVC's taking and use of proprietary materials from Plaintiff (its "Confidential Information" under the Vendor Agreement)[35], as well as the *lack* of time and resources expended between Vertucci's termination by Plaintiff and the start-up of NVC's new seminar business (a mere 3-month period), which evidence that NVC started its business by stealing information from Plaintiff.  Ms. Vertucci's testimony is thus relevant to Plaintiff's First Claim for Relief for Breach of Contract, i.e., the Vendor Agreement which precludes NVC's use of Plaintiff's confidential proprietary information, and the Fifth Claim for Relief for Conversion of this same property.  (Doc. 49.)

It is anticipated that Ms. Vertucci's deposition will reveal her even *further* involvement in the NVC business.  Indeed, she has admitted in her declaration that she holds an ownership interest in Innovative Holdings Group, LLC, which is an affiliate of NVC and one that is intrinsically involved in NVC's provision of real estate services during the relevant timeframe (2012 and 2013), which services are at issue in the Counterclaims.  (Def. Ex. 12, ¶ 5; Pl. Ex. P [ IHG Contract 2012]; Pl. Ex. Q [IHG Contract – 2013].)

Ms. Vertucci's declaration raises further issues on which cross-examination is warranted.  She states that she did not send any emails to the "gillianb@ teamarmando.com" address – which is *contradicted* by the evidence (Pl. Exs. R, S, T, and U [2 Emails + 2 Address ID Records]), but does <u>not</u> deny that her email address is "gster.22@gmail.com" (the source of the emails) (Pl. Exs. T, U), or that she emailed

---

[35]  Ms. Vertucci need not know what is "Confidential Information" for the purposes of the Vendor Agreement signed by Vertucci and NVC, as she is not being accused of breach or misappropriation, herself, but is only a percipient witness – as such, she only need know what materials were used by Vertucci and NVC; other parties will be able to identify whether they fall within the Vertucci-RETI contract.  (*Contra*, Def. Ex. 12, ¶¶ 7-9.)

AKERMAN LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Keith Yackey from that address (the name in the "To" line of the emails) (Pl. Exs. R, S), or that she even *looked at* the emails at issue to determine whether they were hers (*see*, Def. Ex. 12, ¶ 11). RETI is not obligated to take simply Ms. Vertucci's word for it, or the word of Defendants' counsel, particularly in light of the evidence and the gaps in her declaration – RETI is entitled to question her directly on these matters, her involvement Defendants' business, and her knowledge relative to same.[36]

Indeed, these emails suggest, along with other evidence, that Ms. Vertucci was involved in NVC's improper solicitation of certain of Plaintiff's employees/contractors. In particular, Ms. Vertucci was in communication with Keith Yackey between 2012 and 2013 – when he was employed with Montelongo – and into 2014, after he left Plaintiff's employment and joined Defendants. (Pl. Ex. V, [Facebook Photos].) It also appears from the emails, that Ms. Vertucci directly contacted either Keith Yacky or former RETI employee Gillian Birnie (it is unclear whom she intended to email) at an apparent business email account. Ms. Vertucci, thus, is squarely implicated as an agent of NVC involved in the improper solicitation of RETI personnel, which gives rise to Plaintiff's Sixth and Seventh Claims for Relief for tortious interference with existing and prospective business relations.

Given the foregoing, it is reasonable to conclude that Ms. Vertucci would have relevant information regarding whether or not Defendants were – as they allege in the Counterclaims – involved a joint venture contract. This is particularly true, given that Vertucci claims to have invested his own (presumably community property) funds in this joint venture (Pl. Ex. C [Counterclaims] ¶45) and that the alleged joint venture partners gifted a parcel of Florida property to Vertucci (Id. at ¶26); certainly Ms. Vertucci would have knowledge whether this is or is not true, especially since she

---

[36]  Even more, if Ms. Vertucci maintains that she did not write the emails, and no other source of the emails is identified (beyond Ms. Vetucci's email address), how could they be "embarrassing" for the purposes of Rule 26(c)?

JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED
MOTIONSTO QUASH AND FOR PROTECTIVE ORDER

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

evidently maintains a relationship with the alleged joint venture partners – Giovanni Fernandez and Elise Sabatino.  (Id. at ¶¶25-26; Pl. Ex. W [Facebook Photo]; *see also*, Pl. Ex. V.)  Also, while Defendants somehow blame the demise of their radio show on Plaintiff, Ms. Vertucci would likely be able to speak to the relevant circumstances that led to the show ending.

Defendants rely on *Apple Inc. v. Samsung Electronics Co. Ltd.* 282 F.R.D. 259, 266 (N.D. Cal. 2012) ("*Apple v. Samsung*") for the proposition that a protective order may be appropriate where the party seeking to depose the witness does not "demonstrate a personal role" that the party to be deposed "orchestrated or even approved."   However, Defendants fail to point out that *Apple v. Samsung* dealt with apex depositions of Executive Vice President or higher class employees of Samsung.  In fact, the *Apple v. Samsung* court acknowledges that "the apex doctrine exists in tension with the otherwise broad allowance for discovery of party witnesses under the Federal Rules." *Id.* at 263.   Further, Defendants fail to point out that in *Apple v. Samsung,* the court ordered most of the depositions of the apex employees to go forward subject to time limitations because Apple demonstrated that the employees had unique, first hand, non-repetitive knowledge of the case and the party seeking the deposition had exhausted less intrusive means. *Id.* at 263, 269.

Here, not only has RETI exhausted less intrusive means via written discovery, but also, Ms. Vertucci is likely to have unique, first-hand knowledge of the claims and defenses that are at issue in this case.  Even under the apex deposition standards, Ms. Vertucci is subject to deposition because she is likely to have had conversations with NVC employees, RETI employees, and Montelongo that may address the issues raised in Vertucci's and NVC's affirmative defenses and Counterclaims.  Further, there is extensive evidence that shows Ms. Vertucci is involved in business of NVC, as a participant, a promoter, and potentially a recruiter, as well as a licensed sales person.  As the *Apple v. Samsung* court stated, "[w]hen a witness has personal

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   knowledge of facts relevant to the lawsuit, even a corporate president or CEO is

2   subject to deposition." *Id.* at 263.  Accordingly, Ms. Vertucci's deposition is legally

3   and factually warranted here.

4        Against this strong factual and legal basis for Ms. Vertucci's deposition,

5   Defendants' counsel Clint Corrie of Akerman, LLP shockingly presents a

6   *conveniently-redacted* settlement communication from counsel[37] – evident from the

7   very title of the email – as purported evidence of mal-intent.  Not only is the

8   introduction of such confidential settlement communications among counsel

9   questionable from a professional and ethical standpoint, but also, they show no such

10  attempts at settlement leverage.  In fact, the communication is straightforward and

11  factual, and even refers back to the 3-point outline of Ms. Vertucci's relevance

12  previously forwarded to counsel, which contains no indication of an intent to harass,

13  embarrass, annoy, or leverage settlement.  (Def. Ex. 13, referring to Def. Ex. 6.)

14       Based on the foregoing, it is manifest that Ms. Vertucci is an important witness

15  in this case.  Accordingly, RETI is entitled to take her deposition and obtain her

16  relevant documents, as subpoenaed.[38]

17

18

19

20  _____

21  [37]   Actually, Mr. Corrie introduces two confidential settlement emails from RETI's
    counsel into the public record.  (*See also*, Def. Ex. 15.)  Defendants' counsel's

22  conduct in this regard will hinder – and *has* hindered – subsequent communications,

23  and should not be condoned by this Court.

24  [38]   The time and date for this deposition and document production has passed without
    either compliance by Ms. Vertucci or an order from the court to stay such proceedings.

25  (*See*, Def. Ex. 11.)  Accordingly, RETI made a record of the witness' non-appearance

26  and intends to pursue contempt proceedings against Ms. Vertucci if she is not

27  voluntarily produced for deposition.

