# EXHIBIT A

1  JEFFREY D. CAWDREY (SBN: 120488)
   KIMBERLY D. HOWATT (SBN: 196921)
2  GORDON & REES LLP
   633 W. Fifth Street, 52nd Floor
3  Los Angeles, CA 90071
   Telephone: (213) 576-5000
4  Facsimile: (213) 680-4470
   jcawdrey@gordonrees.com
5  khowatt@gordonrees.com

6  JOSEPH WESLEY HUESSER II (*Pro Hac Vice Pending*)
   EDUCATION MANAGEMENT SERVICES, LLC
7  2935 Thousand Oaks Drive, Suite 6-285
   San Antonio, TX 78247
8  Telephone: (210) 501-0077
   Facsimile: (210) 568-4493
9  weshuesser@yahoo.com

10 Attorneys for Plaintiff
   REAL ESTATE TRAINING INTERNATIONAL, LLC

11

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                       SOUTHERN DIVISION

16

17 REAL ESTATE TRAINING              ) CASE NO. 8:14-cv-00546-AG-DFM
   INTERNATIONAL, LLC,               )
18                                   ) **PLAINTIFF'S SECOND AMENDED**
                       Plaintiff,    ) **COMPLAINT**
19                                   )
      v.                             ) **[DEMAND FOR JURY TRIAL]**
20                                   )
   THE NICK VERTUCCI COMPANIES,      ) Dept.: Courtroom 10D
21 INC. and NICK VERTUCCI,           ) Judge: Hon. Andrew J. Guilford
                                     )
22                    Defendants.    )
                                     )
23                                   )
                                     )
24 _____   )

25

26

27

28

                              -1-

1   COMES NOW plaintiff REAL ESTATE TRAINING INTERNATIONAL,

2   LLC, D/B/A ARMANDO MONTELONG SEMINARS ("Plaintiff" or "RETI") ,

3   and files this Second Amended Complaint against THE NICK VERTUCCI

4   COMPANIES, INC., and NICK VERTUCCI (collectively "Defendants"), and

5   hereby alleges and would respectfully show this Court as follows:

6                                **PARTIES**

7       1.      Plaintiff, Real Estate Training International, LLC D/B/A Armando

8   Montelongo Seminars, is a Delaware limited liability company, authorized to do

9   business in the State of Texas, with its principal place of business in San Antonio,

10  Bexar County, Texas.

11      2.      Defendant The Nick Vertucci Companies, Inc. ("NVCI") is a Nevada

12  Corporation whose address is 4705 South Durango Drive 100-A1, Las Vegas, NV

13  89147 and whose registered agent is AR Registered Agents at 8960 Clairton Court,

14  Las Vegas, Nevada 89117.

15      3.      Defendant Nick Vertucci ("Vertucci") is an individual whose

16  residence is located at 6305 East Abbeywood Road, Orange, California 92867, and

17  therefore is a resident of this state and this district.

18                        **JURISDICTION AND VENUE**

19      4.      Jurisdiction is proper in this case pursuant to 28 U.S.C. §1332(a) due

20  to the diversity of citizenship of the parties and the fact that Plaintiff's claims

21  exceed $75,000.00.

22      5.      This complaint was originally commenced in the Texas state court on

23  January 16, 2014, accompanied by a request for a temporary restraining order

24  ("TRO"), in an effort to halt Defendants' active business misconduct.  The TRO

25  was issued, and just one day before the hearing thereon, Defendants removed this

26  matter to the U.S. District Court for the Western District of Texas on the basis of

27  diversity jurisdiction. This case was transferred to this venue by order of the U.S.

28  District Court for the Western District of Texas, upon Defendants' motion.  A

1   substantial part of the events or omissions giving rise to this claim occurred in the

2   Western District of Texas, 28 U.S.C. §1391(a)(2).

3        6.      This Court has personal jurisdiction over Defendants because they

4   purposely availed themselves to the privileges of conducting activities within

5   California, among other states, they have substantial and continuous contacts with

6   the State of California, among other states, so as to establish minimum contacts,

7   and exercising jurisdiction over them does not offend the traditional notions of fair

8   play and substantial justice.

9                                    **FACTS**

10       7.      In the year prior to January 1, 2010, Vertucci met and befriended the

11   principal of RETI, Armando Montelongo, Jr. ("Montelongo"). Through this

12   personal friendship, Vertucci gained Montelongo's trust and confidence.

13   Accordingly, RETI, also doing business as "Armando Montelongo Seminars," and

14   Vertucci began developing a business relationship, based upon mutual confidence,

15   trust, and reliance upon the parties' good faith, whereby Defendants would provide

16   mentorship and real estate services to RETI's clients. In the course of this business

17   relationship, for due and proper consideration, Plaintiff and Defendants entered

18   into a written vendor agreement with Plaintiff (the "Vendor Agreement," a true and

19   correct copy of which is attached hereto as <u>Exhibit 1</u> and incorporated herein by

20   reference as though fully alleged herein) whereby Defendant would provide real

21   estate training services on behalf of Plaintiff's companies to Plaintiff's customers

22   using Plaintiff's teaching materials, methods, and other confidential and

23   proprietary information owned by Plaintiff. This Vendor Agreement began in

24   2010, and continued until September of 2013, when both the Vendor Agreement

25   and the business relationship ceased.

26       8.      During this time, in order to carry out Defendants' obligations and

27   duties under the Vendor Agreement, Vertucci, on numerous occasions, personally

28   traveled to Plaintiff's Corporate Headquarters location in San Antonio, Texas to

-3-

1   meet with RETI's principal, Armando Montelongo, Jr., to continue to develop a

2   relationship of trust and confidence and for business related trainings, as further

3   described in the third party statements <u>Exhibits 2, 3, 4, and 5</u>, attached hereto and

4   incorporated by reference as though fully alleged herein.

5        9.     In addition to his personal attendance at the various business trainings

6   in San Antonio, Vertucci, in his individual capacity and acting on behalf of NVCI,

7   traveled and performed teaching and mentoring duties for Plaintiff's customers at

8   live seminar events in San Antonio, Texas and in other states.

9        10.    Under the terms of the Vendor Agreement, Defendants agreed to,

10   among other terms, the following provisions (enumerated in Exhibit 1):

11              Vendor agrees to never use or disclose, directly or
12              indirectly, for any reason whatsoever or in any way other
                than at the direction of AMS or after receipt of the prior
13              written consent of AMS, any Confidential Information of
                AMS. Specifically, Vendor agrees not to utilize,
14              disclose, copy, duplicate or publish all or any part of, nor
                lend nor permit the disclosure, copying or duplication or
15              publication of all or any party of the Confidential
                Information of AMS (including but not limited to books,
16              records, clients lists, software, electronic files, customer
                lists, or any other documents or material related to the
17              business of AMS) to any person or entity, except with the
                express prior and written consent of AMS. Further,
18              Vendor shall maintain the confidentiality of all
                Confidential Information of AMS for the sole use and
19              benefit of AMS.

