# EXHIBIT Y

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 2015-CI-03127

| | |
|---|---|
| THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI | ) IN THE DISTRICT COURT ) ) |
| VS. | ) 57TH JUDICIAL DISTRICT ) |
| EDUCATION MANAGEMENT SERVICES, LLC, REAL ESTATE TRAINING INTERNATIONAL, LLC, ARMANDO MONTELONGO COMPANIES, INC., ARMANDO MONTELONGO, JR., and JOHN DOES 1, 2, 3, ETC. | ) ) ) ) ) ) ) BEXAR COUNTY, TEXAS |

---

PLAINTIFFS' MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

FEBRUARY 25, 2015

VOLUME 1 OF 1 VOLUME

---

On the 25th day of February 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE STEPHANI WALSH, Judge Presiding, held in the 45th District Court, San Antonio, Bexar County, Texas:

Proceedings reported by machine shorthand.

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

```
 1

 2                    A P P E A R A N C E S:

 3   MR. MICHAEL J. O'CONNOR
          SBOT:  15187400
 4        ATTORNEY AT LAW
          8118 Datapoint Drive
 5        San Antonio, Texas 78229
          Phone:  (210)614-6400
 6
              ATTORNEY FOR PLAINTIFFS, THE NICK VERTUCCI
 7   COMPANIES, INC. and NICK VERTUCCI

 8

     MR. HENRY B. GONZALEZ, III
 9        SBOT:  00794952
     MS. JEFFRIE BOYSEN
10        SBOT:  24071785
     MR. TAYLOR WILLIAMS
11        SBOT:  24056536
          GONZALEZ CHISCANO ANGULO & KASSON, PC
12        613 N.W. Loop 410, Suite 800
          San Antonio, Texas 78216
13        Phone:  (210)862-8712

14   MR. ANDREW J. MOON
          SBOT:  24046463
15        ATTORNEY AT LAW
          2935 Thousand Oaks Drive, Suite 6-285
16        San Antonio, Texas 78247-3563

17            ATTORNEYS FOR DEFENDANTS, EDUCATION MANAGEMENT
     SERVICES, LLC, REAL ESTATE TRAINING INTERNATIONAL, LLC,
18   ARMANDO MONTELONGO COMPANIES, INC., ARMANDO MONTELONGO, JR.

19

20

21

22

23

24

25
```

```
 1                MR. GONZALEZ:  I'm sorry?
 2                THE COURT:  I'm taking out everything on
 3   page 2 after the first paragraph that starts with B.
 4                MR. GONZALEZ:  Actually, Your Honor, I've got
 5   the redlined version so I need to get a copy.  Okay.  So the
 6   first corrections, I'm sorry?
 7                THE COURT:  If you want to come up here, I'll
 8   show you.
 9                MR. GONZALEZ:  Sure.
10                     (Off the record.)
11                THE COURT:  Ms. Boysen.
12                MS. BOYSEN:  Judge, I also -- I have a very
13   short little brief on some of the law that I'm going to be
14   talking about if you'd like to see that.  And this is just a
15   very, you know, brief recitation of some of the law on the
16   prior restraint.
17                You know, the Texas Supreme Court has been
18   very clear on the issue that the Texas Constitution is
19   very -- provides very expansive rights as far as free
20   expression.  So any -- any sort of judicial order that's
21   going to forbid future communications is a prior restraint.
22   And the question becomes whether that's an unconstitutional
23   prior restraint.
24                And as you can see, some of these cases that
25   I've cited in here are very clear that even -- even
```

```
 1  defamatory words, even disparaging words, those are also
 2  protected by the Texas Constitution.  And as far as
 3  enjoining that speech, defamation alone is not enough to get
 4  there.
 5              There's a few cases here, one that I'd like to
 6  point out is a 2014 case where the Texas Supreme Court even
 7  went as far as to say that statements that has been
 8  adjudicated as defamatory, an order enjoining those
 9  statements from being made in the future was
10  unconstitutional prior restraint.
11              So I don't want to take up too much time, but
12  I've got copies of these cases if you'd like to see them.  I
13  think the case law is very clear that if they're absent a
14  threat of danger, this -- the language cannot be -- cannot
15  be subject to prior restraint.  And there's many cases
16  saying the same thing, that injunctions against future
17  speech may be warranted to restrain speech that poses a
18  threat of danger, but absent that threat of danger, there's
19  just -- there's no -- there's no justification for a prior
20  restraint on that language.
21              THE COURT:  Explain to me why every jury panel
22  and every jury is instructed and ordered not to post on
23  Facebook, Twitter, Instagram.  They're restrained the entire
24  time they are on the panel and from the time that they're
25  sworn as a juror under our rules.  And I'm required to read
```

1  it to them every single time they take a break.
2           MS. BOYSEN:  Right.  And, you know, I think
3  that that could be distinguished in that there's an
4  immediate threat there.  That if these people are -- if the
5  jury are posting on Facebook or Instagram, what has
6  happened, that's an immediate threat to the judicial process
7  and that could throw everything off track.  So I think that
8  that's a distinction there.  In that case, there is a threat
9  of danger.
10          Here, you know, the damages that the
11 petitioners have alleged are really just damages that your
12 remedy would be a cause of action for defamation or business
13 disparagement.  And, you know, the case law is very clear
14 absent something going above that, such as a threat to the
15 judicial process, there's really -- there's no justification
16 for restraining that language.
17          MR. GONZALEZ:  I do think the Kinny case would
18 be critical for the Court to read because it's just -- I
19 learned something from reading it, Your Honor.  I mean, it
20 is -- what I really appreciate about it, it's not just
21 U.S. Constitutional law, it's Texas Constitutional law.
22          And, you know, I'm generally familiar with
23 prior restraint, but I was amazed that there was a
24 full-blown trial on the merits and a determination was made
25 as to this specific language, these statements are

1  defamatory, and you can't even enjoin that.

2  And the Court does a beautiful job talking
3  about not being able to do that and the risk of broadening
4  an injunction on -- or enjoining someone from other future
5  speech. You just can't do it. It's impossible.

6  And I think the case -- I mean, if Your Honor
7  will read the Kinny case, it's as clear as a bell, you can't
8  enjoin them from communicating.

9  MS. BOYSEN: And, Judge, I have a copy of that
10 case. If I may approach.

11 THE COURT: And this would apply even to --
12 yes. Even to the comments regarding the family and the
13 abortion and pro-life?

14 MR. GONZALEZ: Absolutely. Assume all those
15 statements were made by us, assume they're all defamatory,
16 that case law is clear, you can't enjoin it. Your remedy is
17 you're going to get sued and they filed a lawsuit.

18 And, you know, it's very interesting here, one
19 thing that I wish I would have brought up yesterday as well,
20 but I'll bring up now, the family members are not parties to
21 this litigation. There is no standing for someone to say,
22 we're offended by these comments. If they want to file suit
23 against us, that's great. But it's like if I were to file a
24 lawsuit saying I'm offended by how someone talks about some
25 other third party. I don't have standing to do that.

```
 1              Again, what this is about yesterday, Your
 2   Honor, they thought they could hoodwink the presiding system
 3   to just enter a rubber stamped TRO.  That's what they
 4   thought they could do.  I mean, that order is so ridiculous.
 5   That's what they thought they could do.  And just as the
 6   Court acknowledged, the second order is offensive.
 7              They're trying to get a press release,
 8   basically, saying, look what we got out of a judge
 9   concerning Montelongo.  If you look at the last exhibit in
10   the notebook, this guy trash talks as well.  You know what,
11   let these guys fight it out in the free market.  Let them
12   compete with each other.  One guy can say they do a better
13   job flipping houses than another guy.  That's what the free
14   market is for.  But that's not what we're supposed to be
15   taking judicial resources for.  And under the Kinny case, we
16   can't take judicial resources for that.
17              THE COURT:  Is the concern that they're going
18   to take this TRO and use it affirmatively from a marketing
19   standpoint?
20              MR. GONZALEZ:  Of course.  You know, you don't
21   see them asking for, you know what, we'll agree not to do
22   the same thing back, we would call them the things that --
23              THE COURT:  That's my next question,
24   Mr. O'Conner.  I don't want to hear that you're only
25   representing them for a TRO.
```

1     MR. O'CONNER:  No.  I think that's a good
2  point, Your Honor, because I think there's a certain element
3  of I don't think either side should be able to spike the
4  ball in the end zone after this hearing.
5     I don't have a problem having some language in
6  the order that says that this finding by the Court should
7  not be published, promoted, disseminated, whatever you want
8  to call it, by social media.  I don't have a problem with
9  that.  You know, I don't see that that's -- that there's
10 harm to anybody in that instance.  I think that's what
11 Mr. Gonzalez has just asked me a couple minutes ago.  I
12 don't know.
13    MR. GONZALEZ:  I'm not asking for that.  The
14 flags you see behind the judge are the U.S. flag and the
15 Texas flag.
16    MR. O'CONNER:  I object to the sidebar.
17    MR. GONZALEZ:  We have freedom in this
18 country.  We have freedom in this country.  We have
19 constitutional rights.  Some kind of star chamber, you know,
20 that you want where the orders don't get disseminated,
21 that's ridiculous.  It's offensive.
22    What I'm saying is you're not asking to have
23 your own client enjoined.
24    MR. O'CONNER:  Counsel, don't toy with me.
25    THE COURT:  Mr. Gonzalez, I'm confused.  Are

```
 1  you offended because he asked you to -- or he agreed not to
 2  publicize and market?
 3              MR. GONZALEZ:  What I'm talking -- we do know
 4  that's what he's going to do.  How can he control what
 5  happens with a public document, number one?  But aside from
 6  that, you don't see them saying, we promise not to do a
 7  Facebook posting referring to Mr. Montelongo as -- what are
 8  some of the words -- on his Facebook where it's clear it's
 9  him.  Mr. Moon can tell the Court some of things he's
10  referring to.
11              It's silly, Your Honor.  It's crazy.  If these
12  people want to -- they want to knock each other up in social
13  media, if they want to fight and try to prove who's better
14  at this, great, let them do that in the marketplace.  But
15  this whole idea of trying to get a TRO without us having
16  proper notice on a flimsy affidavit where this guy is
17  whining about a bunch of stuff with improper proof is
18  ridiculous.
19              THE COURT:  Wouldn't this all be resolved on
20  Tuesday?
21              MR. GONZALEZ:  Well, what we have asked, Your
22  Honor, is just set it for a TI.  That's what the Court can
23  absolutely do.  And if we don't like that result, then we
24  can handle it from there.  But that's absolutely right, give
25  all the parties plenty of time to get ready and they can do
```

```
 1  what they want.
 2              I mean, the evidence that's critical here,
 3  Your Honor, yesterday you heard how they sent me a letter
 4  saying preserve evidence, number one.  So they knew they had
 5  an issue.
 6              Number two, they say they -- they're not aware
 7  of any more Facebook postings since that happened.  There's
 8  no more imminent harm.  They've proved on their own
 9  testimony representations by counsel, there is no more
10  imminent harm.  They have not proven a likelihood of
11  prevailing on the merits.  There's no irreparable harm.
12  They don't meet the elements.
13              The resolution is to deny the TRO, set it for
14  a temporary injunction and we'll all come back and whatever
15  testimony, that's great, but, I mean, it's -- again, from
16  their own testimony, there's not even been an issue since
17  they sent this letter.  There is no imminent harm.  I mean,
18  when you look at some of the language in there, even the
19  language that the Court's considering keeping in there, it
20  is vague.  It's ambiguous.  And it's supposed to be applied
21  to all of our employees.  It's supposed to be applied to
22  people I'm not even sure they would know it applies to them.
23              But it's unconstitutional.  That's the
24  problem.  I mean, you know, again, the service issue, I
25  mean, that -- if there's going to be an order entered on
```

```
 1  that, I don't think it's appropriate, but I understand it
 2  even though they've been trying to work that out and they've
 3  been going back and forth on my comments.  But prior
 4  restraint cannot take place.  I mean, the law is clear.
 5              Your Honor, one thing we suggested earlier as
 6  they were dragging their feet on a proposed order, we said,
 7  guys, drop it.  Let's go straight to a TI hearing.  That's
 8  fine.  Let's get all the evidence in.  You bring your
 9  witnesses in.  You get this gentleman here, fly him in to
10  San Antonio, and put him on that stand and we look forward
11  to cross-examining him.  We look forward -- he can bring his
12  family that's offended too.  They can intervene in the
13  lawsuit.  We look forward to cross-examining them.
14              THE COURT:  It's 4:37.  We need to sit down.
15              MR. GONZALEZ:  Understood.  But one thing we
16  do need, Your Honor, we need a ruling on the objections that
17  we've asserted, that there's no way we could have -- getting
18  a document at 3:00.  We need that opportunity now before the
19  judge enters any order.
20              And then when the judge tells us the order, we
21  want to object specifically and clearly to that order.
22  Every provision of that order that we find is in violation
23  of the law because we cannot accept being enjoined from
24  doing things that are constitutionally protected.
25              THE COURT:  Okay.  Make your objections.  I'm
```

```
 1   going to type while you're objecting.
 2              MR. O'CONNER:  Your Honor, I just want to
 3   renew my objection to having these objections.
 4              MR. WILLIAMS:  Your Honor, we're going to be
 5   going through the Vertucci affidavit.
 6              Paragraph eight of the Vertucci affidavit,
 7   again, contains conclusory statements without any supporting
 8   evidence and/or facts.  Would you like me to read that?
 9              THE COURT:  No.  Mr. Gonzalez, can't you find
10   a shorter way to get this on the record at 4:37 in the
11   afternoon?
12              MR. GONZALEZ:  Your Honor, I think the law is
13   very clear, it has to be a specific objection with a
14   specific ruling.  We can't just simply object to it.
15              THE COURT:  Do you have an order prepared that
16   I can sign overruled?
17              MR. GONZALEZ:  We don't.  We're here -- based
18   on this here, we need specific objections and specific
19   rulings.  And if we need to come back tomorrow morning, we
20   can do that.  We can bring a proposed order, whatever we
21   need to do, but we need to make sure that we're getting our
22   due process here after being hoodwinked yesterday by
23   opposing counsel.  And so we'll do whatever the Court wants.
24   We'll stay all night.  We were up all night last night
25   briefing this because it was very apparent how egregious it
```

1  was what they were trying to do to us.  We'll do whatever
2  the Court wants.
3              We'll be here all day tomorrow, all day
4  Friday.  We'll work all weekend.  We don't care.  Whatever
5  the Court is asking us to do to preserve our rights in
6  advance of entry.
7              THE COURT:  I'm asking you to write out an
8  order, one through -- whatever it is, the objections you
9  have.  I'll sign it that I'm overruling the objections.  I
10 think your pleadings are on file, correct?  Your objections
11 have been filed?
12             MR. GONZALEZ:  Your Honor, we want an
13 opportunity to specifically go over the objection and the
14 Court to rule on it.  That's what we're asking for.
15             THE COURT:  We'll do that on Tuesday.  I'm not
16 going to do that now.  I'm not going to do that at 4:37.
17 You knew you were set for 4:00.  You didn't call and ask for
18 a reset.  You didn't tell me you were going to need an hour
19 and a half to two hours.
20             MR. GONZALEZ:  Actually, we did, Your Honor.
21 We put in one of the emails --
22             THE COURT:  You asked for 4:00.
23             MR. GONZALEZ:  That was the alternative.  What
24 we asked is to move it to next week.  That's exactly what
25 should happen.

```
 1                THE COURT:  We're not going to do it.
 2                MR. GONZALEZ:  We're asking for the right to
 3   make objections and the Court to rule on specific
 4   objections.  That's what we're asking for, Your Honor.
 5                THE COURT:  And you need to do that on
 6   Tuesday.
 7                MR. GONZALEZ:  We need to do it before an
 8   order is entered, Your Honor.  That's what we're asking for.
 9   Is the Court refusing to do that?
10                THE COURT:  Yes.  The Court is.
11                MR. GONZALEZ:  So if I'm understanding --
12                THE COURT:  I told you yesterday I was going
13   to sign an order.  I objected to the form of the order.
14                MR. GONZALEZ:  You've objected to two forms of
15   order presented by counsel.
16                THE COURT:  Right.
17                MR. GONZALEZ:  That's why we're asking the
18   Court to simply deny the TRO.  That's what should be
19   happening here, Your Honor.
20                THE COURT:  And I'm not because I heard the
21   service of process issue yesterday.  And that concerns me
22   much more than the Facebook does.
23                MR. GONZALEZ:  I understand.  Your Honor, I
24   understand that.  I think wipe out all the Facebook and I
25   think that's a huge issue right there.  I mean, they've gone
```

1  back and forth on this. I don't understand why there's not
2  an agreement. I get that. It's a little nitpicking on one
3  or another. If the TRO is specific on that issue, I suspect
4  that they're going to obviously -- that's going to be their
5  new Rule 11 Agreement, at least until Tuesday.
6           But on the Facebook stuff, it's clear as a
7  bell. This Kinny case could not be any more clear. The
8  Court can't do what the Court's saying the Court wants to
9  do.
10          MR. O'CONNER: I'd just like to ask that --
11 never mind. I don't want to belabor this.
12          MR. MOON: Your Honor, if I may. I would like
13 to address the service of process issues.
14          The questions the Court asked yesterday, was I
15 in charge of process on all eight cases that we have against
16 the co-parties in this cases. And I actually wasn't
17 involved until the fifth case was filed. At that point in
18 time, I was only involved in the service of two of the four
19 cases that were filed. So hopefully that will clarify my
20 answer to the Court yesterday.
21          THE COURT: The Court notes the clarification.
22          MR. MOON: And a great point is, we don't
23 anticipate serving anyone between now and Tuesday when we
24 have time to have the hearing.
25          MR. GONZALEZ: Moot issue, Your Honor.

```
 1                THE COURT:  Sit down.  I'm going to type up my
 2   notes.  Mr. O'Conner, did you draft?
 3                MR. O'CONNER:  I started it, Your Honor, and
 4   then I had to pass it up to Dallas.
 5                THE COURT:  Do you seek mandatory relief in
 6   your motion?
 7                MR. O'CONNER:  I'd have to look.  It says
 8   permanent that I can see, Your Honor.
 9                THE COURT:  Is it Tuesday, March 9th?
10                MR. O'CONNER:  Today.
11                THE COURT:  This order says March 9th.
12                MR. O'CONNER:  It would have to be March 10th.
13                THE COURT:  No, I thought it was --
14                MR. GONZALEZ:  They played a quick one on us.
15   They played a quick one on that too.  Yesterday, they said
16   Tuesday.  And they sent an order saying, yeah, now we're
17   going to have it during your kids' spring break.
18                THE COURT:  I didn't see that, but I know it
19   was next week.
20                MR. GONZALEZ:  Next Tuesday, Your Honor.
21                MR. O'CONNER:  The 3rd.
22                THE COURT:  The 3rd, correct?
23                MR. O'CONNER:  Right.
24                THE COURT:  At 9:00 in the morning?
25                MR. O'CONNER:  9:00.
```

```
 1              THE COURT:  Did you explain to Mr. Corrie how
 2   presiding works?
 3              MR. O'CONNER:  Yes, I did.  I have.  I won't
 4   have to do it again.  I'll be there to appear at presiding
 5   because he's not going to be there.
 6              THE COURT:  What bond are you seeking,
 7   Mr. O'Conner?
 8              MR. O'CONNER:  $500.
 9              THE COURT:  And for your benefit, Mr. -- I've
10   not read Kinny, but I will.  But in the interest of time, I
11   am more persuaded by the Facebook postings of Mr. Vertucci.
12              MR. GONZALEZ:  I'm sorry?
13              THE COURT:  The unclean hands argument.
14              MR. GONZALEZ:  Yes.
15              THE COURT:  So I've removed all the issues
16   regarding Facebook.
17              And the restraining order now reads:
18   Attempting -- serving -- they are now restrained from
19   serving or attempting to serve any legal process including
20   citations, summons, subpoenas or other process on any
21   employee or independent contractor of Nick Vertucci within
22   one hour prior to, at, around or during any program or
23   within three hours following the conclusion of any program.
24              And it's set on March 2nd.
25              MR. O'CONNER:  Instead of March 3rd?
```

```
 1  THE STATE OF TEXAS )
    COUNTY OF BEXAR    )
 2

 3           I, Judith A. Stewart, Official Court Reporter in

 4  and for the 45th District Court of Bexar County, of Texas,

 5  do hereby certify that the above and foregoing contains a

 6  true and correct transcription of all portions of evidence

 7  and other proceedings requested in writing by counsel for

 8  the parties to be included in this volume of the Reporter's

 9  Record, in the above-styled and numbered cause, all of which

10  occurred in open court or in chambers and were reported by

11  me.

12           I further certify that this Reporter's Record of

13  the proceedings truly and correctly reflects the exhibits,

14  if any, admitted by the respective parties.

15           I further certify that the total cost for the

16  preparation of this Reporter's Record is $414.00 and was

17  paid by Plaintiff.

18           WITNESS MY OFFICIAL HAND this the 2nd day of

19  March 2015.

20
                             /s/ Judith A. Stewart
21                          Judith A. Stewart, CSR
                            Official Reporter
22                          Texas CSR 5471
                            Expiration: 12/31/15
23                          45th District Court
                            100 Dolorosa
24                          San Antonio, Texas  78205
                            (210)771-7732
25
```