# Exhibit 2

# Exhibit 2

# MEMORANDUM
# JOINT VENTURE AGREEMENT

This Agreement is entered into as of June 15, 2012 and sets forth the basic terms of our joint venture for the acquisition, rehabilitation and sale by the undersigned parties (each a "Venture" and collectively the "Ventures") of selected single family properties located in the Las Vegas, Nevada, metro area ("Property" or "Properties").

1.  Parties and Name. The joint venture parties are NV Acquisition Management LLC a Nevada Corporation. ("Developer") and RETI Properties, LLC ("Investor"). The name of the joint venture (the "Venture") shall be Vegas Portfolio.

2.  Role and Responsibilities. Developer shall acquire and hold title to the Properties in its name but on behalf of the Vegas Portfolio between the parties. Developer shall be responsible for identifying, acquiring, rehabbing and selling the Properties. Investor shall be responsible for contributing and providing equity funds for use in acquiring, repairing and carrying the Property through the date of resale, upon the terms set forth herein.

3.  Equity Funds. Investor shall contribute the sum of $875,000.00 ("Seed Money") as equity funds to be used for acquisition, repair, carrying cost and closing fees and cost related to "Property". Investor shall not be required to contribute more funds. A separate schedule shall be attached hereto for each property or set of properties a sample of such schedule is attached here as Exhibit "A".. As to each such property, unless acquired in the name of the "Venture", Developer & Investor agrees that it shall hold title on behalf of the "Venture". The Seed Money may not be used for any other purpose than purchase of Properties.

4.  Preference Return; Allocation of Profit; Distributions.

    Distributions of cash not needed for joint venture purposes, including net sale proceeds upon resale of the Property, shall be made as follows:

    (a) First, Seed Money shall be returned in full to Investor;

    (b) Second, 15% of each Property as described in the schedule of properties; and

    (c) Third, the remainder may then be paid to Developer.

    (d)   Developer and Investor may agree in writing to make alternative distributions to cover costs and expenses for either party.

5.  Collateral Security. At the time Investor makes its contribution of equity funds, Developer shall execute and deliver to Investor, as beneficiary, a first lien deed of trust covering the Property (the "Deed of Trust"). The Deed of Trust shall be recorded concurrently with the deposit of equity funds by Investor with the escrow holder handling the purchase of the Property. The Deed of Trust shall secure the obligation of Developer, on behalf of the joint venture, to

make distributions to Investor in return of its capital contribution amount and its share of profits.

    (a)  Developer must send an updated schedule of Properties no later than the 5th of each month to Investor.

6.    <u>Authority; Limitations</u>.  In furtherance of the acknowledged mutual goal of minimizing risk and accomplishing a prompt and early resale of the Property following completion of repairs, Developer's authority and discretion to make decisions with regard to resale of the Property and what price and terms to accept shall be subject to the following limitations:

    (a)  Except as otherwise provided in subparagraphs 6(b) and 6(c) below, any sale or purchase of Properties shall require the mutual consent of both Venturers.

    (b)  Unless Investor otherwise agrees, Developer shall be required to accept any offer received on or after thirty (30) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to 97.5% of the after repaired value of the Property as approved by Investor.

    (c)  Unless Investor otherwise agrees or a previous offer has been accepted, Developer shall be required to accept any offer received after sixty (60) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to or 97.5% of the after repaired value of Property as approved by Investor.

7.    <u>Tax Accounting; Capital Account Restoration</u>.  The parties acknowledge and agree that (a) the joint venture shall be treated as a partnership for tax purposes, and (b) for state law purposes the joint venture shall be treated as a general partnership. To the extent Developer has a negative capital account following sale of the Property and winding up of the joint venture, Developer shall be responsible for restoring its capital account. The proceeds of such contribution by Developer shall be distributed to Investor in return of a portion of its capital contributions. Developer and any other individual members or shareholders of a limited liability entity substituted by Developer shall jointly and severally agree to guarantee the obligations of Developer to contribute funds to eliminate a negative capital account.

8.    <u>Arbitration</u>.  Any action to enforce or interpret this Agreement or to resolve disputes between the parties or by or against any Venturer shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive dispute resolution process. Any party may commence arbitration by sending a written demand for arbitration to the other parties. Such demand shall set forth the nature of the matter to be resolved by arbitration. Arbitration shall be conducted in San Antonio, Texas. The substantive law of the State of Texas shall be applied by the arbitrator to the resolution of the dispute. The parties shall share equally all initial costs of arbitration. The prevailing party shall be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be PAGE A-66.1 entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof.

9. <u>Miscellaneous</u>.

(a) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(b) This Agreement shall be construed and enforced in accordance with the internal laws of the State of Texas. If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

(c) This Agreement and Personal Guaranty shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

(d) Except as provided herein, no provision of this Agreement shall be construed to limit the Venture in any manner in the carrying on of their own respective businesses or activities.

(e) No Venturer shall take any action inconsistent with the express intent of the parties to this Agreement.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first above written.

NV Acquisition Management LLC            RETI Properties, LLC

By:_____               By:_____
Name:    Nick Vertucci                   Name:    Armando Montelongo Jr.
Title:   Managing Member                 Title:   President
Address: 7995 W. Sahara Ave Ste 101      Address: 2935 Thousand Oaks Dr. #6-285
         Las Vegas, NV 89117                      San Antonio, TX 78247

E-mail: GiovanniMFernandez@Gmail.com     E-mail: andym@teamarmando.com

Personal Guaranty

For value received, I, Giovanni Fernandez, absolutely, irrevocably, and guarantee return of seed money and fifteen percent profit according to the terms of the Joint Venture herein to the same extent as if I were the Borrower. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against Vegas Portfolio or that any action be brought against Vegas Portfolio before resorting to this guaranty.

Guarantor

*(signature)*

Giovanni Fernandez, Individually


Personal Guaranty

For value received, I, Nick Vertucci, absolutely, irrevocably, and guarantee return of seed money and fifteen percent profit according to the terms of the Joint Venture herein to the same extent as if I were the Borrower. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against Vegas Portfolio or that any action be brought against Vegas Portfolio before resorting to this guaranty.

Guarantor


Nick Vertucci, Individually

# MEMORANDUM
# JOINT VENTURE AGREEMENT

This Agreement is entered into as of June 15, 2012 and sets forth the basic terms of our joint venture for the acquisition, rehabilitation and sale by the undersigned parties (each a "Venture" and collectively the "Ventures") of selected single family properties located in the Las Vegas, Nevada, metro area ("Property" or "Properties").

1.     Parties and Name. The joint venture parties are NV Acquisition Management LLC a Nevada Limited Liability Company, ("Developer") and EIC Ventures, LLC ("Investor"). The name of the joint venture (the "Venture") shall be Vegas Portfolio.

2.     Role and Responsibilities. Developer shall acquire and hold title to the Properties in its name but on behalf of the Vegas Portfolio between the parties. Developer shall be responsible for identifying, acquiring, rehabbing and selling the Properties. Investor shall be responsible for contributing and providing equity funds for use in acquiring, repairing and carrying the Property through the date of resale, upon the terms set forth herein.

3.     Equity Funds. Investor shall contribute the sum of $500,000.00 ("Seed Money") as equity funds to be used for acquisition, repair, carrying cost and closing fees and cost related to "Property". Investor shall not be required to contribute more funds. A separate schedule shall be attached hereto for each property or set of properties a sample of such schedule is attached here as Exhibit "A".. As to each such property, unless acquired in the name of the "Venture", Developer & Investor agrees that it shall hold title on behalf of the "Venture". The Seed Money may not be used for any other purpose than purchase of Properties.

4.     Preference Return; Allocation of Profit; Distributions.

Distributions of cash not needed for joint venture purposes, including net sale proceeds upon resale of the Property, shall be made as follows:

(a) First, Seed Money shall be returned in full to Investor;

(b) Second, 15% of each Property as described in the schedule of properties; and

(c) Third, the remainder may then be paid to Developer.

(d)     Developer and Investor may agree in writing to make alternative distributions to cover costs and expenses for either party.

5.     Collateral Security. At the time Investor makes its contribution of equity funds, Developer shall execute and deliver to Investor, as beneficiary, a first lien deed of trust covering the Property (the "Deed of Trust"). The Deed of Trust shall be recorded concurrently with the deposit of equity funds by Investor with the escrow holder handling the purchase of the Property. The Deed of Trust shall secure the obligation of Developer, on behalf of the joint venture, to

make distributions to Investor in return of its capital contribution amount and its share of profits.

 (a) Developer must send an updated schedule of Properties no later than the 5th of each month to Investor.

6. Authority; Limitations. In furtherance of the acknowledged mutual goal of minimizing risk and accomplishing a prompt and early resale of the Property following completion of repairs, Developer's authority and discretion to make decisions with regard to resale of the Property and what price and terms to accept shall be subject to the following limitations:

 (a) Except as otherwise provided in subparagraphs 6(b) and 6(c) below, any sale or purchase of Properties shall require the mutual consent of both Venturers.

 (b) Unless Investor otherwise agrees, Developer shall be required to accept any offer received on or after thirty (30) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to 97.5% of the after repaired value of the Property as approved by Investor.

 (c) Unless Investor otherwise agrees or a previous offer has been accepted, Developer shall be required to accept any offer received after sixty (60) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to or 97.5% of the after repaired value of Property as approved by Investor.

7. Tax Accounting; Capital Account Restoration. The parties acknowledge and agree that (a) the joint venture shall be treated as a partnership for tax purposes, and (b) for state law purposes the joint venture shall be treated as a general partnership. To the extent Developer has a negative capital account following sale of the Property and winding up of the joint venture, Developer shall be responsible for restoring its capital account. The proceeds of such contribution by Developer shall be distributed to Investor in return of a portion of its capital contributions. Developer and any other individual members or shareholders of a limited liability entity substituted by Developer shall jointly and severally agree to guarantee the obligations of Developer to contribute funds to eliminate a negative capital account.

8. Arbitration. Any action to enforce or interpret this Agreement or to resolve disputes between the parties or by or against any Venturer shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive dispute resolution process. Any party may commence arbitration by sending a written demand for arbitration to the other parties. Such demand shall set forth the nature of the matter to be resolved by arbitration. Arbitration shall be conducted in San Antonio, Texas. The substantive law of the State of Texas shall be applied by the arbitrator to the resolution of the dispute. The parties shall share equally all initial costs of arbitration. The prevailing party shall be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be PAGE A-66.1entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof.

NVC-035353

9. **Miscellaneous.**

   (a) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

   (b) This Agreement shall be construed and enforced in accordance with the internal laws of the State of Texas. If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

   (c) This Agreement and Personal Guaranty shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

   (d) Except as provided herein, no provision of this Agreement shall be construed to limit the Venture in any manner in the carrying on of their own respective businesses or activities.

   (e) No Venturer shall take any action inconsistent with the express intent of the parties to this Agreement.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first above written.

| | |
|---|---|
| NV Acquisition Management LLC | EIC Ventures, LLC |
| By: *(signature)* | By:_____ |
| Name: Nick Vertucci | Name: Armando Montelongo Jr. |
| Title: Managing Member | Title: President |
| Address: 7995 W. Sahara Ave Ste 101 Las Vegas, NV 89117 | Address: 2935 Thousand Oaks Dr. #6-285 San Antonio, TX 78247 |
| E-mail: GiovanniMFernandez@Gmail.com | E-mail: andym@teamarmando.com |

Personal Guaranty

For value received, I, Giovanni Fernandez, absolutely, irrevocably, and guarantee return of seed money and fifteen percent profit according to the terms of the Joint Venture herein to the same extent as if I were the Developer. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against Vegas Portfolio or that any action be brought against Vegas Portfolio before resorting to this guaranty.

Guarantor

*/signature/*

Giovanni Fernandez, Individually


Personal Guaranty

For value received, I, Nick Vertucci, absolutely, irrevocably, and guarantee return of seed money and fifteen percent profit according to the terms of the Joint Venture herein to the same extent as if I were the Developer. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against Vegas Portfolio or that any action be brought against Vegas Portfolio before resorting to this guaranty.

Guarantor


Nick Vertucci, Individually