# Exhibit 5

# Exhibit 5

# MEMORANDUM FUNDING AGREEMENT

This Agreement is entered into as of June 15, 2012 and sets forth the basic terms of an agreement for the funding, acquisition, rehabilitation and sale by the undersigned parties (each a "Party" and collectively the "Parties") of selected single family properties located in the Las Vegas, Nevada, metro area ("Property" or "Properties").

1. <u>Parties and Name</u>. The Parties are NV Acquisition Management LLC a Nevada Limited Liability Company. ("Developer") and EIC Ventures, LLC ("Investor").

2. <u>Role and Responsibilities</u>. Developer shall acquire and hold title to the Properties in its name. Developer shall be responsible for identifying, acquiring, rehabbing and selling the Properties. Investor shall be responsible for contributing and providing funds for use in acquiring, repairing and carrying the Property through the date of resale, upon the terms set forth herein.

3. <u>Funds</u>. Investor shall contribute the sum of <u>$825,000.00 ("Seed Money")</u> as funds to be used for acquisition, repair, carrying cost and closing fees and cost related to Properties "Acquisition Costs". Investor shall not be required to contribute more funds. A separate schedule shall be attached hereto for each property or set of properties detailing the property address, city, state, square footage, number of bedrooms and bathrooms, purchase price, rehabilitation costs, carrying costs, closing fees (if any), and after repair value. The Seed Money may not be used for any other purpose than purchase of Properties.

4. <u>Preference Return; Distributions</u>.

   Distributions of cash, including net sale proceeds upon resale of the Property, shall be made as follows:

   (a) First, Seed Money shall be returned in full to Investor;

   (b) Second, 15% of each Property's Acquisition Costs; and

   (c) Third, the remainder may then be paid to Developer.

   (d) Developer and Investor may agree in writing to make alternative distributions to cover costs and expenses for either party.

5. <u>Collateral Security</u>. Developer shall execute and deliver to Investor, as beneficiary, a first lien deed of trust covering the Property (the "Deed of Trust"). The Deed of Trust shall be recorded upon the purchase of any Property. The Deed of Trust shall secure the obligation of Developer to make distributions to Investor in return of its capital contribution amount and its share of profits.

(a) Developer must send an updated schedule of Properties with the information required under Section 3 herein no later than the 5th of each month to Investor.

6. <u>Authority; Limitations.</u> In furtherance of the acknowledged mutual goal of minimizing risk and accomplishing a prompt and early resale of the Property following completion of repairs, Developer's authority and discretion to make decisions with regard to resale of the Property and what price and terms to accept shall be subject to the following limitations:

(a) Except as otherwise provided in subparagraphs 6(b) and 6(c) below, any sale or purchase of Properties shall require the mutual consent of Developer and Investor.

(b) Unless Investor otherwise agrees, Developer shall be required to accept any offer received on or after thirty (30) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to 97.5% of the after repaired value of the Property as approved by Investor.

(c) Unless Investor otherwise agrees or a previous offer has been accepted, Developer shall be required to accept any offer received after sixty (60) days but before sixty (60) days following completion of repairs, from a qualified purchaser with no financing contingency, provided that the offered price is at least equal to or 97.5% of the after repaired value of Property as approved by Investor.

7. <u>Tax Accounting; Capital Account Restoration.</u> The parties acknowledge and agree that each Party shall be responsible for its own taxes relating to this Agreement. To the extent Developer has a negative capital account following sale of the Property, Developer shall be responsible for restoring Investors funds. Developer and any other individual members or shareholders of a limited liability entity substituted by Developer shall jointly and severally agree to guarantee the obligations of Developer to contribute funds to eliminate a negative capital account.

8. <u>Arbitration.</u> Any action to enforce or interpret this Agreement or to resolve disputes between the parties or by or against any Party shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive dispute resolution process. Any party may commence arbitration by sending a written demand for arbitration to the other parties. Such demand shall set forth the nature of the matter to be resolved by arbitration. Arbitration shall be conducted in San Antonio, Texas. The substantive law of the State of Texas shall be applied by the arbitrator to the resolution of the dispute. The parties shall share equally all initial costs of arbitration. The prevailing party shall be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be PAGE A-66.1entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof.

9. <u>Miscellaneous.</u>

(a) This Agreement may be executed in one or more counterparts, each of which shall

RETI01829

be deemed an original, but all of which together shall constitute one and the same instrument.

(b) This Agreement shall be construed and enforced in accordance with the internal laws of the State of Texas. If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

(c) This Agreement and Personal Guaranty shall be binding on and inure to the benefit of the Parties and their heirs, personal representatives, and permitted successors and assigns.

(d) Except as provided herein, no provision of this Agreement shall be construed to limit either party in any manner in the carrying on of their own respective businesses or activities.

(e) No Party shall take any action inconsistent with the express intent of the parties to this Agreement.

(f) This Agreement does not create, and shall not be construed to create, a partnership or joint venture of any kind or character between the Parties.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first above written.

NV Acquisition Management LLC

By: _____
Name:    Nick Vertucci
Title:     Managing Member
Address: 7995 W. Sahara Ave Ste 101
         Las Vegas, NV 89117

E-mail: GiovanniMFernandez@Gmail.com

EIC Ventures, LLC

By:_____
Name:   Armando Montelongo Jr.
Title:    President
Address: 2935 Thousand Oaks Dr. #6-285
         San Antonio, TX 78247

E-mail:  andym@teamarmando.com

RETI01830

Personal Guaranty

For value received, I, Giovanni Fernandez, absolutely, irrevocably, and unconditionally guarantee return of Seed Money and fifteen percent profit according to the terms of the Agreement herein to the same extent as if I were the Developer. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against Acquisition Management LLC or that any action be brought against Acquisition Management LLC before resorting to this guaranty.

Guarantor

*[signature]*

Giovanni Fernandez, Individually


Personal Guaranty

For value received, I, Nick Vertucci, absolutely, irrevocably, and guarantee return of Seed Money and fifteen percent profit according to the terms of the Agreement herein to the same extent as if I were the Developer. I waive notice of defaults but reserve to right to cure all unpaid amounts. This is a guaranty of payment and performance. I waive any requirements of law, if any, that any collection efforts be made against NV Acquisition Management LLC or that any action be brought against Acquisition Management LLC before resorting to this guaranty.

Guarantor

*[signature]*

Nick Vertucci, Individually

RETI01831