JEFFREY D. CAWDREY (SBN: 120488)
KIMBERLY D. HOWATT (SBN: 196921)
BRITTANY L. McCARTHY (SBN: 285947)
**GORDON & REES LLP**
633 W. Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470
jcawdrey@gordonrees.com
khowatt@gordonrees.com

ANDREW J. MOON (*Pro Hac Vice*)
NATHANIEL C. CORBETT (*Pro Hac Vice*)
**EDUCATION MANAGEMENT SERVICES, LLC**
2935 Thousand Oaks Drive, Suite 6-285
San Antonio, TX 78247
Telephone: (210) 501-0077
Facsimile: (210) 568-4493
andym@teamarmando.com

Attorneys for Plaintiff and Counterdefendant REAL ESTATE TRAINING INTERNATIONAL, LLC and Crossdefendant ARMANDO MONTELONGO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, <br><br> Defendants. <br><br> THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, <br><br> Counterclaimants <br><br> v. <br><br> REAL ESTATE TRAINING INTERNATIONAL, LLC; ARMANDO MONTELONGO <br><br> Counterdefendant/Crossdefendant. | CASE NO. 8:14-cv-00546-AG-DFM <br><br> **STATEMENT OF GENUINE DISPUTES AND MATERIAL FACT IN OPPOSITION TO DEFENDANT/COUNTER-CLAIMANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: November 9, 2015 <br> Time: 10:00 a.m. <br> Dept.: Courtroom 10D <br> Judge: Hon. Andrew J. Guilford <br><br> Trial Date: December 8, 2015 |

Plaintiff and Counterdefendant Real Estate Training International, LLC ("RETI") and Cross-Defendant Armando Montelongo, Jr. ("Montelongo"), collectively "Counterdefendants," respectfully submit their Opposition to Defendants' Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1 in opposition to the motion for partial summary judgment on the Second Amended Complaint filed by Defendants THE NICK VERTUCCI COMPANIES ("TNVC") and NICK VERTUCCI ("Vertucci"), collectively "Defendants".[1]

## I. STATEMENT OF UNCONTROVERTED FACTS

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Armando Montelongo Seminars ("AMS") and Defendant entered into a written Vendor Agreement dated January 1, 2010, a true copy of which is attached as Exhibit 1 to the Second Amended Complaint ("Complaint").'<br><br>Second Amended Complaint, ¶7; Declaration of Nick Vertucci ("Vertucci Dec."), ¶6; Ex. 3 to Vertucci Dec. | 1. Disputed as phrased. The Vendor Agreement was initially an oral agreement; later, that relationship was documented in a writing entitled "Vendor Agreement," that was executed in 2013, but still reflecting the 2010 commencement date. Undisputed that the Vendor Agreement is effective as of January 1, 2010.<br><br>Exhibit[2] 1, Montelongo Deposition, 165:5-14, 166:14-167:1, 167:24-168:22; Doc. 49-1 (Vendor Agreement, fully executed). |
| 2. AMS first presented the Vendor Agreement to Defendants for signature on July 8, 2013.<br><br>Vertucci Dec., ¶ 4; Ex. 1 to Vertucci Dec. | 2. Disputed as phrased. The Vendor Agreement was initially an oral agreement; later, that relationship was documented in a writing entitled "Vendor Agreement," that was executed in 2013, but still reflecting the 2010 commencement date. |

---

[1] Counterdefendants refer to "Defendants" as "Counterclaimants' throughout their opposing brief and supporting papers; to correspond with the proffered statement of facts, they will use the term "Defendants" here.
[2] All Exhibits referenced are those attached to the Index of Exhibits.

- 1 -

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | Exhibit 1, Montelongo Deposition, 165:5-14, 166:14-167:1, 167:24-168:22; Doc. 49-1.<br><br>In addition, Exhibit 1 to the Vertucci Decl. does not identify specifically what document or version is being transmitted. |
| 3.     Defendants objected to the fact that the Vendor Agreement was backdated to January 1, 2010.<br><br>Vertucci Dec., ¶ 5; Ex. 1 to Vertucci Dec. | 3. Disputed.  Defendants never objected to the date included in the Vendor Agreement.  They inquired about the date, were given an explanation and request to confirm, and never responded.  They later noted it, but Defendants did <u>not</u> object that the Vendor Agreement was backdated.  Defendants did not refuse to sign, and indeed proceed to voluntarily sign the Vendor Agreement.  Defendants did not seek time for attorney review, as such was not their custom and practice.<br><br>Doc. 213-4, Vertucci Declaration ¶ 6 and Exhibit #1, p. 1; Doc. 213-5, Vertucci Declaration Exhibit #2, par. 1; *see also*, SACC p. 27, lns. 1-2; Exhibit 16, Moon Deposition, 196:23-197:7; Exhibit 9, Vertucci Email w/ Montelongo Counsel-Vasquez, 9/14/10; Exhibit 10, Vertucci Email w/ Vertucci Counsel, 5/23/11; Exhibit 11, Vertucci Email w/ Montelongo Counsel-Nunely Firm, June 2011. |
| 4.     On July 9, 2013, Vertucci signed the Vendor Agreement and sent it back | 4. Disputed, to the extent that Defendants use of the term "even |

- 2 -

STATEMENT OF GENUINE DISPUTES AND MATERIAL FACT IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 8:14-cv-00546-AG-DFM

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| to AMS, noting that it was being signed in good faith even though it was backdated.<br><br>Vertucci Dec., ¶6; Exs. 2-3 to Vertucci Dec. | though it was backdated" to imply the Vendor Agreement was in anyway invalid or unenforceable. As stated, above, Defendants did <u>not</u> object to the effective date, refuse to sign, send to an attorney for review, request the date be changed. Also, such date was redily apparent when Vertucci singed, and not changed after the fact. Undisputed that Vertucci signed the Vendor Agreement.<br><br>Doc. 213-4, Vertucci Declaration Exhibit #1, p. 1; Doc. 213-5, Vertucci Declaration Exhibit #2, par. 1; *see also*, SACC p. 27, lns. 1-2; Exhibit 16, Moon Deposition, 196:23-197:7. |
| 5. The Vendor Agreement defines Confidential Information as: "[C]ertain information about [AMS's] properties, business, financial condition, operations, and prospects … to specifically include all aspects of the Seminars .. ."<br><br>Ex. 3 to Vertucci Dec. at p. 1. | 5. Disputed. The definition as stated is incomplete. Throughout the Vendor Agreement further definition of Confidential Information is provided, for example: "…Confidential Information of AMS (including but not limited to books, records, client lists, software, electronic files, customer lists, or any other document or materials related to the business of AMS)…" Further, Defendants have an understanding of what "Confidential Information" includes in similar contractual provisions, since they use similar language.<br><br>*See,* Vendor Agreement, Ex. 1 to Vertucci Dec.; Doc. 49-1 (fully executed); Exhibit 13, Moreno Contract, p. 1, par. 3, p. 3, par. 6; Exhibit 14, IHG Contract, pp. 4-5, par. 6. |

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 6. The Agreement further restricts Defendants' ability to use or disclose such purportedly confidential information:<br><br>"Vendor agrees to never use or disclose, directly or indirectly, for any reason whatsoever or in any way other than at the direction of AMS or after receipt of the prior written consent of AMS, any Confidential Information of AMS. Specifically, Vendor agrees not to utilize, disclose, copy, duplicate or publish all or any part of, nor lend nor permit the disclosure, copying or duplication or publication of all or any party of the Confidential Information of AMS (including but not limited to books, records, clients lists, software, electronic files, customer lists, or any other documents or material related to the business of AMS) to any person or entity, except with the express prior and written consent of AMS. Further, Vendor shall maintain the confidentiality of all Confidential Information of AMS for the sole use and benefit of AMS."<br><br>Ex. 3 to Vertucci Dec. at p. 1. | 6. Disputed as to the preface, as phrased. Undisputed that the provision is contained in the Vendor Agreement.<br><br>Doc. 49-1. |
| 7. The Vendor Agreement also contains two significant provisions that dramatically restrict Defendants' ability to conduct business with anyone who has had, or even may have had, any contact with AMS at any time during Defendants' association with AMS and for two years thereafter. These provisions (the "Non-Compete | 7. Disputed as to the preface, characterization, and opinion, which misstates and misinterprets the contract language. Defendants also exaggerate their misunderstanding of the Vendor Agreement terms, which is belied by their own contracts and admissions. Undisputed that the cited contract language is in the Vendor Agreement. |

| | DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Provisions") state: | |
| 4 | | Exhibit 13, Moreno Contract, p. 1, par. 3, and p. 3, par. 6; Exhibit 14, IHG Contract, pp. 4-5, par. 6; Exhibit 15, Responses to Interrogatories Nos. 19-21; Doc. 49-1. |
| 5 | "Except as AMS may waive or modify in its sole discretion, during the term of the business relationship with AMS and for a period of twenty-four (24) months following the effective termination date of Vendor's business relationship with AMS, for any reason, regardless of whether initiated by Vendor's business relationship with AMS, for any reason, regardless of whether initiated by Vendor or AMS, Vendor shall not solicit, induce, or attempt to induce, any past or current, supplier, client or customer of AMS with whom Vendor dealt, had contact or gained Confidential Information, or any employee or contractor of AMS, as the case maybe be, to: cease or otherwise modify its doing business, in whole or in part, with or through AMS; or do business with any other person, firm, partnership, corporation, or other entity which provides products or performs services materially similar to or competitive with those provided by AMS or accept any request for any such person or entity to do so. "Vendor will not take any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of AMS with any individual or entity identified by AMS as a client or potential client at any time during Vendor's business relationship with AMS and for a period of twenty-four (24) months following | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| the effective termination date of Vendor's business relationship with AMS, for any reason, or otherwise benefit, either financially or otherwise from any Confidential Information (as defined in this Agreement) supplied to Vendor by AMS to change, increase or avoid directly or indirectly payment of established or to be established fees or commissions, without the specific written approval of AMS.<br><br>Ex. 3 to Vertucci Dec. at p. 2. | |
| 8. The only events Defendants did with AMS after signing the Vendor Agreement were the following: in Riverside, California, on July 12-15, 2013, a bus tour at which Defendants gave their customary speaking presentation and sold properties; in San Antonio, Texas, on July 26-28, 2013, a seminar event AMS termed "Market Domination" at which Defendants gave their customary speaking presentation and sold properties, and in Anaheim, California, on August 23-26, 2013, at which Defendants also gave their customary speaking presentation and sold properties. These events were entirely based upon all the same techniques and information Defendants had employed in the seminars for the years previous.<br><br>Vertucci Dec., ¶ 8. | 8. Disputed. Defendants omit, for example, that they attended an RETI training in Austin, Texas in August 2013. In August 2013, Vertucci was permitted to attend an RETI sales team training event in Austin, Texas, which included presentations by several individuals, who presented training to RETI employees and/or contractors on RETI's proprietary methods and information. The training provided by RETI and Montelongo has been uniquely developed over the years through his experience, knowledge, strategy, and assistance of counsel; it is constantly being updated, amended, and modified; and is considered by RETI to be valuable Confidential Information within the meaning of the Vendor Agreement. Vertucci/TNVC was allowed to come to the training for the purpose of promoting his cash-flow sales with the RETI teams, so they could assist with his promotion at RETI |

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | events, and was also inherently exposed to this confidential information. Undisputed as to Vertucci/TNVC's attendance the events that occurred between July 9, 2013 and August 28, 2013. Disputed that Defendants' "techniques" were either i) his own, or ii) consistently the same over the "years previous." <br><br> It is also vague as to what is meant by Defendants' "did" an event; depending on the meaning of that term, other events, meetings, calls, and the like may be implicated. <br><br> Declaration of Armando Montelongo, Jr. ("Montelongo Decl."), ¶ 3; Vertucci Decl., ¶ 2. |
| 9. AMS did not disclose any confidential information to Defendants on or after July 9, 2013. <br> Vertucci Dec., ¶ 7. | 9. Disputed. In August 2013, Vertucci was permitted to attend an RETI sales team training event in Austin, Texas, which included presentations by several individuals, who presented training to RETI employees and/or contractors on RETI's proprietary methods and information. The training provided by RETI and Montelongo has been uniquely developed over the years through his experience, knowledge, strategy, and assistance of counsel; it is constantly being updated, amended, and modified; and is considered by RETI to be valuable Confidential Information within the meaning of the Vendor Agreement. Vertucci/TNVC was allowed to come to the training for the |

- 7 -
STATEMENT OF GENUINE DISPUTES AND MATERIAL FACT IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 8:14-cv-00546-AG-DFM

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | purpose of promoting his cash-flow sales with the RETI teams, so they could assist with his promotion at RETI events, and was also inherently exposed to this confidential information. In addition, by their attendance at each of the events to which they admit (Fact #8), Vertucci was exposed to RETI clients and potentially their contact information. This type of information is typically held private within RETI and its events, and is considered by RETI to be Confidential Information within the meaning of the Vendor Agreement.<br><br>Also, by attending events and with Montelongo's on-stage endorsement, Defendants were able to obtain RET client contact information. (See e.g., Exhibit 18.)<br><br>In addition, Defendants solicited from RETI personnel – namely Erik Slaikeu and Manny Moreno – confidential infroamtionsuch as software (Salesforce) code, 2014 target market information, RETI salary structure infromtion, and RETI client names, well after July 9th and after their relationship with RETI was over.<br><br>Montelongo Decl., ¶¶ 2, 3; Exhibit 20, Felhaber Email re Salesforce code; Exhibit 21, Slaikeu email forwarding target market information to Vertucci; Exhibit 22, Slaikeu email forwarding RETI salary structure information to Verutcci; Exhibit 23, Slaikeu email |

| DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | forwarding RETI client information to Vertucci. |
| 10. AMS terminated the Vendor Agreement and the business relationship between AMS and Defendants on August 28, 2013.<br><br>Vertucci Dec., ¶ 9. | 10. Undisputed in concept, but disputed as to the actual and/or official termination date.<br><br>*See*, Second Amended Complaint, ¶ 12; Exhibit 19, Moon letter. |
| 11. Vertucci knew Erik Slaikeu and Chris Sanders before he ever met Armando Montelongo or started doing business with RETI.<br><br>Vertucci Dec., ¶ 10. | 11. Undisputed. |
| 12. Although AMS claims that the Vendor Agreement memorialized the parties' existing oral understanding, the most significant aspects of the business relationship between AMS and Defendants are not addressed or referenced in the agreement, such as the payment to Vertucci to train AMS students on buying and selling cash-flow properties at the rate of $1,000 per student, and Defendants' payment to AMS of a portion of all sales Defendants made to RETI's students.<br><br>Vertucci Dec., ¶¶ 11-13. | 12. Disputed. The Vendor Agreement was initially an oral agreement; later, that relationship was documented in a writing entitled "Vendor Agreement," that was executed in 2013, but still reflecting the 2010 commencement date.<br><br>Exhibit 1, Montelongo Deposition, 165:5-14, 166:14-167:1, 167:24-168:22.<br><br>The oral agreement regarding a payment of $1,000 per BU is separate from the Vendor Agreement, and is even alleged as such by Defendants, and further is alleged to not have been in effect any longer as of 2012.<br><br>SACC ¶ 21, 33; Doc. 211-3, Montelongo MPSJ Decl. ¶ 5 |

| | DEFENDANT'S ALLEGED UNCONTROVERTED FACTS | COUNTER-DEFENDANTS RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1-16 | 13. Defendants, through NV Real Estate Academy, conduct widely-advertised real estate seminars throughout the country and are attended by dozens or hundreds of people. There is no feasible way to ascertain whether attendees have been to an AMS seminar in the past, or whether they are current AMS clients, unless they decide to volunteer that information.<br><br>Vertucci Dec., ¶ 14. | 13. Disputed. Defendants had access to RETI students at the multiple RETI events they attended – precisely what the Vendor Agreement offers – and collected such contact information, including via RETI's Facebook page. Also, given that Defendants were selling properties to RETI students, they had records of their names and lead information. In addition, Defendants received client information directly from Slaikeu while he still had access to RETI records.<br><br>Exhibit 12, exhibit B thereto; Exhibit 19, Moon letter asking for RETI student names; Exhibit 23, Slaikeu email forwarding RETI client information to Vertucci; Doc. 49-1 |

| | COUNTER-DEFENDANTS' ADDITIONAL MATERIAL FACTS: | COUNTER-DEFENDANTS' SUPPORTING EVIDENCE |
|---|---|---|
| 19-20 | 14. Defendants received access to RETI events and students/clients under the terms of the Vendor Agreement. | 14. Doc. 49-1; Fact #8. |
| 21-25 | 15. Access to RETI events and clients is valuable consideration from which Defendants profited, particularly because it was exclusive to Defendants and NV Acqusitions. | 15. Montelongo Decl., ¶ 4. |
| 26-28 | 16. Access to RETI events and clients is valuable consideration from which Defendants profited; in particular, in | 16. SACC ¶ 32; Exhibit 12, Counterclaimants' Milner/Gough Report, p. 10; Exhibit 12, exhibit C |

| | |
|---|---|
| 2013, Vertucci was selling cash-flow properties, owned by third party NV Acquisitions, by presenting at RETI events and targeting RETI students, with Vertucci taking both his own cut of the sales revenue *plus* an up-front $5,000 "consulting fee" – a total of $11,000 per property sold. Vertucci's retained experts have estimated that this access *at RETI event, alones*[3] netted him millions of dollars – ranging from $483,750 to $2,380,000 in annual estimate revenue – in the years between 2010 and 2013. Between July 9, 2013 and August 28, 2013, alone, Vertucci/TNVC earned $55,000 in consulting fee revenue, and approximately 18.75%[4] of the $713,000 in 2013 average closing revenue, i.e., $133,687.50 – a total of $188,687.50 over only 1 ½ months. | thereto, p. 16, Property Nos. 121 -131 |
| 17.  Access to RETI events and clients is valuable consideration from which Defendants profited, in that it also came with Montelongo's indirect or actual endorsement. | 18. Exhibit 18, Bus Tour Video Excerpt. |
| 18.  The consideration given by RETI in the form of access to confidential information is tied to interests worthy of protection, including Defendants' exposure to RETI training, clients, contractors/employees, and public support by Montelongo. | 19. Exhibit 15, Responses to Interrogatories Nos. 19-21; Montelongo Decl., ¶ 3; Exhibit 18. |
| 19.  The training to which Defendnats were exposed, including in August | 19. Montelongo Decl., ¶ 3. |

---

[3]  The expert report specifically excludes sales that were generated through his radio show, and focuses only on those at the RETI "events". (Exhibit 12, p. 6, par. f and Exhibit B thereto.)
[4]  Reflecting 1 ½ months out of the 8 months represented in the report.

| | | |
|---|---|---|
| 1<br>2 | 2013, is constantly being changed and updated. | |
| 3<br>4<br>5<br>6<br>7<br>8 | 20.    Vertucci admits that Montelongo was free to terminate their relationship. Moreover, the Vendor Agreement was not for any specific duration, and was subject to termination at any time by *either* party. | 20. Exhibit 17, 263:25-264:3, 264:20-265:1; Vendor Agreement, p. 3, par. 3 and p. 4, par. 6.. |
| 9<br>10<br>11 | 21.    The scope of the non-solicitation and non-circumvention provisions of the Vendor Agreement's parameters are reasonable. | 21. Exhibit 15, Responses to Interrogatories Nos. 19-21. |
| 12<br>13<br>14<br>15<br>16<br>17 | 22.    The geographic parameters of the non-solicitation and non-circumvention provisions of the Vendor Agreement are reasonable, particularly given the terms of the Vendor Agreement and the nationwide reach of both parties, and Montelongo's use of social media (internationally accessible). | 22. Exhibit 15, Responses to Interrogatories Nos. 19-21; Vertucci Decl. ¶ 14; Exhibit 7, Montelongo Instagram. |
| 18<br>19<br>20 | 23.    The 2-year length of time for the restrictions of the Vendor Agreement are reasonable. | 23. Responses to Interrogatories Nos. 21, Ex. 15 to Index of Opposition Exhibits; Montelongo Decl. ¶ 3. |

Dated:  October 15, 2015

GORDON & REES LLP

*/S/ KIMBERLY D. HOWATT*
Jeffrey D. Cawdrey
Kimberly D. Howatt
Brittany L. McCarthy
Attorneys for Plaintiff and Counterdefendant REAL ESTATE TRAINING INTERNATIONAL, LLC and Crossdefendant ARMANDO MONTELONGO