UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                     Attorneys Present for Defendants:

**Proceedings:        [IN CHAMBERS] ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT OF THE SECOND AMENDED COMPLAINT AND THE SECOND AMENDED COUNTERCLAIM**

Plaintiff and Counter-Defendant Real Estate Training International, LLC, d/b/a Armando Montelongo Seminars, ("RETI" or "Plaintiff" or "Counter-Defendant") is suing Defendants and Counter-Plaintiffs The Nick Vertucci Companies, Inc. and Nick Vertucci (collectively "Vertucci Defendants") for claims regarding the dissolution of their business relationship. (Second Amended Complaint, "SAC," Dkt. No. 49.) Defendants filed counterclaims against Plaintiff RETI and Counter-Defendant Armando Montelongo (collectively "Counter-Defendants"). (Second Amended Counterclaim, "SACC," Dkt. No. 75.)

Before the Court are cross motions for partial summary judgment. The Vertucci Defendants move for partial summary judgment of the SAC. ("Vertucci Defendants' Motion" Dkt. No. 213.) Counter-Defendants move for partial summary judgment of the SACC. ("RETI & Montelongo's Motion," Dkt. No. 211). The Motions are DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

## PRELIMINARY MATTERS

Counter-Defendants filed objections to the evidence offered by Defendants. (Dkt. No. 226-7.) On motions with voluminous objections, "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010). This is especially true where, as here, many of the objections lack merit. For example, Plaintiff asserts a hearsay objection against Andy Moon's statements in an email exchange with Nick Vertucci. (Dkt. No. 226-7 at 2.) That objection seems to ignore the Federal Rules of Evidence, which provides that a statement "offered against an opposing party and . . . (C) was made by a person whom the party authorized to make a statement on the subject; [or] (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2).

The remaining objections are largely moot because the Court does not rely on most of the evidence under objection. *See, e.g.*, *Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115–16 (N.D. Cal. 2003). To the extent that any other evidence is relied on in this Order, the relevant objections are overruled. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

## BACKGROUND

The parties try to morph this case into a scandalous melodrama. Perhaps it is. But despite counsel's representations at the hearing on this Order that the salaciousness is unavoidable, this case, at core, can be boiled down to a simple story involving a business relationship turned sour. Here are the key players, facts, and actors to that plot.

***Prologue: The Players —*** Plaintiff RETI is a company that provides real estate investment education services and materials. (SAC ¶ 7.) Counter-Defendant Armando Montelongo is the CEO of RETI. (Montelongo Decl. ¶ 1, Dkt No. 226.) Defendant has judicially admitted that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

RETI also does business under the name "Armando Montelongo Seminars" or "AMS." (SACC ¶ 14.)

Defendant Vertucci is also in the business of training students on and investing in cash-flow real estate. (First Vertucci Decl. ¶ 2, Dkt. No. 213-3.) Giovanni Fernandez also makes an appearance in this plot. Fernandez is a contractor who served as a vendor for RETI and who also developed a business relationship with Vertucci. (Fernandez Decl. ¶ 4.)

***Part I: A Budding Business Relationship —*** Sometime in early to mid-2009, Vertucci began a business relationship with Montelongo where Vertucci provided teaching and real estate services to Montelongo's clients. (Vertucci Decl. ¶ 3.) Vertucci would teach at the seminars and would pay Montelogno's business a portion of the proceeds for each sale of cash-flow properties. (*Id.*) Before July 2013, there was no written agreement documenting this business relationship. (*Id.*) Defendants contend that during this period, Vertucci and Montelongo operated "under an oral agreement." (First Vertucci Decl. ¶ 11.) Counter-Defendants do not dispute that an agreement existed, but dispute the terms of that agreement. (SGD ¶ 12; Montelongo Depo. Vol. I, 166–67:25–1.)

***Part II: The Written Agreement —*** On July 8, 2013, AMS's lawyer Andy Moon presented a Vendor Agreement to Vertucci for him to sign before an upcoming bus tour. (Vertucci Defendants' Statement of Uncontroverted Facts and Conclusions of Law, "SUF," ¶ 2, Dkt. No. 213-2; First Vertucci Decl. ¶ 4.) The Vendor Agreement was dated on January 1, 2010. (SUF ¶ 1.) In an email exchange, Moon stated that he needed the Agreement "before you go on stage or work with students." (First Vertucci Decl. Ex. 1.) On July 9, 2013, Vertucci signed the Vendor Agreement "in good faith even though its dated Jan 2010." (First Vertucci Decl. Ex. 2.)

The Vendor Agreement contains three provisions particularly relevant to the Motions. (*See* First Vertucci Decl. Ex. 3.) First, it contains a non-disclosure clause, restricting the Vertucci Defendants' use or disclosure of confidential information of AMS without the "prior written consent of AMS." (SUF ¶¶ 5–6.) Second, it contains a non-solicitation clause that restricts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|----------|------------------------|------|-------------------|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

the Vertucci Defendants' ability to solicit "any past or current supplier, client or customer of AMS with whom [the Vertucci Defendants] dealt, had contact or gained Confidential Information, or any employee or contractor of AMS" for 24-months following the end of the Vertucci Defendants' business relationship with AMS. (SUF ¶ 7.) Finally, the Vendor Agreement contains a non-compete clause preventing the Vertucci Defendants from "tak[ing] any action to directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate the interest of AMS with any  individual or entity identified by AMS as a client or potential client at any time during [the Vertucci Defendants] business relationship with AMS and for a period of [24] months following the effective termination date of [the Vertucci Defendants] business relationship with AMS . . . ." (SUF ¶ 7.)

Vertucci declares that other terms of their business relationship were not addressed in the Vendor Agreement. Those include (1) RETI paying Vertucci $1000 per student for training on buying and selling cash-flow properties and (2) the Vertucci Defendants' payment to AMS of portion of all sales Defendants made to RETI's students. (First Vertucci Decl. ¶¶ 11–13.)

***Part III: The Relationship Sours —*** After signing the Vendor Agreement, the Vertucci Defendants participated in three events with AMS — one in Riverside, California; one in San Antonio Texas; and one in Anaheim, California. (SUF ¶ 8; First Vertucci Decl. ¶ 8.) Defendant also participated in a RETI training event in Austin, Texas, in August 2013. (Counter-Defendants' Statement of Genuine Disputes ("SGD") ¶ 9, Dkt. No. 226-3.) Shortly thereafter, on August 28, 2013, RETI terminated the Vendor Agreement and business relationship with the Vertucci Defendants. (SUF ¶ 10; First Vertucci Decl. ¶ 9.) RETI contends that it ended the relationship because of "Vertucci's reckless extramarital, borrowing, and unprofessional behaviors." (Opp'n to Vertucci Defendants' Motion at 2, Dkt. No. 226.) During this time, Fernandez also ended his business relationship with the Vertucci Defendants, but remained affiliated with RETI. (Fernandez Decl. ¶ 6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

***Part IV: The Alleged Breach —*** The essence of RETI's claims is that in the time between the parties' relationship ending in August 2013 and January 2014, the Vertucci Defendants "developed an entire knock-off real estate seminar company that focused on flipping houses—not just cash-flow properties—by very blatantly using RETI's confidential and proprietary information and strageies, in violation of both the Vendor Agreement and Texas tort law." (Opp'n to Vertucci Defendants' Motion at 2.) RETI also alleges that Vertucci solicited RETI's customers, in violation of contract and tort principles. (*Id.* at 3 (citing SAC ¶¶ 21, 72.) In defense, Vertucci declares that at the time he signed the Agreement, "I already had extensive knowledge of all aspects of AMS's business" and that he did not consider any information he received to be confidential. (First Vertucci Decl. ¶ 7.) He also declares that he did not receive any confidential information from AMS after signing the agreement. (*Id.*)

***Part V: The Relationship Turns Litigious —*** Plaintiff filed this case in Texas state court, and then Defendants removed the case to the United States District Court for the Western District of Texas. (Notice of Removal, Dkt. No. 1.) The case was transferred to this Court for venue reasons. (Transfer Order, Dkt. No. 28.)

In the SAC, Plaintiff fires off seven claims: (1) Breach of Contract; (2) Business Disparagement; (3) Breach of Fiduciary Duty; (4) Fraud; (5) Conversion; (6) Tortious Interference with Business Relations; and (7) Tortious Interference with Prospective Relations. The Court granted Defendants' Motion to Dismiss the claims for Breach of Fiduciary Duty without leave to amend. (Dkt. No. 55.)

Perhaps in an unsurprising plot spin, Defendants counterclaimed against Plaintiff RETI and Armondo Montelongo, bringing Montelongo into the case as a Counter-Defendant. In the SACC, the Counter-Plaintiffs and Defendants assert eight claims: (1) tortious interference with contract; (2) tortious interference with business relationship; (3) breach of oral contract; (4) fraudulent inducement; (5) quantum meruit; (6) conspiracy; (7) theft of services; and (8) declaratory judgment that the Vendor Agreement non-compete provision is invalid. The Court granted Counter-Defendants' Motion to dismiss the second and sixth counterclaims for tortious interference with business relationship and conspiracy. (Dkt. No. 94.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|----------|------------------------|------|------------------|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

Now, as trial approaches, the parties seek summary judgment of some of their claims.

**LEGAL STANDARD**

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden initially is on the moving party to show the absence of a genuine issue of material fact or that the non-moving party will be unable to make a sufficient showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 322-23. Only if the moving party meets its burden must the non-moving party produce evidence to rebut the moving party's claim. If the non-moving party establishes the presence of a genuine issue of material fact, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

**ANALYSIS**

The Court addresses both Motions for Partial Summary Judgment in turn. The Court has previously determined which state law governs the respective claims. (Dkt. No. 55 at 4; Dkt. No. 94 at 4.) For clarity, the Court notes which law applies to each claim at issue in the headings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

## ANALYSIS OF THE VERTUCCI DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Vertucci Defendants move for partial summary judgment for the following claims: the first claim in the SAC for breach of contract; the fourth claim in the SAC for fraud; the sixth claim in the SAC for tortious interference with an existing contract; the seventh claim in the SAC for tortious interference with prospective relations; and the eighth counterclaim in the SACC seeking a declaration that the Vendor Agreement is unenforceable. (*See* Notice of Counter-Plaintiff's Motion at 2–3, Dkt. No. 213.)

The Court notes that in their Reply, Counter-Defendants raise new arguments that weren't raised in their Motion. (*See, e.g.*, Reply, Dkt. No. 238, at 13 (arguing that the Vendor Agreement's integration clause nullif[ies] any such prior agreements).) The Court will not consider such back-door attempts to avoid an opposing argument. Thus, the Court only considers arguments in the Reply that extend arguments Defendants already made in the Motion or address arguments raised in the Opposition.

## 1. First Claim in the SAC for Breach of Contract and Eighth Claim in the SACC for Declaratory Relief That the Vendor Agreement is Unenforceable or Must Be Reformed (Texas Law)

The Vertucci Defendants seek summary judgment on the SAC's first claim for relief for breach of the Vendor Agreement. (SAC ¶¶ 26–30.) "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001). Defendants attack the validity of the Vendor Agreement on a few grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

### 1.1 Whether the Contract Is Not Enforceable Due to Lack of Consideration

To be enforceable, "[a] contract must be based upon a valid consideration or mutuality of obligation." *In re C&H News Co.*, 133 S.W.3d 642, 647 (Tex. App. 2003). "[Consideration] may consist of some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss or responsibility that is undertaken or incurred by the other party." *Id.* An "illusory" promise—or a promise that "fails to bind the promisor, who retains the option of discontinuing performance"—is not adequate consideration. *Id.* "What constitutes consideration for a contract is a question of law." *Burges v. Mosley*, 304 S.W.3d 623, 629 (Tex. App. 2010). "[T]he recital of consideration in a written instrument is not conclusive, and the nature of the real consideration may be shown by parol evidence." *Id.*

The Vertucci Defendants argue that the Vendor Agreement is unenforceable because it was not supported by consideration, but rather by an "illusory" promise. (Vertucci Defendants' Motion at 9.) Defendants point to the non-disclosure, non-compete, and non-solicitation provisions of the Vendor Agreement as prime examples of "one-sided provisions exclusively for RETI's benefit" providing "no benefit" to Defendants. (*Id.* at 10.)

Both the written Vendor Agreement and parol evidence refute Defendants' contention that they received "no benefit" from the contract. To start, Vertucci signed the Agreement that provides that it is supported by "good and valuable consideration." (First Vertucci Decl. Ex. 3.) The Vendor Agreement also defines that consideration: that Defendants "desire[] to gain access to AMS events and customer bases to provide services to AMS." (*Id.* Ex. 2.) Defendants' argument that the promise was illusory because "Plaintiff was not obligated to Provide Defendants with access to RETI events" is expressly contradicted by language in the Agreement that "AMS agrees to allow access to such events and customer bases under the terms and conditions herein." (*Id.*) As noted, Defendant has judicially admitted that "AMS" and "RETI" are synonymous with one another. (SACC ¶ 14.) Defendants' reference to"AMS" in the Vendor Agreement is therefore a red herring. Further, Defendants' argument that Plaintiff could terminate the at-will employment agreement for any reason on 24-hours notice is unconvincing. (Vertucci Defendants' Motion at 11, 12.) Defendants fail to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

mention that the contract was terminable by *both parties* at will on 24-hours notice. (First Vertucci Decl. Ex. 3.)

Further, parol evidence shows that Vertucci benefitted from the agreement. At the hearing on this Order, Defendants argued that parol evidence is not appropriate to show whether consideration existed. But because Defendants argue that the "written instrument is not conclusive" on the question of consideration, "the nature of the real consideration may be shown by parol evidence." *Burges*, 304 S.W.3d at 629. Vertucci admits to attending at least three events after signing the Vendor Agreement. (SUF ¶ 8; First Vertucci Decl. ¶ 8.) Indeed, by Vertucci's own admission, he signed the Vendor Agreement "[a]s the bus tour was an important source of business for Vertucci . . . ." (SACC at 27, ¶ 37.) Vertucci's access to AMS events and students and compensation from those events constitute adequate consideration to support the Vendor Agreement.

The Court therefore DENIES summary judgment based on the argument that the Vendor Agreement lacked adequate consideration.

### 1.2 Whether the Non-Disclosure Provisions of the Vendor Agreement Are Unenforceable

The Vertucci Defendants do not directly challenge the non-disclosure provisions in their Motion, but seem to argue that the non-disclosure provisions are unenforceable because "a promise not to disclose confidential information is not enforceable where the promise does not disclose any confidential information to the promisor." (SUF at 8.) This argument, to the extent that it attacks the validity of the non-disclosure provisions, is not enough to convince the Court that summary judgment is appropriate to find that the non-disclosure provisions are unenforceable. Further, as noted later, there is a genuine dispute as to whether Plaintiff disclosed confidential information after signing the Vendor Agreement. Thus, the Court DENIES the motion for summary judgment based on any argument that the non-disclosure provisions are unenforceable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|----------|------------------------|------|------------------|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

### 1.3 Whether the Non-Compete Provisions of the Vendor Agreement Are Unenforceable

The Vertucci Defendants argue that non-compete provisions in the Vendor Agreement are unenforceable because they are not supported by consideration and because they are unreasonable in scope, geographical area, and time. (Vertucci Defendants' Motion at 12.)

"Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the [Covenants Not to Compete Act ("the Act")]." *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011). The Act provides that

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code § 15.50.

The Texas Supreme Court sets forth a two-step inquiry to determine whether a covenant not to compete is a valid restraint on trade. "First, [the court] determine[s] whether there is an 'otherwise enforceable agreement' between the parties, then [the court] determine[s] whether the covenant is 'ancillary to or part of' that agreement." *Marsh USA*, 354 S.W.3d at 771 (citation omitted). Only if the provision passes those threshold inquiries will a court determine if the provision is "reasonable as to time, scope of activity, and geographical area." *Id.* at 771. "The enforceability of a covenant not to compete is a question of law." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

### 1.3.1 Whether the Non-Compete Is Ancillary to or Part of an Otherwise Enforceable Agreement

First, the Court must determine if there is an "otherwise enforceable agreement" between the parties. *Marsh USA*, 354 S.W.3d at 771. The Vertucci Defendants argue that the non-compete provisions are unenforceable because they aren't part of an otherwise enforceable agreement. (Vertucci Defendants' Motion at 15.) This argument fails. Indeed, Defendants admit and argue that there was an oral agreement between Vertucci and Montelongo starting around 2009. (First Vertucci Decl. ¶ 11 ("From 2009 forward, Mr. Montelongo and I operated throughout that time under an oral agreement that did not include the terms set forth in the Vendor Agreement.").) Thus, there was an "otherwise enforceable agreement" between the parties at the time Vertucci signed the Vendor Agreement.

The non-compete provisions of the Vendor Agreement were also "ancillary to or part of" that underlying oral agreement. *Marsh USA*, 354 S.W.3d at 771. A covenant not to compete is ancillary to or part of an enforceable agreement if supported by consideration that is "reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill." *Marsh USA*, 354 S.W.3d at 775.

Defendants don't argue that obtaining confidential information, trade secrets, or goodwill would not be "reasonably related interests worthy of protection." Instead, they dispute that Defendants received confidential or trade secret information during the relationship. (First Vertucci Decl. ¶¶ 6–7 (declaring that he did not receive any confidential or trade secret information).) But there is a genuine dispute as to whether Defendant received confidential information during the business relationship and after signing the Vendor Agreement. (*See* Montelongo Decl. ¶ 3 (declaring that Vertucci attended a training event where he received "RETI's proprietary methods and information").) Setting aside whether Defendants did or did not obtain confidential information, the evidence shows that *at the very least* RETI's goodwill was an interest worthy of protection. That goodwill included access to RETI's contractors, employees, and clients. (Montelongo Decl. ¶ 3 (declaring the Vertucci was permitted to attend a RETI sales team training event in Texas with RETI employees).) The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

Texas Supreme Court has held that a company's goodwill, including "the relationships the company has developed with its customers and employees and their identities," constitutes an interest worthy of protection by a non-compete clause. *Marsh USA*, 354 S.W.3d at 777.

On this point, the Court is concerned about the Vertucci Defendants' representations in their briefing of the current state of Texas law on covenants not to compete. As just one example, Defendants state that a non-compete agreement "must be supported by consideration that *gives rise* to the employer's interest in restraining competition." (Vertucci Defendants' Motion at 14 (emphasis added).) But this statement runs contrary to the very case cited by Defendants that *overturns* the "give rise" requirement. *See Marsh USA*, 354 S.W.3d at 775 ("[T]here is no compelling logic in *Light's* [*Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994)] conclusion that consideration for the otherwise enforceable agreement gives rise to the interest in restraining the employee from competing."). (*See also* Reply, Dkt. No. 238, at 7 n.1 (stating that the Texas Supreme Court "otherwise left is holding in *Light* undisturbed.")  To be sure, Defendants are not alone in citing *Light* as binding Texas authority. (*See* Opp'n to Vertucci Defendants' Motion at 13 (citing *Light*).)

This is not the first time the Court has admonished the parties in this case to not misstate the law. (Dkt. No. 94.) As we noted then, the Court relies upon the diligence and candor of counsel, and repeated misstatements severely impair the effectiveness of briefing. *See* Antonin Scalia & Bryan Garner, *Making Your Case: The Art of Persuading Judges* 14 (2008) ("Inaccuracies can result from either deliberate misstatements or carelessness. Either way, the advocate suffers a grave loss of credibility from which it's difficult to recover."). At the hearing on this Order, the parties represented that "subtle" changes in the law had "muddled" the Texas law on covenants not to compete. They even offered to provide supplemental briefing to clarify the law in this area. The Court has no reason to believe that such misstatements are intentional. But the Court can't rely on a party having a "do-over" to correctly state the law. Indeed, it is a lawyer's professional and ethical responsibility to Shepardize a case. Nor is the Court convinced that the law is as "confusing" or "muddled" as counsel suggests, especially in light of a recent Texas Supreme Court decision clarifying the law on covenants not to compete. *See Marsh USA*, 354 S.W.3d at 775. The chaos of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

case is only made more chaotic by such misstatements.

### 1.3.2 Whether the Non-Compete Provisions Are Reasonable in Scope of Activity, Geographical Area, and Time

Defendants also argue that even if the non-compete provisions pass the threshold requirements, they are unreasonable in scope, geographical area, and time.

On scope of activity, Defendants argue that the non-compete provisions are unreasonable because they are overbroad and vague. (Vertucci Defendants' Motion at 18–19.) The Court disagrees. Defendants' argument that the term "confidential information" is "vague and indetermination" is undermined by Defendants' use of similar terms in their own contracts with customers and former employees. (*See* Dkt. No. 226-27, Ex. 13 ¶¶ 3, 5; Ex. 14 ¶ 6.) Defendants have also not presented any evidence to support their argument, other than single sentence in Vertucci's declaration that the Vertucci Defendants would be unable to determine RETI's suppliers, clients, or customers, to support their argument. (First Vertucci Decl. ¶ 14.) The provisions are not overbroad, as they are limited to suppliers, clients, of customers of AMS "*with whom Vendor dealt.*" (*Id.* Ex. 3.) Vertucci even admits that the identity of at least some of those persons ("prospects") "was displayed in a very public manner on the bus tours." (First Vertucci Decl. ¶ 7.) Again, Vertucci's own evidence undermines the argument that identifying persons "with whom he dealt" would not be feasible. As such, Defendants' argument that the scope of the non-compete provisions are unreasonable fails.

On geography, Defendants argue that the scope of the geographical area is unlimited — potentially covering "every geographical area on the fact of the earth other than non-territorial oceans." (Vertucci Defendants' Motion at 20.) A non-compete covenant that does not have a geographical limit is not per se unreasonable. Rather, "[Texas] courts have held that a non-compete covenant that is limited to the employee's clients is a reasonable alternative to a geographical limit." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. 2009). Here, the covenant restricts the Vertucci Defendants based on clients, not on location. That makes sense given the national scope of Plaintiff's business. As such, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|

| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. |
|---|---|

absence of a geographical limit does not make the contract per se unreasonable.

On time, Defendants argue that the time restriction of 24-months is unreasonable. (Vertucci Defendants' Motion at 21.) Defendants base this argument on the fact that the scope of activities is so broad that it effectively bars Defendants "from doing business at all for two years." (*Id.*) As noted, the scope of activities is not so broad to completely bar Defendants from the field of real estate investment training and investing. Further, a 24-month period is on par with similar non-compete provisions upheld by Texas courts. *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App. 2009) ("Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement."). After considering the nature of Plaintiff's business and the scope of the activity restricted, the Court is not convinced that the time restriction is unreasonable.

### 1.4 Conclusion

The Court therefore DENIES the request for summary judgment of the first claim for relief in the SAC for breach of contract. Now for some cleaning up.

To start, Defendants argue that the unreasonableness of the non-compete provisions "mandates reformation of the Vendor Agreement." (Vertucci Defendants' Motion at 21–22.) They also argue that "no damages may be awarded based upon pre-reformation activities." (Notice of Motion at 2.) But Defendants have not pleaded "reformation" as a remedy in their counterclaims. Further, as Counter-Defendants note, reformation would still be inappropriate because the 2-year provisions of the Vendor Agreement expired on August 29, 2015. (Opp'n to Vertucci Defendants' Motion at 22–23.)

Next, Defendants cursorily request that the Court summarily adjudicate that the Vendor Agreement is unenforceable under Rule 56(g). (Vertucci Defendants' Motion at 9–12.) *See* Fed. R. Civ. P. 56(g) (permitting a court to "enter an order stating any material fact . . . that is not genuinely in dispute"). Defendants' request for summary judgment is indecipherable from their request for summary adjudication. Thus, for the same reasons the Court denies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

the request for summary judgment, the Court DENIES the request for summary adjudication.

Finally, for the same reasons that Defendants' request for summary judgment of the breach of contract claim fails, the Court DENIES the request for summary judgement for the eighth claim in the SACC seeking a declaration that the Vendor Agreement is unenforceable or must be reformed. (*See* Vertucci Defendants' Motion at 12 (requesting summary judgment of the eighth counterclaim "for the same reasons" they are entitled to summary judgment of the first claim in the SAC).)

**2. Fourth, Sixth, and Seventh Claims in the SAC (Texas Law)**

Defendants also seek summary judgment on the fourth, sixth, and seventh claims in the SAC. In their Notice of Motion, they seem to request such relief on the grounds that the "Vendor Agreement is unenforceable due to lack of consideration, or, in the alternative, that the covenants not to compete contained therein are unenforceable or must be reformed." (Notice of Motion at 2.) It seems, then, that Defendants seek summary judgment for the claims of fraud, tortious interference with an existing contract, and tortious interference with prospective relations on the same grounds that they seek summary judgment for the breach of contract claim. Defendants' Motion does little to clarify Defendants' arguments in support of summary judgment for the fourth, sixth, and seventh claims. (*See* Vertucci Defendants' Motion at 7.)

To the extent Defendants seek summary judgment on the same grounds that they seek summary judgment of the breach of contract claim, those arguments are unavailing for the reasons already discussed. Further, those claims don't turn on whether the Vendor Agreement is enforceable under contract law. Finally, the Court would be very reluctant to grant summary judgment—a drastic remedy depriving Plaintiff of a jury trial—on such cursory (at best) or nonexistent arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

The Court therefore DENIES Defendants' request for summary judgment of the fourth, sixth, and seventh claims.

**ANALYSIS OF COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Counter-Defendants move for partial summary judgment of the following counterclaims in the SACC: the first counterclaim for tortious interference with a contract against Montelongo; the third counterclaim for breach of an oral contract against RETI; the fourth counterclaim for fraudulent inducement against RETI and Montelongo; the seventh counterclaim for theft of services against RETI and Montelongo. (Counter-Defendants' Notice of Motion at 2–3, Dkt. No. 211.) Counter-Defendants also argue that they lack admissible evidence to support their theory that Montelongo is the alter ego of RETI. (*Id.*) The Court addresses each argument in turn.

Like their opponents, the Vertucci Defendants follow suit and make new arguments in their Reply. (*See, e.g.*, Reply, Dkt. No. 237, at 4 (arguing that "Montelongo cannot interfere with the alleged contract as a matter of law"; *id.* at 7 (arguing that Counter-Defendants did not breach a contract as modified).) Also like their opponents, the Court only considers arguments in the Reply that Counter-Defendants already made in their Motion or address arguments raised in the Opposition.

**1. First Counterclaim in the SACC for Tortious Interference with Contract Against Montelongo (California Law)**

Counter-Defendants first move for summary judgment on the first counterclaim for tortious interference with contract asserted against Montelongo. (RETI & Montelongo's Motion at 5.) Under California law, the elements of a claim for tortious interference with a contract are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns &*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

*Co.*, 50 Cal.3d 1118, 1126 (1990). In a tortious interference with contract claim, "it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

### 1.1 Whether Defendants Will Be Unable to Make a Sufficient Showing That There Is a Valid Contract Between Defendants and a Third Party

Counter-Defendants first argue that Defendants cannot establish a valid underlying contract. (RETI & Montelongo's Motion at 5–6.) They start by arguing that the underlying contract is uncertain. (*Id.*) But the SACC specifically identifies that the underlying agreement is between the Vertucci Defendants and Fernandez and Sabatino, Fernandez's wife. (SACC ¶ 54.)

The Court is also unconvinced that Defendants cannot produce any evidence to show that an agreement existed. Counter-Defendants' argument that Vertucci was unable to identify any agreement with Fernandez is contradicted by the record. (*See, e.g.*, Vertucci Depo. Vol. I, 185:12–24 (responding that Vertucci and Fernandez "had a business plan we put together and I know that he—I was—we were both in a company called NV Acquisition."); *see also* Second Vertucci Decl. Ex. 3 (a copy of the business plan); *see also* Vertucci Depo. Vol. II, 435:4–11 (affirming there was an agreement with Fernandez "at the end of 2011 or the beginning of 2012").) The fact that there was no single written agreement doesn't refute that there could have been an oral agreement between the parties. (*See* RETI & Montelongo's Motion at 7; Vertucci Depo. Vol. I, 185–86:25–2; Vertucci Depo. Vol. II, 434:18–21.) Nor does Fernandez's legal conclusion that there wasn't a contract persuade the Court that such a joint-venture agreement didn't exist. (Fernandez Decl. ¶ 5.)

Finally, just because Vertucci described an "amorphous business relationship" doesn't persuade the Court that an implied-in-fact contract didn't exist between Fernandez and Vertucci. Indeed, a joint-venture agreement may be inferred from the acts and declarations of the parties. *See Weiner v. Fleischman*, 54 Cal. 3d 476, 482–83 ("A joint venture or partnership may be formed orally, or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." (internal citations and quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|----------|------------------------|------|------------------|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

The evidence could support that such a relationship existed. (*See, e.g.*, Vertucci Depo. Vol. II, 435:8–15 (responding to whether there was a single written agreement, and pointing to "e-mails that reference each other as partners and making decisions together and probably discussing every moving part of it."); *id.* at 447–451 (describing the terms and nature of the business arrangement); Second Vertucci Decl. ¶¶ 10–23 (describing some of the terms and the nature of their agreement); Fernandez Decl. ¶ 5 (describing an "informal relationship" between Fernandez and Vertucci).)

Thus, there remains a genuine dispute of material fact as to whether a contract between Fernandez and the Vertucci Defendants existed.

**1.2 Whether Defendants Will Be Unable to Make a Sufficient Showing That Counter-Defendant Montelongo Knew of the Contract**

Counter-Defendants also argue that Defendants cannot establish Montelongo's knowledge of a valid contract between the Vertucci Defendants and a third party. (RETI & Montelongo's Motion at 8.) They argue that the only evidence on record of Montelongo's knowledge is his own declaration that he was not aware of a contract between the parties. (Montelongo Decl. ¶ 2.) But Defendants point to circumstantial evidence and other evidence to show otherwise. For instance, Vertucci declares that Montelongo was present at the first meeting between Vertucci, Fernandez, and a former business partner when the parties first discussed setting up the joint venture in Las Vegas, and that Vertucci paid Montelongo $7000 out of the joint venture's profits for each property sold in return for access to RETI's students. (Second Vertucci Decl. ¶¶ 25, 26; *see also* Vertucci Depo. Vol. II, 449:8–18.) That fact, among others, show a genuine issue of material fact exists as to whether Montelongo knew of the business venture between Fernandez and Vertucci.

Thus, the Court DENIES the request for summary judgment as to the argument that Defendants can not produce enough evidence to show that Montelongo "knew" of a valid contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

### 1.3 Whether Defendants Will Be Unable to Make a Sufficient Showing That Montelongo Engaged in Intentional Acts Designed to Induce a Breach or Disrupt a Valid Contract

Counter-Defendants argue that there isn't evidence to support that Montelongo intended to induce a breach. (RETI & Montelongo's Motion at 8.) Specifically, they argue that because Montelongo denies knowledge of a contract, "he cannot be charged with having knowledge that his alleged conduct would interfere with a contract unknown to him." (RETI & Montelongo's Motion at 8.) This boot-strapped reasoning is unpersuasive to show that there is no genuine dispute of material fact regarding this element. Thus, the Court DENIES the request for summary judgment based on the argument that no evidence supports Montelongo interfered with a valid contract.

### 1.4 Whether Defendants Will Be Unable to Make a Sufficient Showing That Defendants Suffered Damages Caused by Montelongo

In their last attempt to knock out this claim, Counter-Defendants argue that "Defendants cannot establish that any conduct of Montelongo actually caused them any damages." (RETI & Montelongo's Motion at 11.) Their sole support for this argument is the conclusory assertion that Fernandez made "his own business decision . . . to remain affiliated with RETI." (Fernandez Decl. ¶ 6.) Even if the Court regarded this conclusory statement as persuasive, this statement misses the mark. Fernandez's decision to remain affiliated with RETI doesn't show that Fernandez's decision to cut ties with Vertucci caused no damage. In fact, the record supports that Defendants suffered damage. (Second Vertucci Decl. ¶ 34.) The Court therefore DENIES the request for summary judgment as to the argument that no evidence shows that Montelongo caused Defendants damages.

The Court DENIES the motion for summary judgment of the first counterclaim in the SACC for intentional interference with a contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

## 2. Third Counterclaim in the SACC for Breach of Oral Contract Against RETI (Texas Law)

Counter-Defendants next seek summary judgment of the third counterclaim against RETI for breach of an oral agreement. (RETI & Montelongo's Motion at 11.) Under Texas law, the elements of the claim are: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320 (Tex. App. 1995).

### 2.1 Whether Defendants Will Be Unable to Make a Sufficient Showing of a Valid Oral Contract

Counter-Defendants first argue that Defendants "cannot establish the existence of a valid oral contract between themselves and RETI." (RETI & Montelongo's Motion at 12.) Counter-Defendants argue that summary judgment is appropriate because the parties to the oral contract are unclear or that Vertucci has not alleged "all of the terms" of the contract including the duration of the contract. (*Id.* at 12–14.)

These arguments are unavailing. To start, the counterclaim clearly identifies the alleged agreement as between Vertucci and RETI. Further, the duration of a contract is not a necessary term. *See Solomon v. Greenblatt*, 812 S.W.2d 7, 15 (Tex. App. 1991) ("When a contract leaves open the time and place of performance, the law will imply that the time of performance was to be a reasonable time."). The duration of the contract also seems irrelevant, as Vertucci isn't seeking damages after August 28, 2013 — the date RETI ended its relationship with Vertucci. (Dkt No. 216, Ex. 5 at 65.) As noted earlier, Counter-Defendants don't dispute that there was an agreement between the parties before the written Vendor Agreement. They only dispute whether that agreement included the same terms as the Vendor Agreement or included separate terms. (*Compare* Montelongo Depo. Vol. I, 165:10–11 ("There is an agreement between Nick Vertucci and RETI as of January of 2010.") *and id.* at 166–67:25–1 ("The agreement was agreed upon in January 2010 and it was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

memorialized in 2013.") *with* First Vertucci Decl. ¶ 11 ("From 2009 forward, Mr. Montelongo and I operated throughout that time under an oral agreement that did not include the terms set forth in the Vendor Agreement.").) There is therefore a material dispute as to the *terms* of the oral agreement, but not as to the *existence* of one.

The Court DENIES the summary judgment motion as to the argument that there was no oral contract between the parties.

### 2.2 Whether Defendants Will Be Unable to Make a Sufficient Showing That RETI Breached an Oral Agreement

Counter-Defendants argue that summary judgment is appropriate because they cannot show that RETI breached an oral agreement. (RETI & Montelongo's Motion at 14.) Like many of their arguments, this argument is bootstrapped to their argument that Defendants "cannot evidence the specific terms of any oral agreement with RETI." As discussed earlier, this argument is unpersuasive. Further, Counter-Defendants try to persuade the Court that Vertucci "agreed" to stop receiving RETI's $1000 of compensation per student per event. But there is a genuine dispute as to whether Vertucci "agreed" to stop these payments, or whether those payments were replaced by a promise that Montelongo would not interfere with his relationship with Fernandez. (*See* Second Vertucci Decl. ¶ 30.) In any event, Counter-Defendants haven't provided enough evidence to show that summary judgment is appropriate on these grounds.

The Court therefore DENIES the request for summary judgment based on the lack of evidence to show that RETI breached an oral agreement.

### 2.3 Whether Defendants Will Be Unable to Make a Sufficient Showing That Defendants Suffered Damaged from RETI's Breach

Counter-Defendants argue that there is no evidence that Defendant "did not receive the compensation that RETI offered to pay for any particular speaking services." (RETI &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|----------|------------------------|------|------------------|

| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. |
|-------|-----------------------------------------------------------------------------------------------------------------------|

Montelongo's Motion at 16.) This argument is too clever. Perhaps the Court would be persuaded if Counter-Defendants presented supportive evidence showing that Defendants have already received the requested compensation. But Counter-Defendants' argument goes further and requests that Defendants prove a negative — that they haven't already received the compensation. This argument is unpersuasive. Further, the record shows that Defendant may have suffered damages as a result of a breach. (Second Vertucci Decl. ¶ 37 (estimating $190,000 in damages).)

The Court therefore DENIES the request for summary judgment on the ground that Defendants can't show damages flowing from RETI's alleged breach.

**3. Fourth Counterclaim in the SACC for Fraudulent Inducement Against RETI and Montelongo (Texas Law)**

Counter-Defendants argue that there is no evidence to create a triable issue of fact to support the fourth counterclaim against RETI and Montelongo for fraudulent inducement. (RETI & Montelongo's Motion at 17.) Under Texas law, "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (1998). Moreover, "a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Id.* And "tort damages are not precluded simply because a fraudulent representation causes only an economic loss." *Id.* at 47.

The thrust of all of Counter-Defendants arguments attack the lack of evidence to support that RETI or Montelongo fraudulently induced Defendants into believing that they would continue their business relationship with Vertucci in perpetuity. Those arguments fail. Defendants allege that RETI falsely promised not to interfere with Defendants' joint venture with Fernandez. Counter-Defendants present no arguments, much less evidence, to show that Defendants lack evidence involving fraudulent inducement to disrupt the Vertucci-Fernandez relationship. In fact, the record presents some evidence of such inducement. (*See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

Second Vertucci Decl. ¶ 32.) Thus, their misdirected arguments fall short of their burden to show that summary judgment is appropriate here.

The Court therefore DENIES the request for summary judgment for the fraudulent inducement claim in the SACC.

**4. Seventh Counterclaim in the SACC for Theft of Services Against RETI and Montelongo (Texas Law)**

Counter-Defendants next seek summary judgment on the seventh counterclaim in the SACC for theft of services against RETI and Montelongo. (RETI & Montelongo's Motion at 20.) Under Texas law, a plaintiff can sue in tort for certain violations of the penal code. *See* Tex. Civ. Prac. & Rem. Code § 134.001. One such claim is for theft of services, defined as follows.

> (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:

>> (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token; . . . or . . .

>> (4) he intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make payment after receiving notice demanding payment.

Tex. Penal Code § 31.04.

Counter-Defendants state that Defendants "cannot establish any of the elements of this claim." (RETI & Montelongo's Motion at 21.) Counter-Defendants first argue that Vertucci was granted access to RETI events and students, which was sufficient compensation. (*Id.* at 20–21.) This argument fails to address the core of Defendants' counterclaim: that RETI and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

Montelongo agreed to pay Vertucci $1,000 per student for his speaking services. (SACC ¶ 95.) More importantly, Counter-Defendants may dispute the existence of that $1000-per-student term, but they fail to offer any evidentiary support to convince the Court that the term did not exist. Counter-Defendants also argue that Defendants cannot prove that Montelongo personally entered into any contract with Vertucci. (RETI & Montelongo's Motion at 21.) But, once again, their argument lacks any evidentiary support. Without even a scintilla of evidentiary support or more persuasive arguments, the Court is not convinced that summary judgment is appropriate for Defendant's seventh counterclaim.

Counter-Defendants' request for summary judgment of the theft of services claim is therefore DENIED.

**5. Alter Ego Theory of Liability**

Counter-Defendants' final argument is that they are entitled to summary judgment regarding the "alter ego theory against Montelongo." (RETI & Montelongo's Motion at 22.) It is curious that Counter-Defendants raise this argument, as the Court has already addressed it. As the Court stated in its Order Granting in Part and Denying in Part Motion to Dismiss the Second Amended Counterclaims, "Counter-Plaintiffs [and Defendants] say they are not pursuing alter-ego liability. Rather, the allegation was intended to support joinder of Montelongo, which the Court has already decided is appropriate." (Dkt. No. 94 at 13.) If the Court wasn't clear enough then, let's make sure it is now. "Defendants do not seek to hold Montelongo individually liable for any act of RETI purely on an alter ego theory. The claims directed against Montelongo alone are based upon his own wrongful conduct." (Opp'n to RETI & Montelongo's Motion at 25.) Thus, in Defendants words, "there is really nothing to rule upon." (*Id.*) To the extent there is, the request for summary judgment on the purported "alter ego theory" is DENIED.

The Court therefore DENIES the motion for partial summary judgment for the first, third, fourth, and seventh counterclaims, and any alter ego theory in the SACC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0546 AG (DFMx) | Date | January 11, 2016 |
|---|---|---|---|
| Title | REAL ESTATE TRAINING INTERNATIONAL, LLC, d/b/a ARMANDO MONTELONGO SEMINARS v. THE NICK VERTUCCI COMPANIES, INC. ET AL. | | |

**DISPOSITION**

The Motions for Summary Judgment are DENIED. (Dkt. Nos. 211, 213.)

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |