AKERMAN LLP
CLINT CORRIE (TX SBN 04840300)
*Admitted Pro Hac Vice*
Email: clint.corrie@akerman.com
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

SPACH, CAPALDI & WAGGAMAN, LLP
Madison S. Spach, Jr. (CA SBN 94405)
Email: madison.spach@gmail.com
ANDREW D. TSU (CA SBN 246265)
Email: andrewtsu@gmail.com
4675 MacArthur Court, Suite 550
Newport Beach, California 92660
Telephone: (949) 852-0710 / Fax: (949) 852-0714

*Attorneys for Defendants/Counter-Plaintiffs The Nick Vertucci*
*Companies, Inc. and Nick Vertucci*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI,<br><br>Defendants/Counter-Plaintiffs.<br>REAL ESTATE TRAINING INTERNATIONAL, LLC, and ARMANDO MONTELONGO, | Case No. 8:14-cv-00546 AG (DFM)<br><br>Assigned to Hon. Andrew J. Guilford<br>Courtroom 10D<br><br>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO CONSOLIDATE ACTIONS, OR, ALTERNATIVELY, FILE A RULE 15 MOTION, AND ALLOW LIMITED ADDITIONAL DISCOVERY AND CONTINUE TRIAL DATE BY REAL ESTATE TRAINING INTERNATIONAL, LLC AND CROSS-DEFENDANTARMANDO MONTELONGO, JR. |

Counter-Defendant and
Cross-Defendant.

)
) Hearing Date: March 7, 2016
) Time:   10:00 a.m.
) Crtrm.: 10D
)
) Trial Date:  March 8, 2016
) Final Pre-trial Conf.:  February 29, 2016

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iv

1.    INTRODUCTION .................................................................................................1

2.    THE RETI PARTIES' FAILURE TO ESTABLISH GOOD
      CAUSE UNDER RULE 16 REQUIRES DENIAL OF THE
      MOTION .................................................................................................5

      A.    The Motion to Consolidate/Amend Is a Disguised Motion
            to Amend the Scheduling Order that Must Be Determined
            Under Rule 16 .................................................................................................5

      B.    The RETI Parties' Inexcusable Delay in Seeking to Add
            New Claims and New Parties Precludes a Finding of Good
            Cause .................................................................................................7

            (1)    The RETI Parties Focused their Discovery Efforts
                   on Vertucci's Personal Life, Rather than the
                   Elements of their Claims .................................................................8

            (2)    The RETI Parties Were Well Aware of NVREA's
                   Existence and that It Was Likely an Entity Separate
                   from TNVC .................................................................................................10

                   a.    Excerpt 1: NVREA Likely Is A Separate
                         Entity .................................................................................................11

                   b.    Excerpt 2: RETI's Counsel Represents He Is
                         Not Attempting to Establish that NVREA Is a
                         dba .................................................................................................12

                   c.    Excerpt 3: NVREA Almost Certainly Was
                         Formed in Utah .................................................................12

                   d.    Excerpt 4: RETI's Counsel Knew that TNVC
                         Was No Longer Being Used As A Business
                         Entity .................................................................................................12

            (3)    The RETI Parties Have Failed to Establish Good
                   Cause for Amending the Scheduling Order ...................................14

        (4)     The RETI Parties Also Failed to Establish Good
Cause for Amending the SAC to Add New Claims
and New Parties ..........................................................................16

3.     CONSOLIDATION WOULD DEFEAT, RATHER THAN
ADVANCE, THE INTERESTS OF JUSTICE.............................................19

    A.    Individual Issues in the Two Actions Far Outweigh Any
Common Issues, Precluding Consolidation .........................................19

    B.    Even If Common Issues Predominated in the Two Actions,
The Actions Should Not Be Consolidated ..........................................23

4.     CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

## Cases

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
  465 F.3d 946 (9th Cir. 2006) ........................................................................ 17

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*,
  1994 WL 16780779 (N.D. Cal. 1994) ........................................................... 20

*Beardmore v. Jacobson*, 2015 WL 5530398 (S.D. Tex. 2015) ......................... 22

*Boulton v. American Transfer Services, Inc.*,
  2016 WL 164316 (S.D. Cal. 2016) ............................................................... 16

*Cole v. Salt Creek, Inc.*, 2012 WL 5331235 (D. Utah 2012) .................................. 7

*Dilettoso v. Potter*, 243 F.App'x 269 (9th Cir. 2007) ......................................... 24

*Ellison Framing, Inc. v. Zurich American Insurance Co.*,
  2013 WL 6499058 (E.D. Cal. 2013) ............................................................. 19

*Fremont Indemnity Co. v. Fremont General Corp.*,
  148 Cal.App.4th 97 (2007) ........................................................................... 23

*Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D. Mich. 1985) ..................... 20

*In Re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir. 1987) ................................... 20

*In Re Simons Broadcasting, LP*, 2013 WL 9542015 (W.D. Tex. 2013) ................ 22

*In Re Repetitive Stress Injury Litigation*, 11 F.3d 368 (2d Cir. 1993) ................... 19

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ................................ 18

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ................................................. 6, 7, 8, 15, 16, 23

*Lewis v. City of Fresno*, 2009 WL 1948918 (E.D. Cal. 2009) .............................. 23

*Rainwater v. McGinniss*, 2011 WL 5041233 (E.D. Cal. 2011) ............................ 24

*SalesTraq America, LLC v. Zyskowski*,
  2010 WL 1006656 (D. Nev. 2010) ................................................................... 6

Memorandum of Points and Authorities in Opposition to Motion to Consolidate Actions

*Single Chip Systems Corp. v. Intermec IP Corp.*,
    495 F.Supp.2d 1052 (S.D. Cal. 2007) ...........................................24

*Solomon v. North American Life & Casualty Insurance Co.*,
    151 F.3d 1132 (9th Cir. 1998) .......................................................18

*Thompson v. George DeLallo Co.*, 2013 WL 211204 (E.D. Cal. 2013) ................15

*Tumbling v. Merced Irrigation District*,
    2010 WL 1340546 (E.D. Cal. 2010) .......................................20, 24

*Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing
    Corp.*, 587 F.3d 1339 (9th Cir. 2009) ........................................15

*Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202 (2014) ..............................22

*Xpel Technologies Corp. v. American Filter Film Distributors*,
    2008 WL 3540345 (W.D. Tex. 2008) ...........................................22

*Zivkovic v. Southern California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .......................................................18

## **Statutes**

Business and Professions Code

   Section 17200 .................................................................................3, 21

   Section 17500 .................................................................................3, 20

## **Rules**

Federal Rules of Civil Pocedure

   Rule 11 ............................................................................................19

   Rule 15 ...........................................................................3, 5, 6, 7, 16

   Rule 15(a)(2) ..................................................................................16

   Rule 16 ...........................................................................5, 6, 7, 15, 16

   Rule 16(b)(3) .....................................................................................6

   Rule 16(b)(3)(A) ................................................................................6

Rule 16(b)(4) ................................................................................................ 6

Rule 20 ....................................................................................................... 16

Rule 20(a) ................................................................................................... 16

Rule 42 ......................................................................................................... 3

Rule 42(a) ............................................................................... 4, 19, 20, 23, 25

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.     INTRODUCTION

Quite literally on the eve of trial of an action that has been pending for over two years, this Court is asked by plaintiff/counter-defendant Real Estate Training International, LLC ("RETI") and cross-defendant Armando Montelongo (together with RETI, the "RETI Parties") to grant them additional time to conduct discovery they should have long since completed, and also seek leave to belatedly add a new party (of which they have long been aware) and expansive new claims. Ignoring the Court's repeated denials of their requests to conduct additional written discovery after the cut-off date, the RETI Parties ask yet again for the opportunity to conduct more discovery on their claims, this time under the guise of a motion to consolidate this action with a newly-filed case and an alternative motion to amend their ***Second*** Amended Complaint ("SAC") in the current action.

The RETI Parties are attempting to make defendants/counter-plaintiffs The Nick Vertucci Companies, Inc. ("TNVC") and Nick Vertucci ("Vertucci" and collectively with TNVC, "Defendants") suffer the consequences of the RETI Parties' ill-advised litigation strategy that they elected to pursue. Having spent far too much time during the period allocated for discovery pursuing irrelevant and intrusive inquiries relating to the RETI Parties' salacious and immaterial allegations concerning Vertucci's personal life, the RETI Parties now find themselves in a quandary: on the eve of trial, they lack the evidence necessary to support a component of their claimed damages—the profits made through the purported use of their allegedly confidential information. The RETI Parties have belatedly realized that they failed to confirm through discovery that such purported damages were recoverable from TNVC.

Improperly attempting to shift the responsibility for their inattention to Defendants, the RETI Parties claim they were misled into believing that TNVC was the entity conducting the real estate seminar business that they allege employed their

purportedly confidential information. Pretending that they have only just had reason to discover that the business in fact was conducted by N V Real Estate Academy, LLC ("NVREA"), a Utah limited liability company, the RETI Parties filed a new action against NVREA (the "NVREA Action"), in which they assert numerous claims that have not been raised in the current action.

The RETI Parties' disingenuous claim of surprise as to NVREA's true involvement is demonstrably false, as shown by the following:

- Contrary to the RETI Parties' statements, Vertucci testified in an August 2015 deposition that NVREA was a separate entity, but when pressed conceded it was only possible it could be a dba; no reasonable attorney could conclude from the testimony that NVREA was not a separate entity. In fact, the deposition examiner expressly stated to Vertucci that "I'm not pinning you down as to whether it is a dba or an entity". The import of the testimony was that NVREA likely was a separate entity, but at a minimum the RETI Parties were put on notice that they should immediately investigate its corporate status, which would have led to the discovery of the readily ascertainable fact that NVREA is a Utah LLC. Indeed, Vertucci expressly stated at the time that "I believe it is a separate company, but if it is a dba, let's find out." The RETI Parties apparently ignored the suggestion.

- Although the RETI Parties claim they believed, as a result of Vertucci's August 2015 deposition testimony, that NVREA was a dba of TNVC, Vertucci testified only that NVREA *might* be a dba, but did not state of which company it might be a dba. Again, the RETI Parties simply assumed that that if NVREA was in fact a dba, then it must be a dba of TNVC. They adduce no evidence that they even asked Vertucci whether NVREA might be a dba of TNVC, or that Vertucci testified that NVREA might be a dba of TNVC.

- Vertucci testified that he no longer conducted business through TNVC. If the RETI Parties nevertheless assumed that NVREA was a dba of TNVC, they had no reasonable grounds for doing so.

In addition to a misleading recitation of the relevant facts, the RETI Parties also misstate the law applicable to their motion. Attempting to obtain the benefit of the more liberal standards applicable to motions for consolidation and motions to amend pleadings, the RETI Parties assert their motion under Rules 15 and 42 of the Federal Rules of Civil Procedure. However, what the RETI Parties are very obviously attempting to do is to add NVREA to the current action to remedy their error in not naming the correct entity at any time during the preceding two years that this case has been pending—and to add a slew of completely new claims. The RETI Parties therefore are in actuality attempting to amend the scheduling order which set a deadline of August 8, 2014 for adding any new parties or claims to this case.

The standards applicable to amending a scheduling order are much more strict that those governing motions to consolidate or for leave to amend, and require a showing of good cause. The RETI Parties fail even to identify the relevant standard, much less attempt to satisfy it. To the contrary, they have acted in a dilatory manner and at this extremely late date should not be relieved from the consequences of the litigation strategy they elected to pursue. The motion to consolidate and the alternative motion for leave to amend should be denied.

Denial of consolidation is warranted even under the standards of a motion to consolidate. The RETI Parties have failed to sustain their burden to demonstrate that common questions of law or fact predominate. Seven of the nine claims in the NVREA Action have no corollary in the current action, and raise completely new issues concerning whether NVREA, through its advertising, violated the Lanham Act, engaged in false advertising under Business and Professions Code Section 17500, and engaged in unfair business practices under Business and Professions Code Section 17200. Moreover, the RETI Parties have asserted new claims for

misappropriation of trade secrets under California law, conversion, and unjust enrichment that are qualitatively different from the claims asserted in the current action, as they rest upon a fine distinction the RETI Parties are attempting to fabricate between *trade secrets* (which are not the subject of the current action) and *confidential/proprietary information*, even though no such distinction was made in the current case. Confusion will abound with consolidation because the RETI Parties inconsistently allege in the current action that customer lists constitute confidential/proprietary information, but in the NVREA Action claim that such customer lists constitute trade secrets.

Moreover, even if the two actions shared sufficient issues in common to meet the threshold for consideration under Rule 42(a), consolidation still would be inappropriate under numerous of the factors that guide exercise of the Court's discretion. Most significantly, the two actions are in vastly different stages. As of the date this motion is heard, the current action will be ready for a trial that is scheduled to commence the following day. All discovery and motion proceedings will have concluded. The complaint in the NVREA Action, in stark contrast, was just filed, and will be the subject of pleading attacks to address the pleadings' numerous deficiencies, consuming substantial time. Moreover, the new complaint raises many claims unrelated to those at issue in the current action, such as the false advertising claims. Although the RETI Parties cavalierly state that only a brief delay in the trial should be needed, the new defendants in the NVREA Action must have the opportunity to mount their challenges to the complaint's sufficiency, and conduct full discovery into any claims that may survive.

Severe prejudice to both current and new defendants will be the inevitable and unavoidable product of consolidation, with nothing to balance the other end of the scale. Consolidation will achieve no economies; to the contrary, if the two actions share as many common issues as the RETI Parties claim, resolution of the current action first may well moot much of the NVREA Action. If, as Defendants

expect, they establish that the information the RETI Parties claim to be confidential is not protectable—an adjudication that will be binding on them in the NVREA Action—the issues in the NVREA Action will be streamlined. Further, any possibility of inconsistent rulings is virtually eliminated since both cases are before this Court. There simply is no legitimate reason to consolidate these cases, and the illegitimate reason that is driving this motion—the RETI Parties' attempt at an end-run around the scheduling order to obtain the discovery and the defendant otherwise denied them—does not justify the severe prejudice Defendants would suffer from the substantial delay in a case ready for trial.

For all of the foregoing reasons, the RETI Parties' alternative motion for leave to amend the SAC to add the new defendants and the plethora of new claims also should be denied. The RETI Parties have not even attempted to establish good cause for adding all of the new claims. Further, as discussed above, the failure to earlier identify and seek leave to add NVREA as a defendant is the direct result of the RETI Parties' lack of diligence and unfortunate decision to spend their discovery time pursuing their irrelevant allegations concerning Vertucci's alleged affairs. The RETI Parties' utter failure to establish good cause for the exceedingly untimely motion to amend compels its denial.

**2. THE RETI PARTIES' FAILURE TO ESTABLISH GOOD CAUSE UNDER RULE 16 REQUIRES DENIAL OF THE MOTION**

**A. The Motion to Consolidate/Amend Is a Disguised Motion to Amend the Scheduling Order that Must Be Determined Under Rule 16**

Although the RETI Parties style their motion as one to consolidate the current action with the newly-filed one, they in reality are attempting to add new parties and new claims to the current case immediately before trial and long after the Court-established deadline for doing so has passed. In fact, the RETI Parties essentially have conceded this point by alternatively moving under Rule 15 for leave to amend the SAC in the current action to add the additional parties and claims. By doing so,

they invoke and attempt to utilize the more liberal standards governing motions to consolidate and amend, and do not even cite to the controlling Rule 16.

The RETI Parties completely ignore the procedural posture of the current case, in which a scheduling order setting a deadline for the addition of new parties and claims has long since expired. Rule 16 required the Court to enter a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." (Rule 16(b)(3)(A).) Under Rule 16(b)(4), the scheduling order "may be modified only for good cause and with the judge's consent." Pursuant to the requirements of Rule 16(b)(3), on June 9, 2014, the Court conducted a scheduling conference and signed its Scheduling Order Specifying Procedures (the "Scheduling Order"). (ECF 48.) Paragraph 3 of the Scheduling Order required the RETI Parties to file a motion to join a party or to amend their pleading within 60 days of the Order's date, or by August 8, 2014, absent good cause; they failed to do so. Moreover, they failed to establish good cause under Rule 16—a standard more rigorous than Rule 15's good cause requirement for amending a pleading—for belatedly doing so now.

In *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992), the court held that after entry of a pre-trial scheduling order, Rule 16, not the liberal amendment policy of Rule 15, applied to a request for leave to add a new party defendant. *Johnson*, 975 F.2d at 607-608. Accordingly, the RETI Parties' ability to amend the SAC in the current action is governed by Rule 16, not Rule 15. *Johnson*, 975 F.2d at 608. The motion to consolidate therefore should be treated as a motion to amend the Scheduling Order under Rule 16.

Courts have often rejected motions to consolidate where, as here, they attempt an end-run around procedural deadlines established in the earlier-filed case. For example, in *SalesTraq America, LLC v. Zyskowski*, 2010 WL 1006656 (D. Nev. 2010), counterclaimants in an existing action filed a new case against a new defendant, and then sought to consolidate both actions (having already

unsuccessfully moved to amend the scheduling order to add such defendant as an additional party). The district court refused to permit the consolidation, finding that the counterclaimant was "seeking to accomplish what it was unable to achieve through its motion to add an additional party in this action." *Id.* at *2.

Similarly, in *Cole v. Salt Creek, Inc.*, 2012 WL 5331235 (D. Utah 2012), in a case that had been pending for almost four years with trial to commence in less than 90 days, the court denied plaintiffs' motion to consolidate the action with a newly-filed one as an improper attempt to circumvent the scheduling order. The court noted that plaintiffs may not use the tactic of filing two substantially identical complaints to expand the procedural rights they would otherwise enjoy. *Id.* at *2.

The conclusion is inescapable: the motion to consolidate/amend should be treated as a motion to amend the Scheduling Order and reviewed under the applicable Rule 16 standards.

**B.  The RETI Parties' Inexcusable Delay in Seeking to Add New Claims and New Parties Precludes a Finding of Good Cause**

As stated, Rule 16 requires that the moving party establish good cause to obtain an amendment of the scheduling order to add additional claims and parties after the deadline. Although good cause is also required for leave to amend under Rule 15, which is the RETI Parties' alternative motion, the good cause requirement applicable to Rule 16 motions is more rigorous. As the *Johnson v. Mammoth Recreations, Inc.* court explained:

> Unlike Rule 15(a)'s liberal amendment policy which focuses on
> the bad faith of the party seeking to interpose an amendment and
> the prejudice to the opposing party, Rule 16(b)' s "good cause"
> standard primarily considers the diligence of the party seeking
> the amendment. The district court may modify the pretrial
> schedule "if it cannot reasonably be met despite the diligence of
> the party seeking the extension. Moreover, carelessness is not

compatible with a finding of diligence and offers no reason for a grant of relief." [Citations omitted]

*Johnson*, 975 F.2d at 609.

Accordingly, the RETI Parties had the burden to establish that they acted diligently but could not earlier have sought to amend the Scheduling Order. As demonstrated below, the facts are otherwise.

### (1) The RETI Parties Focused their Discovery Efforts on Vertucci's Personal Life, Rather than the Elements of their Claims

From the inception of this action back in January 2014, the RETI Parties have asserted claims against TNVC based in part upon its purported conduct of a competing real estate training seminar business. Rather than conduct discovery to adduce proof of those allegations, the RETI Parties instead chose to conduct embarrassing discovery into Vertucci's personal life, even though such issues were completely irrelevant to this case, and focused discovery on Defendants' counterclaims, rather than the RETI Parties' own claims. Defendants need not belabor the point by reciting the acrimonious proceedings before this Court last year directed to the discovery sought from Vertucci's wife and his purported girlfriend.

Although the current action was filed in January 2014 and transferred to this court in April 2014, the RETI Parties did not propound any written discovery for over a year, waiting until April 21, 2015 to serve interrogatories and document demands. None of the written discovery was directed to the issue of whether NVREA was a dba of TNVC. Instead, most of the interrogatories were directed to the contentions of Defendants' counterclaims and certain of their affirmative defenses. (Declaration of Madison S. Spach, Jr. ("Spach Dec."), ¶ 2.)

The RETI Parties waited until the *second* round of written discovery to seek detailed information concerning the conduct of the real estate seminar business. The second set of document demands directed to TNVC were focused on the conduct of

the seminars, including documents reflecting the number of attendees, the location of workshops, sales of goods and services, costs of sale, profit and loss statements, and other financial data. Remarkably, the document demands even included references to the NV Real Estate Academy Bus Tour Facebook Group, but still no discovery was directed to NVREA's corporate status. (Spach Dec., ¶ 3.)

The RETI Parties, however, served this second round of discovery after the service deadline for such discovery, leading to a flurry of motions designed to avoid the consequence of their mistake—their failure to adduce evidence to support the disgorgement of profits theory they wish to pursue. They first filed a motion to compel responses to the second round of discovery (as well as further responses to the first round) on July 29, 2015. (ECF 168.) Before the motion was adjudicated, the RETI Parties on August 24, 2015 filed an ex parte application for an order "clarifying" the discovery cutoff date and seeking to withdraw and resubmit their motion to compel. (ECF 183.) On August 26, 2015, the Court denied the ex parte application (ECF 185) and on August 28, 2015, denied the motion to compel due to the RETI Parties' failure to comply with the meet and confer requirements of the Court's local rules. (ECF 186.)

On September 11, 2015, the RETI Parties renewed their motion to compel discovery. (ECF 191.) On September 18, 2015, the Court denied the motion as to both the first and second sets of discovery. (ECF 201.) The RETI Parties therefore found themselves in a position where they would be unable to prove up the profit disgorgement claim they thought they had against TNVC. After the passage of many additional months, they finally came up with a strategy to obtain the discovery that they had sought too late: file a new action with new claims against NVREA, and pretend that they were confused about NVREA's long-standing status as the operator of the seminar business they claim is improperly competing with them. In a transparent attempt to excuse their lack of diligence, they decided that they must try to lay the blame for their inattentiveness on Defendants' doorstep.

### (2) The RETI Parties Were Well Aware of NVREA's Existence and that It Was Likely an Entity Separate from TNVC

In a disingenuous effort to forestall Defendants' objections to the eleventh-hour quest for a trial continuance, the RETI Parties blame Defendants for the RETI Parties' failure to much earlier identify the proper defendant and bring appropriate proceedings in this Court to correct their error. From the inception of this action, it was clear that the real estate seminar business was conducted by NVREA. The RETI Parties simply assumed that NVREA was a dba of TNVC, but undertook no written discovery to confirm this significant factual issue. The RETI Parties are unable to point to any interrogatory, request for admission, or document demand directed to the issue of NVREA's corporate status.

Moreover, the RETI Parties easily could have ascertained NVREA's separate existence from a search of the secretary of state websites for both Utah and California. They seek to disclaim responsibility for doing so, however, by asserting that unless a space was inserted between the "N" and "V" when searching the Utah secretary of state's website, no result would be produced. Conspicuously absent from their papers, however, is any testimony under penalty of perjury *that they in fact conducted such a search at any time before preparing the instant motion*, or that they relied upon the results of any such search in concluding that NVREA was not a separate entity (although they still would not be justified in simply assuming that NVREA was a dba of TNVC).

In any event, a competent search of online records would have easily revealed NVREA's corporate existence. Simply searching for "real estate academy" on the California site would have revealed NVREA's existence as a Utah LLC qualified to do business in California. Moreover, an executive search for "Vertucci" on the Utah cite would also have led directly to NVREA. (Spach Dec., ¶¶ 4-5 & Exs. 1-2.)

Deflecting attention from their own lack of diligence, the RETI Parties grievously mischaracterize Vertucci's testimony at his August 2015 deposition,

claiming that he "ambiguously" testified concerning NVREA's corporate status and suggested that it was a dba of TNVC. (Memo. at 1:20-24.) To the contrary, Vertucci testified forcefully that NVREA was a separate entity, but when asked whether it could be a dba, he simply said he could not be certain. Even more significantly, the RETI Parties failed to establish that Vertucci testified that NVREA might be a dba *of TNVC*; to the contrary, Vertucci testified that he did not use the TNVC entity for his business anymore, eliminating any conceivable basis for an *assumption* that NVREA *must* be a dba of TNVC. Vertucci's testimony is worth quoting at length so that the Court may draw its own conclusions concerning the extent to which the RETI Parties have mischaracterized Vertucci's testimony:

        a.     <u>Excerpt 1: NVREA Likely Is A Separate Entity</u>

Q    [by counsel for RETI] Okay. And what is NVREA, Nick Vertucci Real Estate Academy?

A    What kind of corporation?

Q    ***Is it a separate entity?***

A    ***Yes.***

Q    It is. It's not a dba?

A    I don't know if it's a dba. I know – I don't know. I honestly don't know. It's not my wheelhouse. ***I believe it is a separate company***, but if it is a dba, ***let's find out.*** I don't know.

Q    When you refer to the NV Companies sort of as a -- or The Nick Vertucci Companies sort of as a general umbrella, what companies are you referring to?

A    I never thought about it that way.

Q    Okay.

A    I don't know. I am The Nick Vertucci Companies. I mean, legalwise, does IHG follow under it, does NVRE, I don't

1     know.

2  Q   How about in your mind?

3  A   I don't know. It's just NV Companies, but **right now I**
4      **would say that my real estate seminar business is run**
5      **through NVREA**.

6  (ECF 303-4 at 234:20 – 235:17 [emphasis added].)

7          b.      Excerpt 2: RETI's Counsel Represents He Is Not
8                  Attempting to Establish that NVREA Is a dba

9  Q   [RETI counsel] Right. **And I'm not pinning you down as**
10     **to whether it is a dba or an entity** --

11 A   Yeah.

12 Q   -- but it's a -- but the purpose of using the name NVREA
13     was to start your -- was to associate it with your real estate
14     seminar business; is that accurate?

15 A   Yes.

16 (ECF 303-4 at 237:5-12 [emphasis added].)

17         c.      Excerpt 3: NVREA Almost Certainly Was Formed in Utah

18 Q   [RETI counsel] Okay. So I presume for the Nick Vertucci
19     Real Estate Academies, you are considered the president
20     or the CEO or the -- or something?

21 A   Yes.

22 Q   All right. **What state is the Nick Vertucci Real Estate**
23     **Academy companies incorporated or formed?**

24 **A   90 percent it is Utah**.

25 (ECF 303-4 at 245:14-20 [emphasis added].)

26         d.      Excerpt 4: RETI's Counsel Knew that TNVC Was No
27                 Longer Being Used As A Business Entity

28 Q.   [RETI counsel] Why did you stop using The Nick

| | | Vertucci Companies, Inc. as a business entity? |
| --- | --- | --- |
| 2 | A | Because *I was using that solely to market my properties* |
| 3 | | as NV Companies, because that would look better than |
| 4 | | IHG, and that's what I did, if you remember, when we met |
| 5 | | about it with your client. And then *when I was going to* |
| 6 | | *start the real estate academy, I think I was advised for it* |
| 7 | | *to be an LLC, if I'm not mistaken, and I wanted to name* |
| 8 | | *it the NV Real Estate Academy*, from my law inforcement |
| 9 | | *[sic]* background. |

(ECF 303-4 at 241:6-16 [emphasis added].)

As demonstrated by the foregoing excerpts from Vertucci's August 2015 deposition, it was well apparent that NVREA almost certainly was a separate entity. Even if the RETI Parties failed to earlier consider the issue of whether they wished to assert claims against NVREA in the current action, the deposition put them on notice of the issue. No reasonable attorney could conclude from that testimony that NVREA was a dba of TNVC, especially since Vertucci unequivocally testified that he had stopped doing business in TNVC. The most that the RETI Parties could claim is that they had an element of doubt in their minds as to NVREA's corporate status. It was incumbent upon them to expeditiously resolve that element of doubt, yet they did nothing for five more months.

Aside from mischaracterizing Vertucci's testimony to suggest that the issue was less certain than it actually was, the RETI Parties blame Vertucci for "abruptly" terminating that deposition and not rescheduling it for many months. While the RETI Parties were clearly on notice from Vertucci's testimony that NVREA was likely a separate entity, rendering the "abrupt termination" of the deposition irrelevant, the deposition was terminated only as a result of the RETI Parties' games-playing. (The RETI Parties waited until the deposition was under way before belatedly producing documents through another office without informing the parties

present at the deposition, which documents Vertucci's counsel had not had the opportunity to review before the deposition. (Spach Dec., ¶ 6).)

The RETI Parties raise another red herring to excuse their lack of diligence by complaining about the pace of document production with respect to five non-party witnesses. They fail to explain, however, what conceivable relevance the document production had to their failure to earlier address the issue of NVREA's corporate status. They knew as of August 2015 that NVREA was not a dba of TNVC; the subsequent document production can only serve to confirm what they already knew.

The RETI Parties also cite to snippets of language from NVREA's website and filings in the Patent and Trademark Office apparently in an effort to support their argument that they were justified in blithely assuming that NVREA was a dba of TNVC. Once again, however, glaringly absent is any declaration testimony under penalty of perjury that the RETI Parties or their counsel actually reviewed such materials at an earlier stage of the litigation and then relied upon such materials in determining not to pursue any discovery concerning NVREA's corporate status.

While the RETI Parties' marshalling of isolated bits and pieces of evidence concerning TNVC's alleged involvement in the seminar business is clearly an after-the-fact effort to justify their lack of diligence, the materials in any event would not have excused them from at least sending a simple request for admission on the issue. It must not be forgotten that the RETI Parties are the plaintiffs and have the burden to prove their allegations that TNVC improperly competed with them. They are not entitled to simply assume that their understanding is correct and not take any steps to develop the evidence they would need to prove those allegations at trial.

### (3) *The RETI Parties Have Failed to Establish Good Cause for Amending the Scheduling Order*

Despite their efforts to shift responsibility for their lack of diligence to Defendants, the RETI Parties at a minimum have been careless in failing to much earlier establish that the real estate seminar business that they assumed TNVC was

conducting was in fact run by NVREA, an entity separate and distinct from TNVC. As stated in *Johnson v. Mammoth Recreations, Inc.*, *supra*, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. 975 F.2d at 609. *See also Thompson v. George DeLallo Co.*, 2013 WL 211204, at *4 (E.D. Cal. 2013) (good cause may exist where moving party shows that it diligently assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order).

As demonstrated above, the RETI Parties failed to establish either that they could not have reasonably foreseen the need to earlier determine NVREA's corporate status, or that they diligently sought to amend the Scheduling Order once they became aware that their unreasonable assumption that NVREA was TNVC's dba was erroneous. By no later than August 2015, the RETI Parties were undeniably aware that NVREA was in all probability a separate entity, and that under no circumstances could NVREA be a dba of TNVC. Notwithstanding that knowledge, they waited five months before filing a new action and seeking consolidation, and did so without acknowledging their obligation to proceed under Rule 16.

Excusing the RETI Parties' failure to exercise diligence improperly shifts the burden of their dilatory conduct to Defendants, who then would be faced with a substantial delay in trial and the reopening of discovery on both existing and numerous new claims. The lack of good cause for the instant motion is manifest. *Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing Corp.*, 587 F.3d 1339, 1354 (9th Cir. 2009) (" 'Good cause' [under Rule 16] has been defeated by undue delay in moving to amend, combined with a need to reopen discovery based on the proposed amendment" [citation omitted]).

### (4) The RETI Parties Also Failed to Establish Good Cause for Amending the SAC to Add New Claims and New Parties

Even if the RETI Parties were able to establish good cause for amending the Scheduling Order under Rule 16, which they have not, they must still demonstrate that the amendment is proper under Rule 15. *Johnson*, 975 F.2d at 608.

The RETI Parties claim the benefit of the policy favoring liberal amendments of pleadings while writing out of existence the last portion of Rule 15(a)(2)'s final sentence, which states in full: "The court should freely give leave **when justice so requires**." [Emphasis added.] The interests of justice would be subverted, not advanced, by granting leave to amend a pleading in an action ready for trial that has been pending for over two years, especially where, as here, the scope of trial would be substantially expanded through the inclusion of seven completely new claims.

The motion to amend is deafeningly silent as to why the RETI Parties did not earlier seek to amend the SAC to add the proposed new claims. And they have not attempted to establish any basis why the joinder of the new parties would be proper. The RETI Parties' proposed amendment would add Performance Advantage Group, Inc. as a co-plaintiff with RETI, and add NVREA and Innovative Holdings Group, LLC as defendants. While Rule 15 provides the procedural mechanism for the proposed amendment, a determination of whether it is permissible to join these new parties must be made under Rule 20—whether the new plaintiff may jointly or severally assert a right to relief arising out of the same transactions or a question of law or fact common to all plaintiffs will arise, and whether the new defendants have any right to relief asserted against them jointly or severally arising out of the same transactions, or a question of fact or law common to all defendants may arise. *Boulton v. American Transfer Services, Inc.*, 2016 WL 164316, at *3 (S.D. Cal. 2016) (in ruling on a motion to join additional parties, court must consider both the general principles of amendment provided by Rule 15(a) and the more specific joinder provisions of Rule 20(a)). The RETI Parties have failed to even address Rule

20, much less establish that permissive joinder would be appropriate.

In any event, the RETI Parties simply are not entitled to the exercise of this Court's discretion in their favor. A court may deny an amendment where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir. 2006). The first three factors militate strongly against granting the leave requested.

First, amending the SAC at this very late stage of the litigation would be manifestly prejudicial. The current case will be ready for trial at the time the motion is heard; all discovery complete, all pre-trial motions made and responded do, all the numerous pre-trial procedures concluded. The RETI Parties cavalierly ask that the Court simply toss such expensive and time-consuming preparation away and dramatically expand the scope of the case by adding three new parties and nine new claims. (Although two of the claims—conversion and interference with contract— are raised in the SAC, there are notable differences between them as the new versions of such claims would be determined under California law, while the current versions are determined under Texas law.)

The amendment unquestionably will result in substantial delay to the litigation. Although the RETI Parties claim that the delay will be brief, such a hope is unrealistic. The new defendants will be attacking the sufficiency of all nine of the new claims. Further amendments to the complaint, and further rounds of motions to dismiss, are likely. Assuming that the plaintiffs in the NVREA Action ultimately are able to state valid claims, new discovery into such claims will be required, as completely new issues are raised concerning, among other things, allegedly false advertising by the new defendants.

The severe prejudice to Defendants from the inevitable delay is reason alone to deny the amendment, as established by numerous cases where amendment was denied even though the cases were further from trial than the current case. *See, e.g.,*

*Solomon v. North American Life & Casualty Insurance Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (court did not abuse discretion in denying motion to amend on the eve of the discovery deadline; amendment would have required re-opening discovery and delaying the proceedings); *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (district court properly denied motion to amend filed a few days before discovery cut-off and less than three months before trial; requirement of additional discovery would have prejudiced defendant and delayed the proceedings).

Second, the amendment is not sought in good faith. The RETI Parties never provide an explanation as to why they waited until the last minute before deciding to substantially expand the litigation by more than doubling the number of claims asserted. While they attempt to shift the blame for their dilatory conduct to Defendants by claiming they were misled into thinking that NVREA was a dba of TNVC, that rationale applies only to adding NVREA as a party; they offer no explanation as to why they waited until the last minute to bring in the other new parties and the nine new claims. Moreover, as discussed above, the RETI Parties had ample notice that NVREA was a separate entity, and not a dba of TNVC. The responsibility for their inattention to this aspect of the case rests squarely with them.

Third, courts consider the timeliness of a motion to amend when considering the undue delay factor. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable). Here, the RETI Parties were undeniably aware that NVREA was not a dba of TNVC no later than August 2015, yet waited until February 2016 to make their motion. Their delay is inexcusable.

Finally, Defendants believe that the amendment ultimately will prove to be futile. While the new defendants intend to move to dismiss the complaint in its entirety, Defendants acknowledge the theoretical possibility that some claim could be stated—assuming the pleader is unconcerned with the possibility of violating

Rule 11 with respect to the accuracy of factual allegations. However, the strength of the three preceding grounds for denial obviate any need to rely upon futility of amendment as yet an additional reason to deny leave to amend.

Simply put, the inherently prejudicial effect of permitting such a drastic change in the character of the current case presented at the last possible moment with no credible explanation to support it, coupled with the substantial delay such amendment would engender, compel denial of the motion to amend.

**3.    CONSOLIDATION WOULD DEFEAT, RATHER THAN ADVANCE, THE INTERESTS OF JUSTICE**

The RETI Parties would have this Court consider the motion to consolidate in a vacuum, and simply compare the allegations of the complaint in each case, find the presence of common issues, and summarily order consolidation. The RETI Parties ignore the irremediable prejudice Defendants would suffer if, just as the parties are poised to start trial of a case pending for over two years, the scope and breadth of that action is dramatically expanded to include additional parties and conflicting claims that will inevitably lead to substantial delay to the trial, and confusion at trial itself.

**A.    Individual Issues in the Two Actions Far Outweigh Any Common Issues, Precluding Consolidation**

The threshold issue under Rule 42(a) is whether two pending actions share a common question of law or fact—an issue on which the RETI Parties carry the burden of proof. *Ellison Framing, Inc. v. Zurich American Insurance Co.*, 2013 WL 6499058, at *3 (E.D. Cal. 2013) (moving party bears the burden of demonstrating that consolidation is appropriate); *In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir. 1993) (party moving for consolidation bears the burden of showing the commonality of factual and legal issues in different actions).

If such common questions exist, the Court has broad discretion to order consolidation—or decline to order consolidation—or to make any other order it

deems appropriate. FRCP 42(a) (in lieu of consolidation, court may join for hearing or trial any or all matters at issue in the actions, or issue any other orders to avoid unnecessary cost or delay); *In Re Adams Apple, Inc.,* 829 F.2d 1484, 1487 (9th Cir. 1987) ("consolidation is within the broad discretion of the district court").

Consolidation, however, is not justified or required simply because the actions ***include*** a common question of fact or law. *Hasman v. G.D. Searle & Co.,* 106 F.R.D. 459, 461 (E.D. Mich. 1985). When cases involve ***some*** common issues but individual issues predominate, consolidation should be denied. *Ibid. See also Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 1994 WL 16780779, at *1 (N.D. Cal. 1994) ("Although the court finds that there are some common issues, 'the mere existence of common issues ... does not mandate consolidation'" [citation omitted]); *Tumbling v. Merced Irrigation District*, 2010 WL 1340546, at *4 (E.D. Cal. 2010) ("'even where cases involve some common issues of law or fact, consolidation may be inappropriate where individual issues predominate'" [citation omitted]).

Here, while there may be a few common issues of fact in the two cases, the individual issues far outnumber any such common issues. The new complaint adds numerous additional claims that have no corollary in the current action. In fact, only two of the nine claims for relief in the NVREA Action are asserted in the existing action (although they are determined under different law, further complicating the trial if consolidated). The NVREA Action asserts the following completely new claims:

- federal unfair competition under the Lanham Act arising out of allegedly false statements made in connection with advertising NVREA's seminars (ninth claim for relief);

- false advertising under Business and Professions Code Section 17500 arising out of allegedly false statements concerning Defendants' professional background and personal qualities;

- unfair business practices under Business and Professions Code Section 17200 that apparently are based upon the foregoing allegations, among others (fourth claim for relief);

- accounting of profits made in NVREA's conduct of its seminar business (sixth claim for relief);

- constructive trust over moneys earned through NVREA's purported use of the RETI Parties' allegedly confidential and proprietary information and trade secrets (seventh claim for relief);

- misappropriation of trade secrets under the California Uniform Trade Secrets Act (eighth claim for relief); and

- unjust enrichment (second claim for relief).

Resolution of the foregoing claims will require adjudication of a myriad of factual issues, most of which are not implicated in the current action. For example, the current action does not assert any claims for allegedly false advertising. Further, NVREA's profits, which are the subject of many of the new claims, are not at issue in the current action because the RETI Parties failed to sue NVREA or conduct any discovery concerning its business and financial operations.

The only claims nominally in common in the two actions are for conversion and interference with contractual relations. However, the conversion claim is materially different in each case. In the current case, the RETI Parties have asserted an interest in certain ill-defined and purportedly proprietary and confidential information that was the subject of the Vendor Agreement, as well as other information. Thus, the SAC alleges the converted property includes Confidential Information, as defined in the Vendor Agreement to include the following:

> [B]ooks, records, clients lists, software, electronic files, customer lists, or any other documents or material related to the business of AMS . . . . [ECF 48 at ¶ 10.]

By contrast, the complaint in the NVREA Action attempts to draw a

distinction between confidential/proprietary information and trade secrets. (ECF 1 at ¶ 15.) Trade secrets are not defined, although the complaint alleges that "RETI is the owner of and/or holds rights to certain trade secrets, including but not limited to its customer lists, market analysis, and business strategies." (ECF 1 at ¶ 68.) The examples of such purported trade secrets undeniably are the subject of the conversion claim in the current action, but not in the NVREA Action. The conversion claims therefore concern different categories of information in the two actions, demonstrating that the individual issues predominate on this claim as well.

Moreover, the conversion claim in the current action will be determined under Texas law, while the conversion claim in the NVREA Action is asserted under California law. The distinction may be significant, as the weight of Texas law appears to prohibit conversion claims based upon the purported taking of intangible property. *See, e.g., Xpel Technologies Corp. v. American Filter Film Distributors*, 2008 WL 3540345, at *6 (W.D. Tex. 2008) ("[T]he Court explicitly rejects the assumption in *Chandler* that conversion of trade secrets is a cognizable claim under Texas law. Such assumption neither comports with the reasoning of the majority of Texas courts nor logically is reconcilable with the elements required to prove conversion"); *Beardmore v. Jacobson*, 2015 WL 5530398, at *8 (S.D. Tex. 2015) (plaintiff's allegations of misappropriation concerned only intellectual property, rather than physical property; summary judgment on conversion claim in defendant's favor granted); *In re Simons Broadcasting, LP,* 2013 WL 9542015, at *13 (W.D. Tex. 2013) ("[T]he Court declines to depart from the interpretation of Texas law shared by the majority of Texas courts and the Fifth Circuit, and holds that conversion applies only to physical property under Texas law").

In contrast, while California law on the issue is in a state of flux, it does recognize conversion claims with respect to at least certain types of intangible property. *See, e.g.*, *Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202 (2014) (conversion action stated where money was taken through unauthorized credit card

transactions); *Fremont Indemnity Co. v. Fremont General Corp.,* 148 Cal.App.4th 97 (2007) (misappropriation of a net operating loss without compensation constituted conversion). The conflicting law applicable to some of the same facts demonstrates that the issues are not the same in the two actions.

Simply put, the existence of a few common issues of fact does not warrant consolidation where, as here, the individual issues predominate. The RETI Parties have failed to sustain their burden to establish even Rule 42(a)'s threshold requirement. Consolidation should be denied.

## B. Even If Common Issues Predominated in the Two Actions, The Actions Should Not Be Consolidated

Even if the Court were to conclude that there are sufficient issues of fact and/or law in common in the two actions to satisfy the Rule 42(a) threshold, that would be only the beginning of the inquiry. An oft-cited recitation of the relevant factors a court should consider when exercising its discretion on a motion to consolidate is contained in *Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir. 1990), and was quoted in *Lewis v. City of Fresno*, 2009 WL 1948918 (E.D. Cal. 2009):

> [W]hether the specific risks of prejudice and possible confusion [are] overcome by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense of all concerned of the single-trial, multiple-trial alternatives.
>
> *Lewis*, 2009 WL 1948918 at *1.

The most compelling factor mandating denial of consolidation is the fact that trial of the current action is scheduled to commence the day after this motion is to be heard, while the NVREA Action has only just been filed. The delay that consolidation would cause is inherently prejudicial to Defendants. Consolidation is

often denied—with good reason—when there is a great disparity in the relative positions of the two cases. *Dilettoso v. Potter*, 243 F.App'x 269, 273 (9th Cir. 2007) (consolidation would only cause needless delay and inconvenience where motion for summary judgment in one of the cases had already been fully briefed and submitted for decision); *Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1057 (S.D. Cal. 2007) (court may consider factors such as disparate trial dates or different stages of discovery as weighing against consolidation of the cases); *Rainwater v. McGinniss*, 2011 WL 5041233, at *1 (E.D. Cal. 2011) (consolidation denied where motion for summary judgment was pending in one of the cases); *Tumbling v. Merced Irrigation District*, *supra* at *5 ("Factors such as differing trial dates or stages of discovery usually weigh against consolidation").

The circumstances here militate even more strongly in favor of keeping the two actions separate. The current action has been pending for over two years, and has been the subject of numerous procedural battles that has already consumed too much of this Court's time. By the time this motion is heard, all discovery and pre-trial proceedings will be concluded in the current action and the parties will be ready to try the case. In the NVREA Action, however, no response has even been filed to the complaint, and no discovery into the numerous new claims has been initiated.

Aside from the dramatically different procedural postures of the two cases, another factor militating against consolidation is the length of delay that consolidation would engender. Although the RETI Parties claim that only a brief delay would be required, that position simply is not realistic as there are serious pleading deficiencies in the new complaint that will be the subject of motion proceedings. It is unknown at this point whether the plaintiffs in the NVREA Action will be able to allege any viable claims; what is certain is that resolution of the pleading deficiencies will substantially lengthen the time required before a consolidated action could be tried. Further, considerable time will be required for discovery concerning the new parties and the new claims.

Another factor relates to the possibility of inconsistent rulings. Here, that prospect is minimized by the fact that both cases are pending before the same court, negating this factor as one potentially favoring consolidation.

Nor will the two cases unnecessarily increase the overall expense. Rule 42(a) does not limit the Court's authority to consolidation; rather, the Court may also "issue any other orders to avoid unnecessary cost or delay." Accordingly, on proper motion in the NVREA Case after the conclusion of the trial in the current action, the Court may make such orders as are necessary to avoid any duplicative discovery. Further, to the extent the two cases share common questions of fact as the RETI Parties maintain, principles of issue preclusion will ensure that the same issues are not tried twice.

The RETI Parties also claim the possibility of jury confusion if the cases are not consolidated. The reverse is true. Requiring the same jury to review a body of evidence and attempt to allocate each item of evidence to each claim against different parties under differing laws (Texas and California) virtually guarantees juror confusion.

Simply put, consolidation and expansion of discovery would result in both substantial delay and severe prejudice to Defendants, while unjustifiably relieving the RETI Parties from the consequences of their failures to timely pursue relevant discovery. The motion to consolidate should be denied.

**4.      CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny the motion to consolidate and alternative motion to amend the SAC.

Dated:  February 12, 2016

AKERMAN LLP
SPACH, CAPALDI & WAGGAMAN, LLP
MADISON S. SPACH, JR.


By: /s/ Madison S. Spach, Jr.
Attorneys for Defendants and Counter-Plaintiffs