**AKERMAN LLP**
CLINT CORRIE (TX SBN 04840300)
*Admitted Pro Hac Vice*
Email: clint.corrie@akerman.com
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

**SPACH, CAPALDI & WAGGAMAN, LLP**
Madison S. Spach, Jr., SBN 94405
Email: madison.spach@gmail.com
Andrew D. Tsu, SBN 246265
Email: andrewtsu@gmail.com
4675 MacArthur Court, Suite 550
Newport Beach, California 92660
Telephone: (949) 852-0710 / Fax: (949) 852-0714

*Attorneys for Defendants/Counter-Plaintiffs*
*The Nick Vertucci Companies, Inc. and Nick Vertucci*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| REAL ESTATE TRAINING INTERNATIONAL, LLC, <br><br> *Plaintiff/Counter-Defendants,* <br><br> v. <br><br> THE NICK VERTUCCI COMPANIES, INC. and NICK VERTUCCI, <br><br> *Defendants/Counter-Plaintiffs,* | Case No. SACV14-00546 AG (DFMx) <br><br> Assigned to Hon. Andrew J. Guilford <br><br> Courtroom 10D <br><br> **DEFENDANTS' MOTION IN LIMINE NO. 9 TO EXCLUDE FINANCIAL EVIDENCE REGADING NV REAL ESTATE ACADEMY, LLC** <br><br> Final Pretrial Conference <br><br> February 29 (8:30 a.m.) <br> SAC Filed: June 17, 2014 <br> FAC Filed: March 7, 2014 <br> Complaint Filed: January 16, 2014 |

# MOTION IN LIMINE NO 9 TO EXCLUDE EVIDENCE REGARDING THE FINANCIAL PERFORMANCE OF NON-PARTY NV REAL ESTATE ACADEMY, LLC

## I. INTRODUCTION

Defendants/Counter-Plaintiffs The Nick Vertucci Companies, Inc. ("NVC") and Nick Vertucci ("Vertucci") (together, the "NVC Parties"), by and through their undersigned counsel, respectfully move this Court for an Order in Limine precluding Plaintiff/Counter-Defendant, Real Estate Training International, LLC. ("RETI") and Counter-Defendant Armando Montelongo, Jr. ("Montelongo"), from introducing testimony or evidence, or undertaking questioning, inferences, and/or argument related to profits made by either of the NVC Parties from the purported use of RETI's allegedly confidential/proprietary information and the financial performance of non-party NV Real Estate Academy, LLC ("NVREA").

Such evidence is not relevant to any claim or defense of RETI/Montelongo for two reasons. First, disgorgement of profits is not available as a remedy for breach of the contract upon which RETI's claim is based; disgorgement is an equitable remedy generally limited to breach of fiduciary duty cases, and RETI's claim of such breach was dismissed. Second, evidence of profits made by NVREA is irrelevant because NVREA is not a party to this case. Even if remotely relevant, such evidence and/or argument would be highly prejudicial to the NVC Parties in that its introduction would result in confusion concerning the issues to be decided at trial, particularly issues concerning RETI's claims for damages.

## II. BACKGROUND

In Plaintiff's operative pleading before the court, its Second Amended Complaint ("SAC," Docket. No. 49), RETI asserts against Vertucci and NVC the following claims: (1) Breach of Contract concerning the Vendor Agreement, (2) Business Disparagement, (3) Fraud relating to the Vendor Agreement, (4) Conversion

(by exercising "dominion and control" over purportedly confidential/proprietary information, (5) Tortious Interference with Business Relations (alleging the NVC Parties "improperly and unlawfully" solicited certain contractors and employees of RETI and that "Defendants currently employ and/or contract with other former Plaintiff contractors and/or employees"), and (6) Tortious Interference with Prospective Business Relations (alleging the NVC Parties interfered with and caused former and current clients to halt their purchase of real estate education services from RETI in "violation of the Vendor Agreement…").

The NVC Parties seek an order excluding evidence regarding the financial condition, results and/or performance of non-party NVREA. Disgorgement relief is not available here because (1) no claim for relief asserted against the current Defendants supports a claim for disgorgement, and (2) the party from whom disgorgement is sought, NVREA, has not been sued as a party defendant.

### III. LEGAL STANDARD

The function of a motion *in limine* is to permit the Court to determine in advance of trial whether certain evidence is relevant and admissible. *Luce v. United States*, 469 U.S. 38, 41 n.2 (1984). Only relevant evidence is admissible at trial. Fed. R. Evid. 402. To be *relevant*, evidence must be probative of the disputed proposition it is offered to prove, and the proposition to be proved must be one of consequence to the determination of the action. *United States v. Glasser*, 773 F.2d 1553, 1559, n.4 (11th Cir. 1985); Fed. R. Evid. 401.

Motions *in limine* have "developed pursuant to the district court's inherent authority to manage the course of trials." *Luce*, 469 U.S. 38 at 41 n.4. Only evidence that is probative of matters that are of consequence to the determination of the action is admissible at trial. *Glasser*, 773 F.2d at 1559, n.4. Thus, when evidence does not make the existence of a fact of consequence to the determination of the action more or

less likely, it is not relevant, and is not admissible as evidence at trial. *Galen v. Avenue of the Stars Assoc., LLC*, 2011 WL 837785, *2 (C.D. Cal. March 21, 2011).

This Motion objects to the introduction of any testimony or evidence, or undertaking any questioning, inferences, and/or argument related to the financial performance of NVREA on the grounds that is not relevant to any claim of RETI or defense of the NVC Parties under F.R.E. Rule 402 and any such evidence would create confusion and prejudice and is therefore inadmissible under F.R.E. 403.

## IV. DISGORGEMENT OF PROFITS IS NOT A REMEDY TO A LIVE CLAIM IN THE CASE.

The NVC Parties believe that RETI will assert claims seeking relief, including disgorgement or lost profit damages, from NVREA due to the questioning of counsel of Vertucci at his deposition on January 14, 2016. At that deposition, counsel questioned Vertucci extensively about his knowledge of NVREA's revenues, expenses, and profits. Moreover, RETI's damages expert's new supplemental report bases lost profits on such a theory. Because such information lacks any relevance to claims seeking relief against defendants Vertucci and/or NVC, such testimony, and any documents concerning such information, should not be admitted for this purpose.

Disgorgement of profits, a remedy sounding in law, is not customarily a remedy or measure of damages available in a breach of contract action under Texas law. "The normal measure of damages in a breach of contract case is the benefit of the bargain, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed." *City of The Colony*, 272 S.W.3d 699, 739 (Tex.App. 2008). In contrast, disgorgement of net profits is an equitable remedy, allowable in connection with causes of action such as breach of fiduciary duty. *See*, e.g., *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) ("courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty"); *Henry v. Masson*, 333 S.W.3d 825, 849

(Tex.App – Houston [1st Dist.] 2010) ("Disgorgement of profits is not a measure of damages available in a breach of contract action").

The equitable remedy of disgorgement of profits requires, in appropriate circumstances, that a fiduciary yield certain profits or benefits to the beneficiary occurring as a result of the breach of its fiduciary duty. *AZZ, Inc. v Morgan*, 2015 WL 1623775 (Tex App- Ft Worth - April 7, 2015, no pet.) ("Under the equitable remedy of disgorgement, a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust"). In short, disgorgement of profits is not a remedy for breach of contract, but rather for breach of fiduciary duty. Here, however, RETI's claim for breach of fiduciary duty was dismissed by the Court pursuant to the NVC Parties' Motion to Dismiss under Rule 12(b)(6). (*See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the SAC, Docket No. 55.) The disgorgement remedy disappeared with the dismissal of the fiduciary duty claim.

Although its prayer for damages at ¶ h. contains a reference to "Disgorgement of profits," the only allegation supporting that request is contained in the now-dismissed Third Claim for Relief for Breach of Fiduciary Duty, as follows: "As an equitable remedy defendants should be required to disgorge to plaintiffs all profits received from NVC resulting from defendant's improper and unlawful conduct as described herein." (SAC, ¶45.)

**Because the origin of the disgorgement remedy contained in the Prayer for Damages is the dismissed claim for Breach of Fiduciary Duty, there is no cause of action in the current lawsuit that would authorize a disgorgement of profits remedy.** As a result, all evidence relating to the claim for disgorgement of profits, including all evidence of any profits made by the NVC Parties and/or NVREA, is irrelevant to any issue in this case and should be excluded; such information does not

relate to either (a) relief available from a party to this action, or (b) a remedy that can be asserted under an operative claim for relief.

## V. EVIDENCE OF NVREA'S PROFITS IS IRRELEVANT BECAUSE IT IS NOT A PARTY DEFENDANT IN THIS CASE

NVC is a Nevada corporation with its principal place of business in California. NVC, along with Vertucci, is a signatory to the Vendor Agreement that is central to the RETI's claims in its SAC. The Vendor Agreement is relied upon in RETI's First Claim for Relief (Breach of Vendor Agreement), its Fourth Claim for Relief (Fraudulent Inducement), its Fifth Claim for Relief (Conversion of RETI property), its Sixth Claim for Relief (Tortious Interference with Business Relations by Interfering with Employee of Contractor), and its Seventh Claim for Relief (Tortious Interference with Prospective Business Relations by alleging interfering with prospective customers).

NVREA is not a party to the Vendor Agreement and was formed as a Utah limited liability company, on approximately January 2, 2014, as the entity to conduct a real estate seminar business. (A true and correct copy of a printout from the Nevada Secretary of State is attached hereto as **Exhibit 1**.) NVREA is the employer of some 15 employees, including former NVC employees Jeff Wilson and Jamie Tomlinson. Though RETI has been aware of NVREA since at least the date it filed this action (if not before), RETI has never named NVREA as a party defendant.

RETI's case has been directed at trying to establish that Vertucci and/or NVC violated their Vendor Agreement with RETI by "soliciting" former Montelongo employees and contractors (NVC and Vertucci have denied doing so) to a competing real estate seminar business in violation of various provisions of the Vendor Agreement. NVREA witness Mindi Cicero, deposed on August 7, 2015, testified that she was an employee of NVREA, a true and correct copy of excerpts from Mindi Cicero's deposition is attached hereto as **Exhibit 2**, at pg. 50:13-15. Nick Vertucci's

testimony on August 27, 2015 included discussion of NVREA at several points and he clearly identified it as a separate business from NV Companies, a true and correct copy of excerpts from Nick Vertucci's August 28, 2015 deposition is attached hereto as **Exhibit 3**, at pgs. 234:20-235:17; 237:5-12, 241:6-16; and 245:14-20.

**The existence of NVREA has never been a secret in this case.** In fact, RETI has known or should have known about its existence since January 2014. RETI's failure to conduct basic due diligence on a known entity to make sure all necessary parties were added to the lawsuit in a timely manner should not be rewarded to allow RETI to parade evidence and argument before the jury on claims and parties they never pursued and which are not relevant to this case.

## VI. RETI CANNOT RELY UPON ANY THEORY OF SUCCESSOR LIABILITY TO RECOVER NVREA'S PROFITS

As demonstrated above, RETI has no claim under which it might obtain a judgment or seek any remedies from NVREA. Moreover, the pending claims under which RETI might try to expand its contentions to assert liability against, or reach any recovery (such as disgorgement) from NVREA would be governed by the law of Texas. Under Texas law, when a plaintiff is alleging that two separate parties are to be treated as one under the law, a plaintiff is required to name and serve each party sought to be held liable. Each is entitled to have the opportunity to appear, be heard, and defend. This principle has been applied in the context of other joint liability theories such as partnership, agency, civil conspiracy, and others. *See Wynne v. Adcock Pipe and Supply,* 761 S.W.2d 67, 70 (Tex.App.-San Antonio 1988, writ denied) (judgment against principal cannot stand where plaintiff joins only agent in the lawsuit individually); *Western Grocery Co. v. K. Jata & Co.,* 173 S.W. 518, 518 (Tex.Civ.App.-El Paso 1915, no writ) (judgment cannot stand against a partner who was never a party to suit).

The principle barring relief against unnamed parties is no different when applied to corporate veil-piercing theories being used to establish joint liability:

> In this case, judgment was entered against two entities that were not defendants in the lawsuit, were not named or joined, and had never appeared. We hold, therefore, that S & A Restaurant Corporation and Steak & Ale of Texas were never properly before the court, that the district court was without jurisdiction to enter judgment against them, and that the judgment against them is void.
>
> *Metromedia Rest. Servs., Inc. v. Strayhorn*, 188 S.W.3d 282, 286-87 (Tex. App.—Austin 2006, pet. denied).

Corporate veil-piercing theories such as alter ego or single business enterprise cannot and do not abrogate the requirements of due process in our judicial system. Parties must still be afforded notice and an opportunity to appear and defend themselves before being subjected to civil liability. *See* Tex.R. Civ. P. 124; *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991). "**It is also essential to due process in our civil justice system that judgment may not be granted in favor or against a party not named in the lawsuit**." *Exito Electronics Co., Ltd., v. Trejo,* 166 S.W.3d 839, 852 (Tex.App.-Corpus Christi 2005, no pet. h.); *Fuqua v. Taylor,* 683 S.W.2d 735, 738 (Tex.App.-Dallas 1984, writ ref'd n.r.e.); *Texaco, Inc. v. Wolfe,* 601 S.W.2d 737, 742 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.).

RETI is effectively trying to get to and disgorge profits of a separate company it did not sue, merely on the theory that the same person who signed their Vendor Agreement is now a principal of NVREA. Thus, any evidence regarding the profits, expenses, revenues, costs, income or operation of NVREA is neither relevant nor material to any claim or party in the lawsuit.

## VII. CONCLUSION

For the reasons set forth above, this Court should enter an Order in limine precluding the RETI Parties from attempting to enter into evidence any financial information relating to profits earned through the purported use of RETI's allegedly confidential and proprietary information, including from NVREA, as well as discussing or intimating that they can or should recover any damages from NVREA, either directly or indirectly. Without the entry of such an order, the risk of jury confusion and prejudice to Defendants are substantial.

Dated: February 12, 2016

AKERMAN, LLP
SPACH, CAPALDI & WAGGAMAN, LLP

*/s/ Clint A. Corrie.*
Clint A. Corrie
Madison S. Spach, Jr.
*Attorneys for Defendants/Counter-Plaintiffs The Nick Vertucci Companies and Nick Vertucci*

# PROOF OF SERVICE

I am employed in the City of Newport Beach and County of Orange, California. I am over the age of 18 and not a party to the within action. My business address is 4675 MacArthur Court, Suite 550, Newport Beach, California 92660.

On **February 12, 2016**, I served the following document(s):

**DEFENDANTS' MOTION IN LIMINE 9 TO EXCLUDE EVIDENCE REGARDING NON-PARTY NVREA**

on the persons below as follows:

| Attorney | Telephone/Facsimile/Email | Party |
|---|---|---|
| Andrew J. Moon, Esq.<br>Education Management Services, LLC<br>2935 Thousand Oaks Dr., #6-285<br>San Antonio, TX 78247 | Telephone: 210-501-0077<br>Facsimile: 210-568-4493<br>andrew.j.moon@gmail.com<br>andym@teamarmando.com | Attorneys for Plaintiff / Counter-Defendant REAL ESTATE TRAINING INT'L, LLC and Counter-Defendant, ARMANDO MONTELONGO |
| Jeffrey D. Cawdrey, Esq.<br>Kimberly D. Howatt, Esq.<br>Gordon & Rees LLP<br>633 W. 5th Street, 52nd Floor<br>Los Angeles, CA 90017 | Telephone: 213.576.5000<br>Facsimile: 213.680.4470<br>jcawdrey@gordonrees.com<br>khowatt@gordonrees.com | Attorneys for Plaintiff REAL ESTATE TRAINING INT'L, LLC and Counter-Defendant, ARMANDO MONTELONGO |

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Newport Beach, California.

☐ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

| | |
|---|---|
| 1 | ☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover. |
| 4 | ☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. |
| 7 | ☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| 10 | ☒ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se." |
| 14 | ☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| 16 | ☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. |

Executed on **February 12, 2016**, at Newport Beach, California.

| Madison S. Spach, Jr. | */s/ Madison S. Spach, Jr.* |
|---|---|
| (Type or print name) | (Signature) |