28

## IV.  VERTUCCI HAS PUT HIS PERSONAL AFFAIRS SQAURELY AT ISSUE BY HIS COUNTERCLAIMS AND AFFIRMATIVE DEFENSE AGAINST WHICH RETI IS ENTITLED TO DEFEND

In its Complaint, Plaintiff gave a high-level reason for the termination of its relationship with Defendants, as part of the factual background for its case.[39]  As detailed above (Section I(B) and I(C), *supra*), it was Defendants' Counterclaim allegations, substantive discovery responses, and "unclean hands" affirmative defense to the Complaint, that have put Vertucci's inappropriate relationships" – with RETI personnel – squarely at issue, and a necessary and critical part of RETI's preparation of its case.

Altogether, while Defendants argue that the elements of their legal theories do not implicate Vertucci's "personal life," the actual allegations underlying those theories, as stated in the Counterclaims and repeated in written discovery responses, and offered as basis for Defendants' affirmative defenses, do implicate such facts. That is, Defendants will tell a jury at trial that the RETI-Vertucci/NVC relationship was terminated wrongfully because Montelongo had financial incentive to take Vertucci's business for himself.  It is *inherent* in the concept of due process that RETI *must* be entitled to present its defense to this untrue accusation, and present its own contrary evidence that the true reason for the termination was that:

- Vertucci was fraudulently representing himself to RETI clients, customers, and contractors;

- He was recklessly revealing that fraud through his womanizing behavior at the same RETI events where he spoke;

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

---

[39]  *See*, Pl. Ex. A [Complaint] ¶ 12; by "inappropriate relationships," Plaintiff intended to broadly refer to both improper agreements to borrow from RETI students, as well as romantic relationships.  Plaintiff intentionally kept the reference non-descript; Defendants' allegations, however, demand specification.

- He was thereby risking damage to the RETI brand;

- And <u>Montelongo was not going to tolerate such conduct, for the protection of his clients and his company</u>, and thus severed the relationship.

(*See*, Pl. Exs. L; Declaration of Armando Montelongo ("Montelongo Decl."), ¶¶ 2, 3; *see also*, Def. Exs. 2, 4.)  The development of evidence on this point, thus, is critical to RETI's defense against Defendants' untrue Counterclaim theories; even more, it will speak to Vertucci's credibility (or lack thereof) as a witness in this case, which will turn significantly on testimonial evidence.

That Montelongo elected not to write these facts in Vertucci's termination letter (Def. Ex. 17) certainly shows his professionalism, but does not in any way provide conclusive evidence that it was not the predominant or material reason for the termination.  Likewise, RETI's counsel's refusal to respond to an *untimely* and informal (non-Rule 34) request for Plaintiff's HR files on Vertucci (Def. Ex. 15), establishes nothing more than the fact that Defendants' counsel was willing to entertain the relevance of the personal relationship issues *if* it served him too, but was too late under the Scheduling Order to pursue it, and thus took the position Defendants assert herein.[40]

While the relevance of Vertucci's "personal life" to his own allegations is well-established, it is important to recognize that Defendants request for a protective order is much broader than that.  They are seeking "[a] protective order applicable case-wide to <u>all witnesses</u> prohibiting questions or requiring answers to <u>any</u> written discovery or depositions regarding <u>personal</u>, sexual, <u>relationships</u>, alleged affairs, etc.," i.e., a prohibition on a broad, if not unintelligible, scope of questions for <u>all</u> witnesses in this case.  Significantly, they do not define what is meant by "personal, sexual, relationships," but such could arguably reach the social relationships that were tapped

---

[40]  Logically, such files would not exist, given that Vertucci was a contractor, and not an employee.

**JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED
MOTIONS TO QUASH AND FOR PROTECTIVE ORDER**

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

into by Vertucci, Ms. Vertucci, and NVC in improperly soliciting Plaintiff's personnel. For example, Defendants could object to a question about a communication between Ms. Vertucci and Keith Yackey, claiming it to be part of a "personal" relationship when it is actually part of the Vertucci/NVC business interference effort.  Similar objections would likely be made by Defendants to communications between Vertucci and Chris Sanders – another individual subject to improper solicitations (Pl. Ex. A [Complaint] ¶64), but whom Vertucci characterizes as a "friend[]" (Pl. Ex. B [Counterclaims] ¶ 10).  The gross overbreadth of the requested protective order is thus not only unsupported, but also, provides basis for considerable discovery abuse by Defendants.

Under the standards set forth above, Defendants have fallen woefully short of the good cause showing for the requested protective order, as to Vertucci or the other (unidentified) witnesses in this case.  Their request for such must be denied.

## V.  DUE PROCESS AND ESSENTIAL FAIRNESS PROHIBIT DEFENDANTS' REQUESTED PROTECTIVE ORDER AGAINST RETI'S CONTACT WITH ANY POTENTIAL WITNESSES

RETI and its counsel have, at all times, complied with the authorities governing communications in the context of litigation.  In the course of meet and confer discussions, RETI's counsel confirmed that it would continue to comply with its obligations under California's Rules of Professional Conduct, and nothing more.[41]

In particular, Rule 2-100 provides, in relevant part, as follows:

> (A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be

---

[41]  RETI did not, as Defendants misrepresent, agree that parties' attorneys should not be directly contacting any witness represented by counsel, as such is neither required under the Rules, nor could RETI's counsel necessarily know if a witnesses is represented unless that witness tells counsel so, and refers him/her to the witness' counsel.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

represented by another lawyer <u>in the matter</u>, unless the member has the consent of the other lawyer.

(B) For purposes of this rule, a "party" includes:

(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; … [Emphasis added.]

First, nothing in this rule precludes RETI's counsel's communications with non-parties in this matter, i.e., potential witnesses. Even as to persons such as Keith Yackey – a contractor, and not an employee, of NVC – such communications would not be precluded (although they have not occurred, nor are contemplated by counsel for RETI). (Pl. Ex. X, 33:14-34:5.) To the extent Mr. Yackey is a "party," it is in an entirely separate case, involving another plaintiff (EMS) whose principal is Mr. Montelongo, and in which RETI's counsel of record (Gordon & Rees, LLP) is not involved.

Second, nothing in this rule precludes party-to-party communications – indeed, to the contrary, the "Discussion" [42] of this rule explains that,

Rule 2-100 is <u>not</u> intended to prevent the parties themselves from communicating <u>with respect to the subject matter of the representation</u>, and nothing in the rule prevents a member from advising the client that such communication can be made." [Emphasis added.]

Importantly, there is no limitation on the party-to-party communications referenced. Thus, while logically, the allowance of party-to-party communications would facilitate informal settlement discussions – as was evidently at issue in the party-to-party communications referenced – that is not the only type of communication that is permitted. Indeed, the first part of the text message introduced by Defendants directly pertains to settlement discussions, and expresses concern that settlement offers were not being communicated by Mr. Yackey's counsel to Mr. Yackey. (*See*, Def. Ex. 17; *see also*, Pl. Ex. X, 161:23-162:11.) Notably absent from

[42]   As posted on the website of The State Bar of California (http://rules.calbar.ca.gov/Rules/RulesofProfessionalConduct.aspx).

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Defendant's evidence is any declaration or other evidence from Mr. Yackey that _he_ objects to the communication.

There are no other legal restrictions (much less prohibitions) on RETI's counsel's (or RETI's own) communications with potential witnesses or among parties, nor are any cited by Defendants. And logically so – the prohibition they seek is an inherent and unsupportable restriction on the Parties' (and their attorneys') constitutional rights to free speech. In fact, it is on this same basis – a constitutional violation, _as well as_ the "unclean hands" of Vertucci – that Defendants' admit that their own TRO in Texas was denied. (Pl Ex. Y [Texas TRO Transcript], pp. 16-30.)

Altogether, Defendants' claims of "witness intimidation" are unsupported, manufactured, and unnecessarily alarmist. They provide no basis for the protective order sought, and such would most certainly be a violation of RETI's constitutional rights, as well as their due process rights in thoroughly preparing its case (including the interview of and communication with potential witnesses). As such, this request too is properly denied.

## VI.   RETI'S CONCLUSION

The record does not support any of Defendants' overbroad and unsubstantiated requests, and instead, squarely establishes the relevance of the discovery that Defendants seek to conceal. Accordingly, Defendants' motion should be denied.

Dated:  June 29, 2015

Respectfully submitted,
**AKERMAN LLP**


By: _/s/ Clint A. Corrie_
    Karen P. Ciccone, Esq.
    Clint Corrie, Esq.
    _Admitted Pro Hac Vice_
    Attorneys for Defendants

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1

Dated:  June 29, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

GORDON & REES LLP

*/s/ Jeffrey D. Cawdrey*

Jeffrey D. Cawdrey
Kimberly D. Howatt
Andrew J. Moon
Attorneys for Plaintiff and
Counterdefendant REAL ESTATE
TRAINING INTERNATIONAL, LLC
and Counterdefendant ARMANDO
MONTELONGO

## SIGNATURE CERTIFICATION

I hereby certify that the content of this document is acceptable to, Jeffrey Cawdrey, counsel for Plaintiff/Counter-Defendant REAL ESTATE TRAINING INTERNATIONAL, LLC and Counter-Defendant ARMANDO MONTELONGO, and that I have obtained Mr. Cawdrey's authorization to affix his electronic signature to this document.

Dated:  June 29, 2015

SPACH, CAPALDI & WAGGAMAN

*/s/ Andrew D. Tsu*

Karen Palladino Ciccone
Clint Corrie
David A. Meek, II
Madison S. Spach, Jr.
Andrew Tsu
Attorneys for Defendants/Counter-
Claimants THE NICK VERTUCCI
COMPANIES and NICK VERTUCCI

## PROOF OF SERVICE

I am employed in the City of Newport Beach and County of Orange, California. I am over the age of 18 and not a party to the within action. My business address is 4675 MacArthur Court, Suite 550, Newport Beach CA 92660.

On **June 29, 2015**, I served the following document(s):

**JOINT STIPULATION RE: DEFENDANTS' EMERGENCY/EXPEDITED MOTIONS TO QUASH AND FOR PROTECTIVE ORDER**

on the persons below as follows:

| Attorney | Telephone/Facsimile/Email | Party |
|---|---|---|
| Andrew J. Moon, Esq. Education Management Services, LLC 2935 Thousand Oaks Dr., #6-285 San Antonio, TX 78247 | Telephone: 210-501-0077 Facsimile: 210-568-4493 andrew.j.moon@gmail.com andym@teamarmando.com | Attorneys for Plaintiff / Counter-Defendant REAL ESTATE TRAINING INT'L, LLC and Counter-Defendant, ARMANDO MONTELONGO |
| Jeffrey D. Cawdrey, Esq. Kimberly D. Howatt, Esq. Gordon & Rees LLP 633 W. 5th Street, 52nd Floor Los Angeles, CA 90017 | Telephone: 213.576.5000 Facsimile: 213.680.4470 jcawdrey@gordonrees.com khowatt@gordonrees.com | Attorneys for Plaintiff REAL ESTATE TRAINING INT'L, LLC and Counter-Defendant, ARMANDO MONTELONGO |

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Dallas, Texas.

☒ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

☐   (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐   (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒   (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐   (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☐   (State)   I declare under penalty of perjury under the laws of the State of Texas that the above is true and correct.

☒   (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **June 29, 2015**, at Dallas, Texas.

| Jacqueline Torres | /s/ Jacqueline Torres |
|---|---|
| (Type or print name) | (Signature) |

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342