20        11.    Further, the Defendants agreed to the following provisions

21   enumerated in the Vendor Agreement:

22              Except as AMS may waive or modify in its sole
                discretion, during the term of the business relationship
23              with AMS and for a period of twenty-four (24) months
                following the effective termination date of Vendor's
24              business relationship with AMS, for any reason,
                regardless of whether initiated by Vendor's business
25              relationship with AMS, for any reason, regardless of
                whether initiated by Vendor or AMS, Vendor shall not
26              solicit, induce, or attempt to induce, any past or current,
                supplier, client or customer of AMS with whom Vendor
27              dealt, had contact or gained Confidential Information, or
                any employee or contractor of AMS, as the case maybe
28              be, to: cease or otherwise modify its doing business, in

whole or in part, with or through AMS; or do business with any other person, firm, partnership, corporation, or other entity which provides products or performs services materially similar to or competitive with those provided by AMS or accept any request for any such person or entity to do so.

Vendor will not take any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of AMS with any individual or entity identified by AMS as a client or potential client at any time during Vendor's business relationship with AMS and for a period of twenty-four (24) months following the effective termination date of Vendor's business relationship with AMS, for any reason, or otherwise benefit, either financially or otherwise from any Confidential Information (as defined in this Agreement) supplied to Vendor by AMS to change, increase or avoid directly or indirectly payment of established or to be established fees or commissions, without the specific written approval of AMS.

12.     On or about September 11, 2013, Defendants ceased working with Plaintiff. Defendants' Vendor Agreement and business relationship with Plaintiff was terminated due to Vertucci's repeated inappropriate relationships with various clients of Plaintiff. Shortly thereafter, Vertucci began operating a seminar business through NVCI, which provides products or performs services materially similar to, or competitive with, those provided by Plaintiff.

13.     The new NVCI seminar business provides the same and/or similar types of goods and services as Plaintiff's business. Specifically, both companies provide real estate education services and materials to students through nationwide seminars and bus tours, including recent events in the State in Texas, which is the corporate residence and principal place of business of RETI.

14.     Defendants, in the operation of their business, have used confidential and proprietary information owned by Plaintiff to the detriment of Plaintiff, including but not limited to Plaintiff's cash flow teaching methodology, market domination information, and asset protection information; client lists and contact information; and seminar marketing, promotional, and logistical strategies. To date, Defendants are currently using Plaintiff's cash flow teaching methodology,

Case 8:14-cv-00546-AG-DFM   Document 49   Filed 06/17/14   Page 6 of 20   Page ID #:489

1   market domination information, asset protection information, and other real estate

2   techniques and materials that were learned and obtained by Defendants while

3   performing their duties for Plaintiff's companies, in the course of the provision of

4   NVCI goods and services.

5        15.    Plaintiff is informed and believes and based thereon alleges that

6   Defendants have also posted malicious and slanderous comments about the

7   Plaintiff on their websites and various social media sites, including facebook.com,

8   in an effort to harm Plaintiff's business.  In addition, Plaintiff has been advised that

9   Defendants have contacted persons and/or entities that it knows to be Plaintiff's

10  employees and/or contracts, and told such persons and/or entities that RETI is

11  going out of business.  Such statements are false.  In addition, Plaintiff has been

12  advised that Defendants have contacted individuals that they know to be RETI's

13  clients, and told them that RETI is under investigation.  Such statements are false.

14  Defendants have further told these clients, employees, and contractors not to do

15  business with Plaintiff, based on these false statements.

16       16.    In addition, Defendants have used to promote and operate their

17  business Plaintiff's student testimonials, photographs of Plaintiff's employees

18  and/or owners, and various teaching materials and methods of Plaintiff.  These

19  materials and testimonials are the sole and exclusive property of the Plaintiff, and

20  were posted on Defendants' websites.

21       17.    Additionally, Defendants have solicited, and continue to employ

22  former contractors and/or employees of Plaintiff's in violation of the above

23  referenced Vendor Agreement, and in an intentional effort to compete with

24  Plaintiff and to induce said persons to reveal further confidential and proprietary

25  information belonging to RETI.

26       18.    Specifically, Defendants improperly and unlawfully solicited Keith

27  Yackey and Gillian Birnie for their business purposes and to induce them to do

28  business with Defendants and cease doing business with RETI.  Keith Yackey and

Gillian Birnie were each an employee and/or exclusive contractor of RETI at the time of said solicitation; Plaintiff is informed and believes and based thereon alleges that Defendants currently employ and/or contract with Keith Yackey and Gillian Birnie.

19.    In addition, even after this lawsuit was filed and as recently as last month, Defendants improperly and unlawfully solicited Chris Sanders for their business purposes and to induce them to do business with Defendants and cease doing business with RETI.  Chris Sanders was an employee and/or exclusive contractor of RETI at the time of said solicitation; Plaintiff is informed and believes and based thereon alleges that Defendants currently employ and/or contract with Chris Sanders.

20.    Defendants currently employ and/or contract with other former contractors and/or employees of Plaintiff, whom Plaintiff is informed and believes and based thereon alleges that Defendants solicited while they were still employees and/or exclusive contractors of RETI, including but not limited to Erik Slaikeu, Siggi Ahrens, and Nicole Marshall.  This information is displayed by Defendants via their social media websites through use of written content and photographs.

21.    In further violation of the Vendor Agreement, Defendants have contacted known current and/or former clients of Plaintiff in an attempt to solicit their business, induce them to breach their contracts and/or business relationships with Plaintiff, and/or interfere with Plaintiff's ongoing relationships with its clients, which relationships carry with them a high degree of value in good will, affirmation of Plaintiff's goods and services, and future business.  To date, Defendants are currently working with former clients of Plaintiff as a result of their business interference and inducement efforts, to the detriment of RETI.

22.    The intentional, malicious, and fraudulent actions by Defendants, as described herein, are in direct violation of the Vendor Agreement, in breach of the fiduciary duties stemming from the trust and confidence developed between the

1  parties, and tortious as a matter of law, and have resulted in several million dollars

2  of lost revenue for Plaintiff, as well as brand damage, damage to good will, and

3  losses resulting from employee/contractor turnover.

4  **CONDITIONS PRECEDENT**

5       23.    All conditions precedent necessary to maintain this action have been

6  performed or performance tendered, have been waived, or have occurred.

7       24.    RETI has issued to Defendants multiple cease and desist

8  correspondence demanding that Defendants halt their improper contacts with

9  Plaintiff's clients, employees, and contractors, as described herein, and demanding

10  the return and cessation of use of its property, i.e., the information and materials

11  improperly taken by Defendants and of which Defendants have interfered with

12  RETI's possession and/or control, as described herein, and Defendants have

13  refused to halt accordingly or return and/or cease use of them.

14  **FIRST CLAIM FOR RELIEF**
          **Breach of Contract**

15  **(Against All Defendants)**

16       25.    Plaintiff refers to and incorporates herein by this reference each and

17  every allegation in the foregoing paragraphs, as well as those in the paragraphs that

18  follow, as though fully set forth herein.

19       26.    Effective January 1, 2010, Defendants entered into the Vendor

20  Agreement with Plaintiff wherein Defendants agreed to certain terms, including

21  those enumerated herein-above, for fair and proper consideration, as acknowledged

22  therein.

23       27.    Defendants have used to promote and operate its business, including

24  by posting on their websites, Plaintiff's student testimonials, photographs of

25  Plaintiff's employees and/or owners, and various teaching materials and methods.

26  As set forth in the Vendor Agreement, and as a matter of law, these materials and

27  testimonials are the sole and exclusive property of the Plaintiff.  In addition,

28  Defendants are currently using Plaintiff's cash flow teaching methodology, market

1    domination information, asset protection information, and other real estate

2    techniques and materials that were learned and obtained by Defendants while

3    performing their duties for Plaintiff's companies.  These methods and materials,

4    too, are the sole and exclusive property of the Plaintiff as set forth in the Vendor

5    Agreement and as a matter of law.

6        28.    Defendants have solicited, and continue to employ former contractors

7    and/or employees of Plaintiff's in violation of the above referenced vendor

8    agreement.  Specifically, Defendants currently employ and/or contract with former

9    Plaintiff contractors and/or employees, Erik Slaikeu, Siggi Ahrens, Nicole

10   Marshall, Keith Yackey, and others.  This information is displayed publicly by

11   Defendants via their social media websites through use of written content and

12   photographs.

13       29.    In further violation of the vendor agreement, Defendants have

14   contacted current and/or former clients of Plaintiff in an attempt to solicit their

15   business, induce them to breach their contracts and/or business relationships with

16   Plaintiff, and/or interfere with Plaintiff's ongoing relationships with its clients,

17   which relationships carry with them a high degree of value in good will,

18   affirmation of Plaintiff's goods and services, and future business.  Defendants are

19   currently working with former clients of Plaintiff.  As a result of these actions,

20   Defendants are in breach of their agreement with Plaintiff.

21       30.    As a result of Defendants' actions, as described herein, Defendants are

22   in breach of their agreement with Plaintiff, which proximately caused Plaintiff's

23   damages, including but not limited to lost revenue, brand damage, damage to good

24   will, and losses resulting from employee/contractor turnover, in an amount

25   according to proof at the time of trial.

26   ///

27   ///

28   ///

PLAINTIFF'S SECOND AMENDED COMPLAINT – Case No. 8:14-cv-00546-AG-DFM

## SECOND CLAIM FOR RELIEF
### Business Disparagement
### (Against All Defendants)

31.     Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

32.     Defendants published disparaging written statements about Plaintiff's business and/or affiliates on well-known websites, including but not limited to facebook.com, as well in the public forum.  The statements were false.

33.     In addition, on multiple occasions in or about late 2013 and continuing to date, Defendants made statements to the public and their customers, and in particular, during their bus tours and seminars, that Defendants, and specifically Vertucci, had an affiliation with and/or endorsement by RETI and its principal Montelongo, when in fact they did not and such statements were false. Defendants' representation that they have such an affiliation and/or endorsement is inherently damaging to RETI's brand and the reputation of its principal, Montelongo, particularly in light of the improper conduct that occurred which led to the termination of the parties' Vendor Agreement.

34.     Even so, Defendants published these statements about RETI and its principal without any regard to the damage it would cause Plaintiff, and solely for its own benefit.  Defendants continue to publish an affiliation with RETI's principal, Montelongo, on their facbook.com website, to date.

35.     Defendants published these statements knowingly, intentionally, and with malice, in an effort to cause harm to Plaintiff's business name, brand, and relationships.  Plaintiff's reputation is damaged by any representation that he is affiliated with, endorses, or approves of the inappropriate conduct of Defendants and such necessarily causes him to lose the business and/or respect of those who are subject to such false representations.  Defendants knew the statements were false, and acted with reckless disregard for whether the statements were true, they

-10-

Case 8:14-cv-00546-AG-DFM   Document 144-1   Filed 07/01/15   Page 12 of 41   Page ID
#:2004
Case 8:14-cv-00546-AG-DFM   Document 49   Filed 06/17/14   Page 11 of 20   Page ID #:494

1   acted with ill will, and/or Defendants intended to interfere with Plaintiff's

2   economic interests.  Additionally, Defendants published the statements without

3   privilege.

4       36.   Defendants' false statements caused injury to Plaintiff, including but

5   not limited to lost revenue, brand damage, and loss of goodwill, and therefore

6   Plaintiff seeks damages within the jurisdictional limits of this court, in an amount

7   according to proof at the time of trial.

8       37.   Defendants' conduct was malicious, fraudulent, and oppressive,

9   namely arising from Defendants' intentional efforts to injure and retaliate against

10  Plaintiff for the termination of the Vendor Agreement and business relationship

11  with Vertucci, which entitles Plaintiff to exemplary damages.

12  **THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
13  **(Against Defendants)**

14      38.   Plaintiff refers to and incorporates herein by this reference each and

15  every allegation in the foregoing paragraphs, as well as those in the paragraphs that

16  follow, as though fully set forth herein.

17      39.   Defendants had a fiduciary relationship with Plaintiff that was

18  developed as a result of the trust and confidence that was cultivated between

19  Plaintiff and Vertucci's personal friendship, separate from and which in turn led to

20  the negotiation and execution of the Vendor Agreement.  As a result of this

21  relationship and the Vendor Agreement, Plaintiff disclosed to Defendants RETI's

22  confidential and proprietary information.  There existed such a level of trust and

23  confidence between RETI and Defendants that RETI retained Vertucci,

24  individually and on behalf of NVCI, to serve as a mentor to its clients, a position

25  that exposed Defendants to both the important client relationships that RETI had

26  developed and RETI's confidential information.

27      40.   As a result of the fiduciary relationship, Defendants owed to Plaintiff

28  a duty of loyalty and utmost good faith; a duty of candor; a duty to refrain from

-11-

1   any self-dealing; a duty to act with integrity of the strictest kind; a duty of fair,

2   honest dealing; a duty of full disclosure; a duty to refrain from competition with

3   corporation; and, a duty not to usurp Plaintiff's opportunities to obtain personal

4   gain.

5        41.    Defendants intentionally breached these duties. Specifically,

6   Defendants breached the duty of loyalty and good faith when they put their own

7   interests before Plaintiff's and implemented their scheme to divert clients and

8   employees and/or contractors, Plaintiff's confidential and proprietary information,

9   and opportunities to various other companies and themselves personally.

10  Moreover, Defendants had an affirmative and fiduciary duty to protect and further

11  Plaintiff's business, resources, business relationships, and property in such a

12  manner as to prevent the decline of the business and of such property and resources

13  to the detriment of the interests of Plaintiff.

14       42.    Defendants have breached these duties by preventing Plaintiff from

15  maintaining and expanding its business, as described herein.

16       43.    Defendants' breach of fiduciary duty has resulted in damages to

17  Plaintiff for which Plaintiff seeks actual damages, as described herein, in an

18  amount according to proof at the time of trial.

19       44.    Plaintiff's injury resulted from Defendants' gross negligence, malice,

20  oppression, and fraud, which entitles Plaintiff to exemplary damages.

21       45.    As an equitable remedy, Defendants should be required to disgorge to

22  Plaintiff all profits realized from NVCI resulting from Defendants' improper,

23  unlawful and wrongful conduct, as described herein.

24       46.    Plaintiff also seeks an order directing Defendants to render an

25  accounting of all past and current accounts of Defendants to Plaintiff.

26  ///

27  ///

28  ///

PLAINTIFF'S SECOND AMENDED COMPLAINT – Case No. 8:14-cv-00546-AG-DFM

Case 8:14-cv-00546-AG-DFM   Document 144-1   Filed 07/01/15   Page 14 of 41   Page ID
#:2006
Case 8:14-cv-00546-AG-DFM   Document 49   Filed 06/17/14   Page 13 of 20   Page ID #:496

**FOURTH CLAIM FOR RELIEF**
Fraud
**(Against All Defendants)**

47.     Plaintiff refers to and incorporates herein by this reference each and
every allegation in the foregoing paragraphs, as well as those in the paragraphs that
follow, as though fully set forth herein.

48.     Defendants fraudulently represented to Plaintiff that they were acting
on the Plaintiff's behalf when under contract with RETI, which statements were
materially false.

49.     Defendants committed fraud by misrepresentation, nondisclosure, and
omission.  Specifically, in an effort to induce RETI to allow Defendants access to
RETI's confidential and proprietary information and clients prior to the Vendor
Agreement, and to then enter the Vendor Agreement, Vertucci on behalf of himself
and NVCI, represented to RETI, in multiple in-person discussions with
Montelongo, the material fact that Vertucci and/or NVCI would provide services to
RETI in order to facilitate and further the RETI business, and that such services
were to be ultimately provided for that purpose.  These statements were false, and
a façade for the fact that Defendants purported to provide services so as to gain
access to RETI's confidential and proprietary information and clients, and in no
way to serve as a benefit to RETI.   These representations and omissions were
made both during the year preceding January 1, 2010, and then stated again from
time to time between January 1, 2010 and the termination of the Vendor
Agreement in September 2013.

50.     Defendants purposefully and intentionally omitted from these
discussions the material fact that, instead of acting in furtherance of and as a
service provider for RETI, he was secretly contacting RETI's clients in an effort to
convince them to invest in Defendants' own business interests that had no relation
to Plaintiff or Montelongo, and they were using RETI confidential and propriety
information and the RETI events to collect data for their own business, generate

-13-

1   their own leads, and develop and expand their business.  Had RETI known the
2   truth of Defendants' representations and/or the information that Defendants
3   omitted, RETI would not have entered the Vendor Agreement or allowed
4   Defendants access to RETI's confidential and proprietary information and clients.

5      51.   Defendants intended that Plaintiff rely on their representations and
6   omissions, and in justifiable reliance upon Defendants' false representations and
7   omissions of material facts, as described above, Plaintiff proceeded to allow
8   Defendants access to RETI's confidential and proprietary information and clients
9   and enter the Vendor Agreement.  Had RETI known the truth of Defendants'
10  representations and/or the information that Defendants omitted, RETI would not
11  have entered the business relationship or Vendor Agreement, or allowed
12  Defendants access to RETI's confidential and proprietary information and clients.

13     52.   Defendants made the false representations and omissions knowing
14  they were false and material, and with the intention that Plaintiff rely on them so
15  that RETI would continue with the business relationship and proceed to enter the
16  Vendor Agreement; provide Defendants access to RETI's confidential and
17  proprietary information and clients; and provide Defendants with a level of
18  credibility by affiliation with RETI that he would not otherwise have had.

19     53.   The false representations and omissions directly and proximately
20  caused injury to RETI for which Plaintiff seeks actual damages, including but not
21  limited to lost revenue, brand damage, loss of good will, and costs of brand
22  management and repair, in an amount according to proof at the time of trial.

23     54.   Plaintiff's injuries resulted from Defendants' actual fraud, oppression,
24  and/or malice, which entitles Plaintiff to exemplary damages.

25  ///
26  ///
27  ///
28  ///

-14-

## FIFTH CLAIM FOR RELIEF
### Conversion
### (Against All Defendants)

55.     Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

56.     Plaintiff is the owner of certain confidential and proprietary information, including but not limited to those items identified in the Vendor Agreement (Exhibit 1 hereto) as well as client lists, photographs, and testimonials (sometime referred to herein as the "RETI Property").  In particular, Defendants have used the RETI Property to contact Plaintiff's clients, interfere with RETI's business relationships, dilute and/or damage the value of the RETI Property, and unlawfully, improperly, and disingenuously promote their own business.

57.     Defendants have wrongfully exercised dominion and control over the RETI Property and have taken such for their own purpose and have caused detriment to Plaintiff.  RETI is threatened with irreparable injury by such conduct of the Defendants.

58.     RETI has issued to Defendants multiple cease and desist correspondence demanding the return and cessation of use of its property, i.e., the RETI Property, and Defendants have refused to return and/or cease use of such.

59.     Defendants' wrongful actions have proximately caused injury to Plaintiff, which has resulted in damages, in an amount according to proof at the time of trial.  Damages include, but are not limited to, the damage to Plaintiff's ability to generate income from educational seminar sales and service.

60.     As a result, Plaintiff seeks the immediate return of all information and materials improperly taken from RETI, i.e., the RETI Property, and that Defendants cease their interference in RETI's possession and control of the RETI Property.

///

Case 8:14-cv-00546-AG-DFM   Document 144-1   Filed 07/01/15   Page 17 of 41   Page ID
#:2009
Case 8:14-cv-00546-AG-DFM   Document 49   Filed 06/17/14   Page 16 of 20   Page ID #:499

61.     Plaintiff's injury resulted from Defendants' malice, oppression, and/or

fraud, in engaging in the above-described conversion of the RETI Property, which

entitles Plaintiffs to exemplary damages.

**SIXTH CLAIM FOR RELIEF**
**Tortious Interference with Business Relations**
**(Against All Defendants)**

62.     Plaintiff refers to and incorporates herein by this reference each and

every allegation in the foregoing paragraphs, as well as those in the paragraphs that

follow, as though fully set forth herein.

63.     Plaintiff had valid contracts and/or continuous business relations with

various businesses, students, and/or customers.  Subsequently, Defendants

intentionally disrupted the business arrangements between Plaintiff, and these

various businesses and/or customers.

64.     For example, Defendants improperly and unlawfully solicited Keith

Yackey and Gillian Birnie, who were each an employee and/or exclusive

contractor of RETI at the time of said solicitation, shortly before the filing of this

lawsuit; Defendants currently employ and/or contract with Keith Yackey and

Gillian Birnie.  In addition, even after this lawsuit was filed and as recently as last

month, Defendants improperly and unlawfully solicited Chris Sanders who was an

employee and/or exclusive contractor of RETI at the time of said solicitation;

Defendants currently employ and/or contract with Chris Sanders.  Defendants

currently employ and/or contract with other former Plaintiff contractors and/or

employees, whom Plaintiff is informed and believes and based thereon alleges that

Defendants solicited while they were still employees and/or exclusive contractors

of RETI, including but not limited to Erik Slaikeu, Siggi Ahrens, and Nicole

Marshall.

65.     As a further example, RETI had an ongoing and established business

relationship with client and testimonial-provider Mike Schock, and offered to

elevate him to the position within RETI as a bus-leader-in-training and master

1 mentor. Plaintiff is informed and believes and based thereon alleges that

2 Defendants were aware of this ongoing business relationship and pending offer of

3 elevation, and intentionally and knowingly interfered with this relationship by

4 contacting him in an effort to solicit him away from RETI, and successfully did so.

5 Plaintiff is informed and believes and based thereon alleges that Defendants

6 engaged in the same conduct relative to Dom Montes and Krista Garren, with

7 whom RETI also had, at the time of Defendants' interference, such a standing

8 relationship and proposed similar offers of elevation. Such conduct by Defendants

9 is not only violative of the Vendor Agreement, but also, is unlawful in itself.

10     66. Defendants had knowledge of the above-listed persons solely by his

11 affiliation with RETI and had knowledge of the relationships and Plaintiffs'

12 interest in the relationships, which knowledge they gained through Vertucci's

13 previously-existing business relationship and Vendor Agreement with RETI.

14 Notwithstanding this knowledge, Defendants willfully and intentionally interfered

15 with Plaintiff's business relationships, as described above. In particular,

16 Defendants contacted some or all of these above-listed individuals, by and through

17 Vertucci, individually and on behalf of NVCI, by telephone, text message, and/or

18 email in an effort to improperly solicit them, provide them with misinformation

19 about RETI, and disrupt the respective business relationships. Such contacts were

20 in plain violation of the Vendor Agreement, and even more, were intended in

21 Defendants' effort to disrupt and damage RETI"s business and reputation.

22     67. Defendants' interference has proximately caused injury to Plaintiff,

23 which has resulted in damages to Plaintiff. Plaintiff seeks damages within the

24 jurisdictional limits of this court, in an amount according to proof at the time of

25 trial.

26     68. Moreover, Plaintiff's injury resulted from Defendant's malice,

27 oppression, and fraud, as described above, which entitles plaintiff to exemplary

28 damages.

Case 8:14-cv-00546-AG-DFM   Document 144-1   Filed 07/01/15   Page 19 of 41   Page ID
#:2011
Case 8:14-cv-00546-AG-DFM   Document 49   Filed 06/17/14   Page 18 of 20   Page ID #:501

## SEVENTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Business Relations
### (Against All Defendants)

69.     Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

70.     Defendants interfered with Plaintiff's prospective business relationships with various former and/or current clients of RETI, each one of which was engaged in an ongoing and continuing relationship with RETI in obtaining ongoing real estate education services from Plaintiff.

71.     Defendants, with knowledge that these individuals were clients of RETI, contacted them in an effort to solicit money, secure their attendance at NVCI events, and induce them to purchase real estate education service from NVCI.  This conduct, in turn, caused these former and/or current clients to halt their purchase of real estate education services from RETI and, in some cases, terminate their relationship altogether with RETI.  Such contacts were in plain violation of the Vendor Agreement, and even more, were intended in Defendants' effort to disrupt and damage RETI"s business and reputation.

72.     In addition, RETI had an ongoing and established business relationship with client and testimonial-provider Mike Schock, and offered to elevate him to the position within RETI as a bus-leader-in-training and master mentor.  Plaintiff is informed and believes and based thereon alleges that Defendants were aware of this ongoing business relationship and pending offer of elevation, and intentionally and knowingly interfered with this relationship by contacting him in an effort to solicit him away from RETI, and successfully did so.  Plaintiff is informed and believes and based thereon alleges that Defendants engaged in the same conduct relative to Dom Montes and Krista Garren, with whom RETI also had, at the time of Defendants' interference, such a standing relationship and had proposed similar offers of elevation.  These relationships were

-18-

1   not only standing relationships, but also carried with them an additional

2   prospective business relation in the form of an enhanced or even distinct position

3   with RETI.  Such persons were particularly valuable as prospective senior or

4   higher-level employees because of their solid background and success with RETI.

5       73.    Defendants knew of Plaintiff's prospective business and contractual

6   relationships with these individuals, which knowledge they gained through

7   Defendants' previously-existing business relationship and Vendor Agreement with

8   RETI, and intentionally interfered with them.

9       74.    Plaintiff has suffered actual damages because Defendants'

10   interference has prevented Plaintiff from entering into the prospective contracts

11   and continuing Plaintiff's prior relationships with its various contractors and/or

12   customers.

13       75.    Defendants' interference has proximately caused injury to Plaintiff,

14   which resulted in damages.  Plaintiff seeks damages within the jurisdictional limits

15   of this court, in an amount according to proof at the time of trial.

16       76.    Plaintiff's injury resulted from Defendants' malice, oppression, and

17   fraud, as described above, which entitles Plaintiff to exemplary damages.

18                         **DAMAGES**

19       77.    As a result of Defendants' actions, as described above, Plaintiff has

20   suffered losses of, and seeks damages for, monetary amounts within the

21   jurisdictional limits of this Court and in an amount to be proven at trial.  Plaintiff

22   thus seeks an award of damages to include the following components:

23       a.    That Plaintiff recovers actual damages in excess of the minimum

24   jurisdictional amount of this Court;

25       b.    That Plaintiff recovers punitive damages

26       c.    That Plaintiff recovers incidental damages;

27       d.    That Plaintiff recovers consequential damages;

28       e.    That Plaintiff recovers attorneys' fees;

1    f.      That Plaintiff recovers costs of suit;

2    g.      That Defendants be required to provide an accounting; and,

3    h.      That Plaintiff has whatever other and further relief at law or in equity

4    to which Plaintiff may show it is justly entitled.

5    **PRAYER FOR RELIEF**

6    **WHEREFORE**, Plaintiff respectfully prays that the Defendants be cited to

7    appear and answer herein, and that upon a final hearing of the cause, judgment be

8    entered for the Plaintiff against Defendants, and each of them, for the following:

9    a.      Actual and Punitive damages;

10   b.      Incidental damages;

11   c.      Consequential damages;

12   d.      Costs of suit;

13   e.      Attorney's fees;

14   f.      Prejudgment and postjudgment interest;

15   g.      An accounting;

16   h.      Disgorgement of profits;

17   i.      Return of Plaintiff's property, as alleged above; and,

18   j.      All other relief, in law and in equity, to which Plaintiff may be

19   entitled.

20   **DEMAND FOR JURY TRIAL**

21   Plaintiff hereby demands a jury trial on all issues as to which a jury is

22   available, as provided by Rule 38 of the Federal Rules of Civil Procedure.

23   Dated: June 17, 2014                    GORDON & REES LLP

24                                           */S/ Jeffrey D. Cawdrey*

25                                           Jeffrey D. Cawdrey
                                             Kimberly D. Howatt

26                                           Attorneys for Plaintiff
                                             REAL ESTATE TRAINING

27                                           INTERNATIONAL, LLC

28

1096731/19876992v.1

-20-
PLAINTIFF'S SECOND AMENDED COMPLAINT – Case No. 8:14-cv-00546-AG-DFM

EXHIBIT 1

## VENDOR AGREEMENT

THIS VENDOR AGREEMENT ("Agreement"), made this 1st day of January, 2010, by and between Armando Montelongo Seminars ("AMS") and Nick Vertucci and The Nick Vertucci Companies, a Nevada Corporation ("Vendor").

WHEREAS, AMS operates real estate seminars, telesales, and other sales and events ("Seminars") throughout the United States, contemplated foreign countries, and specifically the state of California; and

WHEREAS, Vendor operates a cash flow property consulting firm; and

WHEREAS, Vendor desires to gain access to AMS events and customer bases to provide services to AMS; and

WHEREAS, AMS agrees to allow access to such events and customer bases under the terms and conditions herein; and

WHEREAS, AMS may make certain information about its properties, business, financial condition, operations, and prospects available to Vendor to specifically include all aspects of Seminars ("Confidential Information"); and

NOW THEREFORE, for good and valuable consideration, each party enters into this Agreement and agrees to the following:

Vendor shall provide all services reasonably requested by AMS and shall promptly pay a booth services rental fee to AMS for access to various events and AMS customers. Payment of all invoices is subject to a current IRS form W9 or similar form for request for taxpayer number. Vendor agrees to pay AMS booth rental fee at the agreed rates attached hereto as Exhibit A.

Vendor agrees to never use or disclose, directly or indirectly, for any reason whatsoever or in any way other than at the direction of AMS or after receipt of the prior written consent of AMS, any Confidential Information of AMS. Specifically, Vendor agrees not to utilize, disclose, copy, duplicate or publish all or any part of, nor lend nor permit the disclosure, copying or duplication or publication of all or any part of the Confidential Information of AMS (including but not limited to books, records, client lists, software, electronic files, customer lists, or any other documents or materials related to the business of AMS) to any person or entity, except with the express prior and written consent of AMS. Further, Vendor shall maintain the confidentiality of all Confidential Information of AMS for the sole use and benefit of AMS. Finally, upon the expiration of Vendor's business relationship with AMS, Vendor shall not say, advertise, or in any form or fashion announce, that he worked for AMS or the Armando Montelongo Brand, and Vendor shall not use in any form or fashion any pictures or other media which contains any reference to the Armando Montelongo Brand, including but not limited to, any images of Armando Montelongo. Vendor agrees that Confidential Information shall include all aspects of

AMS Seminars and general business operations including Confidential Information known prior to this Agreement.

Except as AMS may waive or modify in its sole discretion, during the term of the business relationship with AMS and for a period of twenty-four (24) months following the effective termination date of Vendor's business relationship with AMS, for any reason, regardless of whether initiated by Vendor or AMS, Vendor shall not solicit, induce, or attempt to induce, any past or current, supplier, client or customer of AMS with whom Vendor dealt, had contact or gained Confidential Information, or any employee or contractor of AMS, as the case may be, to: cease or otherwise modify its doing business, in whole or in part, with or through AMS; or do business with any other person, firm, partnership, corporation, or other entity which provides products or performs services materially similar to or competitive with those provided by AMS or accept any request from any such person or entity to do so.

Vendor will not take any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of AMS with any individual or entity identified by AMS as a client or potential client at any time during Vendor's business relationship with AMS and for a period of twenty-four (24) months following the effective termination date of Vendor's business relationship with AMS, for any reason, or otherwise benefit, either financially or otherwise from any Confidential Information (as defined in this Agreement) supplied to Vendor by AMS to change, increase or avoid directly or indirectly payment of established or to be established fees or commissions, without the specific written approval of AMS.   Vendor specifically will not raise money from sources obtain from Confidential Information including contractors, customers, or employees of AMS. Any violation of this condition shall be deemed an attempt to circumvent AMS's and/or Affiliates' business relationship with such individual or entity, and Vendor shall be liable for damages in favor of AMS.

Each party shall remain the sole owner of the Confidential Information disclosed to the other party under this Agreement. No license or other right, express or implied, is granted by the disclosing party to the receiving party pursuant to this Agreement under any patent right, copyright, or other intellectual property right.   Specifically all customers' and prospective customers' information shall be the property of AMS and Vendor may not utilize that information for any purpose other than to provide services to AMS. Vendor may not utilize any customer information to promote its business including testimonial representations of same without written consent of AMS.

Vendor will be responsible for any breach of the terms of this Agreement by Vendor or nay of its Representatives.  In the event that Vendor is requested pursuant to, or required by, applicable law to disclose any AMS' Proprietary Information, Vendor will provide AMS with prompt notice of such request or requirement and will consult with AMS concerning the information to be disclosed.

Upon notice by AMS to Vendor that Releasor have determined not to proceed with any further events under this Agreement, Vendor will, upon AMS' request, promptly deliver to AMS all AMS' Proprietary Information in the possession of Vendor or in the possession of any of its Representatives, and any copies of any of the foregoing, or shall, in the alternative destroy all such materials and inform AMS that such materials have been destroyed. In addition, in such event, Vendor will, upon AMS' request, destroy all analyses or summaries of, or information based upon, AMS information in its possession or in the possession of any of its Representatives and any copies of the foregoing. Further, within one (1) business day after executing an agreement with an AMS customer Vendor must supply a copy of the contract between Vendor and customer. All agreements entered into at live events must be delivered at the end of each event to legal counsel for AMS. Such agreements shall be Confidential Information for purposes of this Agreement.

Without prejudice to the rights and remedies otherwise available to either party to this Agreement, each party shall be entitled to equitable relief by way of injunction if the other party or any of its Representatives breach or threaten to breach any provision of this Agreement.

Either party shall have the right to terminate this Agreement for any reason effective twenty-four (24) hours after delivery of notice to the other party.

Vendor shall maintain in full force and effect, at its sole cost and expense, throughout the term of this Agreement commercial general liability coverage against claims and liability for personal injury, death or property damage arising from the use, occupancy or condition of the Sales Booth together with workers compensation coverage as required by applicable law. Vendor's insurance policy or policies shall designate AMS as additional insureds. In addition, such policy shall include a clause or endorsement whereby the carrier waives any rights of subrogation to the rights of Vendor in connection with the insured casualties.

Vendor fully releases AMS, and each of their respective affiliates, agents, employees and invitees, from any liability or responsibility for any loss or damage to the extent resulting from any cause or hazard covered by the insurance required above. In addition, Vendor agrees that AMS, and each of their respective affiliates, agents, employees and invitees, shall not be liable for any loss, injury or damages (including consequential damages) to persons, property or Vendor's business occasioned by theft, act of God, order of governmental agency, fire, explosion, water damage or from any acts or omissions of any third party or from any other cause, irrespective of the passive or active negligence of AMS.

Vendor shall fully defend, indemnify and hold AMS, and each of its respective affiliates, agents, employees and invitees, harmless from and against any and all costs (including reasonable attorneys' fees and costs) and claims of liability for or a loss from personal injury and/or property damage to the extent that such claims result from or arise out of the performance of Vendor's obligations under this Agreement and the operation of the Sales Booth.

This Agreement constitutes the entire agreement between the parties and supersedes any and all prior understandings, representations, warranties and agreement between the parties regarding the subject matter hereof. This Agreement may be modified only by a written agreement executed by both parties.

This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Texas, without reference to principles of conflicts of laws.

Vendor shall be deemed to be an independent contractor and in no event shall this Agreement or any of the provisions hereof be construed to form a partnership or any other relationship between AMS and Vendor.

This Agreement shall not be assigned by Vendor.

No Failure or delay by either party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise of such right, power or privilege or the of any other right, power or privilege under this Agreement.

The term of this Agreement is at will, however, the obligations of confidentiality and restriction of the use of the Confidential Information shall survive the expiration of the Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have executed this Agreement as of the date first set forth above

The Nick Vertucci Companies                    Armando Montelongo Seminars

By:_____                   By:_____
Nick Vertucci, Its President and Individually   Armando Montelongo Jr., Its President

Exhibit "A"

| Cash Flow Properties Available | Booth Rental |
|---|---|
| <26 | $2,000.00 |
| >25 | $1,000.00 |

Booth Rental Fees may be waived by AMS if Vendor presents material at events either individually or in a group setting the equivalent of 4 hours per each event day.

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 5:14-cv-00099-XR |
| v. | § § | |
| THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, | § § § § | |
| *Defendants.* | | |

### AFFIDAVIT OF ARMANDO MONTELONGO, JR.

BEFORE ME, the undersigned authority, personally appeared Armando Montelongo, Jr., who, being by me duly sworn on oath stated:

1. "My name is Armando Montelongo, Jr. I am over 21 years of age, of sound mind, have never been convicted of a felony or of a crime involving moral turpitude, and fully competent to testify to the matters herein. I am fully capable of making this Affidavit and the facts and statements within this Affidavit are true, correct, and within my personal knowledge."

2. I am the President, CEO, member, and authorized agent of Real Estate Training International, LLC, Plaintiff in the above cause.

3. Defendant, Nick Vertucci and Defendant The Nick Vertucci Companies, Inc., entered into a vendor agreement with Plaintiff whereby Defendants would provide real estate training services on behalf of Plaintiff's companies to Plaintiff's customers using Plaintiff's teaching materials, methods, and other proprietary information owned by

Plaintiff. This business relationship began in 2010, and continued until September of 2013. Defendants' vendor agreement and working relationship with Plaintiff's companies was terminated due to Defendant, Nick Vertucci's repeated inappropriate relationships with various "clients" of Plaintiff.

4. During this time, in order to carry out Defendants' obligations and duties under the agreement, Defendant Nick Vertucci, on numerous occasions, personally traveled to Plaintiff's Corporate Headquarters located in San Antonio, Texas for business related trainings. On several occasions, when Defendant was in San Antonio, Texas, I personally trained Nick Vertucci on various real estate training techniques which included proprietary information owned by Plaintiff's companies.

5. In addition to his personal attendance at the various business trainings here in San Antonio, Defendant Nick Vertucci, in his individual capacity and acting on behalf of Defendant The Nick Vertucci Companies, Inc., traveled to and performed teaching and mentoring duties for Plaintiff's customers at live seminar events in San Antonio, Texas Specifically, Vertucci attended and performed duties on behalf of Plaintiff from November 2 through November 4, 2012 at the San Antonio Grand Hyatt Hotel. Nick Vertucci also traveled to San Antonio, Texas to perform teaching and mentoring duties for Plaintiff from July 26 through July 28, 2013 at the San Antonio Convention Center. Additionally, Nick Vertucci personally traveled to and performed teaching and mentoring duties for Plaintiff from April 4 through April 7, 2013, and then again from June 20 through June 23, 2013.

6. Defendants Nick Vertucci and The Nick Vertucci Companies, Inc., entered into the written agreement entitled "Vendor Agreement" with Plaintiff freely and voluntarily.

Case 8:14-cv-00546-AG-DFM   Document 144-1   Filed 07/01/15   Page 31 of 41   Page ID
#:2023
Case 8:14-cv-00546-AG-DFM   Document 49-1   Filed 06/17/14   Page 10 of 20   Page ID #:513

At no time were the Defendants coerced, intimated, or threatened to sign this document.

7. The Vendor Agreement was a written memorialization of the parties prior verbal agreement entered into in 2010.

8. Armando Montelongo Seminars ("AMS"), a party to the Vendor Agreement made the basis of this lawsuit is a d/b/a of Plaintiff, Real Estate Training International, LLC, and that is stated in Plaintiff's Original Petition.

9. Defendants, Nick Vertucci and The Nick Vertucci Companies, Inc., have solicited, and continue to employ former contractors and/or employees of Plaintiff's companies in violation of the above referenced vendor agreement. Specifically, Defendants currently employ and/or contract with former Plaintiff contractors and/or employees, Erik Slaikeu, Siggi Ahrens, Nicole Marshall, and Keith Yackey. This information is blatantly posted on Defendants' social media websites through use of written content and photographs. Additionally, Defendants have contacted current and/or former "clients" of Plaintiff in an attempt to solicit their business.

10. Defendants have disclosed and continue to use confidential and proprietary information belonging to Plaintiff's companies in order to start their competing real estate seminar business, NV Real Estate Academy. This includes Plaintiff's customer testimonials that were used by Defendants to promote their competing seminar business. These testimonials are the sole and exclusive property of the Plaintiff, and were posted on Defendant's websites. In addition, Defendants are currently using Plaintiff's cash flow teaching methodology, market domination information, and other real estate techniques that were learned by Defendants while performing their duties

for Plaintiff's companies.

_____
ARMANDO MONTELONGO, JR., Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this ____ day of March, 2014, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

AMBER ROCHELLE GISH
My Commission Expires
April 16, 2017

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 5:14-cv-00099-XR |
| v. | § § | |
| THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, | § § § § | |
| *Defendants.* | | |

### AFFIDAVIT OF JACOB THOMAS

BEFORE ME, the undersigned authority, personally appeared Jacob Thomas, who, being by me duly sworn on oath stated:

1. "My name is Jacob Thomas. I am over 21 years of age, of sound mind, have never been convicted of a felony or of a crime involving moral turpitude, and fully competent to testify to the matters herein. I am fully capable of making this Affidavit and the facts and statements within this Affidavit are true, correct, and within my personal knowledge.

2. I currently hold the position of Director of Coaching and Mentoring, and am an authorized agent of Real Estate Training International, LLC, Plaintiff in the above cause.

3. Prior to becoming Director of Coaching and Mentoring, I held the title of Manager of Coaching and Mentoring. As Manager of Coaching and Mentoring, one of my duties was to manage and oversee mentoring and teaching contractors working with Plaintiff.

During my tenure working with Real Estate Training International, LLC, between 2010 and 2013, I personally witnessed Mr. Nick Vertucci perform cash flow concept teaching and mentoring duties on behalf of Plaintiff in San Antonio, Texas, on numerous occasions.

4. Specifically, Nick Vertucci traveled to and performed teaching and mentoring duties to Plaintiff's customers at live seminar events in San Antonio, Texas from November 2 through November 4, 2012 at the Grand Hyatt Hotel. Nick Vertucci also traveled to San Antonio, Texas to perform teaching and mentoring duties for Plaintiff from July 26 through July 28, 2013 at the San Antonio Convention Center. Additionally, Nick Vertucci personally traveled to and performed teaching and mentoring duties for Plaintiff from April 4 through April 7, 2013, and then again from June 20 through June 23, 2013. Additionally, Nick Vertucci attended and participated in our company cash flow technique training located at the Omni Hotel in San Antonio, Texas.

JACOB THOMAS, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this _____ day of March, 2014, to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

AMBER ROCHELLE GISH
My Commission Expires
April 16, 2017

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 5:14-cv-00099-XR |
| v. | § § | |
| THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, | § § § | |
| *Defendants.* | § | |

**AFFIDAVIT OF CHRIS MONROY**

BEFORE ME, the undersigned authority, personally appeared Chris Monroy, who, being by me duly sworn on oath stated:

1. "My name is Chris Monroy. I am over 21 years of age, of sound mind, have never been convicted of a felony or of a crime involving moral turpitude, and fully competent to testify to the matters herein. I am fully capable of making this Affidavit and the facts and statements within this Affidavit are true, correct, and within my personal knowledge.

2. I am the Media/AV Manager, and authorized agent of Real Estate Training International, LLC, Plaintiff in the above cause.

3. As Media/AV Manager, one of my duties is to manage and oversee electronics used at all seminars and other events hosted by Plaintiff. During my tenure working with Real Estate Training International, LLC, between 2010 and 2013, I personally witnessed Mr. Nick Vertucci perform teaching and mentoring duties on behalf of Plaintiff in San

Antonio, Texas, on numerous occasions.

4.  Specifically, Nick Vertucci traveled to and performed teaching and mentoring duties to Plaintiff's customers at live seminar events in San Antonio, Texas from November 2 through November 4, 2012 at the Grand Hyatt Hotel. Nick Vertucci also traveled to San Antonio, Texas to perform teaching and mentoring duties for Plaintiff from July 26 through July 28, 2013 at the San Antonio Convention Center. Additionally, Nick Vertucci personally traveled to and performed teaching and mentoring duties for Plaintiff from April 4 through April 7, 2013, and then again from June 20 through June 23, 2013.

CHRIS MONROY, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this ____ day of March, 2014, to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

AMBER ROCHELLE GISH
My Commission Expires
April 18, 2017

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 5:14-cv-00099-XR |
| v. | § § | |
| THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, | § § § § | |
| *Defendants.* | § | |

### AFFIDAVIT OF CHELSEA WEST

BEFORE ME, the undersigned authority, personally appeared Chelsea West, formerly known as Chelsea Lanmon, who, being by me duly sworn on oath stated:

1. "My name is Chelsea West. I am over 21 years of age, of sound mind, have never been convicted of a felony or of a crime involving moral turpitude, and fully competent to testify to the matters herein. I am fully capable of making this Affidavit and the facts and statements within this Affidavit are true, correct, and within my personal knowledge.

2. I am the Lead of Coaching and Mentoring, and authorized agent of Real Estate Training International, LLC, Plaintiff in the above cause.

3. As Lead of Coaching and Mentoring, one of my duties is to help facilitate and work with mentoring and teaching contractors working with Plaintiff. During my tenure working with Real Estate Training International, LLC, between 2010 and 2013, I personally worked with and witnessed Mr. Nick Vertucci perform asset protection

teaching and mentoring duties on behalf of Plaintiff in San Antonio, Texas, on numerous occasions. In addition, I personally witnessed Nick Vertucci attend and participate in our company training for cash flow concepts and techniques conducted in San Antonio, Texas on many occasions.

4. Specifically, Nick Vertucci traveled to and performed teaching and mentoring duties to Plaintiff's customers at live seminar events in San Antonio, Texas from November 2 through November 4, 2012 at the Grand Hyatt Hotel. Nick Vertucci also traveled to San Antonio, Texas to perform teaching and mentoring duties for Plaintiff from July 26 through July 28, 2013 at the San Antonio Convention Center. Additionally, Nick Vertucci personally traveled to and performed teaching and mentoring duties for Plaintiff from April 4 through April 7, 2013, and then again from June 20 through June 23, 2013. Additionally, Nick Vertucci attended and participated in our company cash flow technique training located at the Omni Hotel in San Antonio, Texas

CHELSEA WEST, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME this ___5___ day of March, 2014, to certify which witness my hand and official seal.

AMBER ROCHELLE GISH
My Commission Expires
April 16, 2017

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS